# Exhibit E

**18 MAG       2989**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x
9,000  ETHER  FROM  ETHER  WALLET :
ADDRESS "0xdA6F983076725cB2899205 :
A16E16d1ed60a0067A," :
                                    :
- - - - - - - - - - - - - - - X

### WARRANT OF SEIZURE
### PURSUANT TO 18 U.S.C. § 981

TO:   ANY LAW ENFORCEMENT OFFICER AUTHORIZED BY LAW

An Affidavit having been made before me by Brandon S. Racz, a Special Agent with the Federal Bureau of Investigation, that he has reason to believe that the above-captioned property is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), and as I am satisfied that there is probable cause to believe that the property so described is subject to seizure and forfeiture pursuant to said statute,

YOU ARE HEREBY COMMANDED AND AUTHORIZED to seize the property described below by effectuating an electronic or digital transfer over the internet, or by serving a copy of this warrant of seizure upon any person or entity presently in possession or control of the property and directing them to effectuate such a transfer:

9,000    ETHER    FROM    ETHER    WALLET    ADDRESS
"0xdA6F983076725cB2899205A16E16d1ed60a0067A"

YOU ARE FURTHER COMMANDED AND AUTHORIZED to prepare a written inventory of the property seized and promptly return this warrant and inventory before this Court as required by law.

Dated:   New York, New York
         October 22, 2018

SO ORDERED:

_Katharine H. Parker_

HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

**18 MAG    8989**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA         :
                                 :
          - v. -                 :
                                 :
9,000  ETHER  FROM  ETHER  WALLET :
ADDRESS  "0xdA6F983076725cB2899205 :
A16E16d1ed60a0067A,"             :
                                 :
          Defendant-In-Rem.      :
                                 :
- - - - - - - - - - - - - - - - x

**TO BE FILED UNDER SEAL**

AFFIDAVIT IN SUPPORT
OF SEIZURE WARRANT
PURSUANT TO
<u>18 U.S.C. § 981</u>

STATE OF NEW YORK      )
COUNTY OF NEW YORK     ) ss.:
SOUTHERN DISTRICT OF NEW YORK )

          BRANDON S. RACZ, being duly sworn, deposes and says:

                          **INTRODUCTION**

          1.   I have been a Special Agent with the Federal Bureau of

Investigation ("FBI") for approximately three years.   I am

currently assigned to a squad within the FBI responsible for

investigating complex financial crimes, including crimes involving

wire fraud, bank fraud, securities fraud, money laundering, and

other white-collar crimes.  During my tenure with the FBI, I have

participated in investigations of numerous frauds, and have

conducted physical and electronic surveillance, the execution of

search warrants (including warrants to search electronic devices

such as cellphones and computers), debriefings of informants,

reviews of taped conversations and electronic communications such

as emails and text messages, and arrests.  I have also participated

in efforts to seize and recover funds raised from victims of fraud,

including analyses to determine whether funds constitute proceeds

of fraud subject to seizure and the judicially authorized seizure

of  proceeds  of  fraud.    Through  my  training,  education,  and

experience,  I  have  become  familiar  with  the  manner  in  which

securities and wire frauds are perpetrated.

2.    I am one of the FBI case agents from the FBI's New York

Field Office with primary responsibility for an investigation of

a startup company called Centra Tech, Inc. ("Centra Tech") and its

co-founders, SOHRAB SHARMA ("SHARMA"), RAYMOND TRAPANI ("TRAPANI")

and ROBERT FARKAS ("FARKAS") for soliciting investment funds for

Centra Tech through fraudulent representations and omissions.  As

explained below, based upon such conduct, Centra Tech co-founders

SHARMA, TRAPANI and FARKAS have been charged in an Indictment,

captioned *United States* v. *Sohrab Sharma et al.*, 18 Cr. 340 (LGS)

pending before United States District Judge Lorna G. Schofield in

the  Southern  District  of  New  York  (the  "Criminal Case"),  with

conspiracy to commit securities fraud (in violation of 18 U.S.C.

§ 371),  securities  fraud  (in  violation  of  15  U.S.C.  §§ 78j(b)  &

78ff;  17 C.F.R. § 240.10b-5;  and  18  U.S.C.  § 2),  conspiracy  to

commit wire fraud (in violation of 18 U.S.C. § 1349), and wire

fraud (in violation of 18 U.S.C. §§ 1343 and 2) (collectively, the "Subject Offenses").

3.   As explained below, on or about May 2, 2018, the FBI seized approximately 91,000 units of a digital currency called "Ether" or "ETH" (the "Original Subject Property") that was on deposit in a digital wallet assigned a unique address that is accessible via the internet, namely the digital wallet with an address of "0xdA6F983076725cB2899205A16E16d1ed60a0067A" (the "Seizure Wallet"), pursuant to a seizure warrant signed by United States Magistrate Judge Robert W. Lehrburger of the Southern District of New York (the "Prior Seizure Warrant").   Judge Lehrburger issued the Prior Seizure Warrant based upon a supporting warrant affidavit citing representations made by Centra Tech through its outside counsel and other facts that furnished probable cause to believe that the 91,000 Ether units represent proceeds of the Subject Offenses.  At the time of the seizure, the 91,000 Ether units were worth more than $60 million in U.S. dollars.  The Prior Seizure Warrant and supporting warrant affidavit are attached as Exhibit A and incorporated by reference as though fully set forth herein.

4.   As shown in Exhibit A, "Ether" or "ETH" is a digital currency that is stored on the internet in applications referred to as digital wallets.  Each digital wallet is assigned a unique

alphanumerical identifier known as an address, and each digital wallet can only be accessed using a unique alphanumerical string known as a private key or passcode.

5.     This   Affidavit   is   submitted   in   support   of   the Government's application for the issuance of a warrant to seize and  forfeit  approximately  9,000  Ether  units  that  were  left  to remain  in  the  Seizure  Wallet  when  the  Prior  Seizure  Warrant  was executed  (the  "Remaining  Subject  Property").[1]   At  the  current Ether-to-dollar  exchange  rate,  the  9,000  Ether  units  are  worth more  than  $1,850,000  in  U.S.  dollars.  Based  on  the  facts  set  forth below,  I  respectfully  submit  that  there  is  probable  cause  to believe  that  the  Remaining  Subject  Property  is  subject  to forfeiture  to  the  United  States  of  America  as  the  proceeds  of  the Subject Offenses.

6.     The  information  contained  in  this  Affidavit  is  based upon  my  personal  knowledge  and  involvement  in  the  investigation  of this  matter,  as  well  as  information  obtained  from  other  sources, including  conversations  with  others,  as  well  as  my  review  of documents  gathered  during  the  course  of  this  investigation. Because  this  Affidavit  is  being  submitted  for  the  limited  purpose

---

[1]  As  a  result  of  transaction  fees  incurred  when  the  Prior Seizure  Warrant  was  executed  on  the  Seizure  Wallet,  the  precise amount  of  Ether  left  in  the  Seizure  Wallet  comprising  the  Remaining Subject  Property  was  8,999.996566  Ether  units.  For  ease  of  reference, this  sum  is  referred  to  as  9,000  Ether  units  throughout  this  Affidavit.

4

of establishing probable cause to seize criminal proceeds, it does not include every fact that I have learned during the course of the investigation.  Where the contents of documents and actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**PROBABLE CAUSE**

## A. Probable Cause Regarding the Subject Offenses

7.   On or about March 31, 2018, United States Magistrate Judge James L. Cott of the Southern District of New York approved a criminal complaint, numbered 18 Mag. 2695, charging SOHRAB SHARMA and ROBERT FARKAS, two of Centra Tech's co-founders, with the Subject Offenses of conspiring to commit, and the commission of, securities and wire fraud in connection with a scheme to induce victims to invest digital funds worth millions of dollars for the purchase of unregistered securities, in the form of digital tokens issued by Centra Tech, through fraudulent misrepresentations and omissions (the "Complaint-1").  The Complaint-1 is attached as Exhibit B and incorporated by reference as though fully set forth herein.

8.   On or about April 18, 2018, United States Magistrate Judge Stewart D. Aaron of the Southern District of New York approved a criminal complaint, numbered 18 Mag. 3271, charging

RAYMOND TRAPANI, a third co-founder of Centra Tech, with the same Subject Offenses (the "Complaint-2"). The Complaint-2 is attached as Exhibit C and incorporated by reference as though fully set forth herein.

9.     On or about May 14, 2018, a Grand Jury in the Southern District of New York returned an Indictment, numbered 18 Cr. 340 (LGS), charging SHARMA, FARKAS and TRAPANI with the same Subject Offenses (the "Indictment") in the Criminal Case. The Indictment is attached as Exhibit D and incorporated by reference as through fully set forth herein.

10.     Based on the facts set forth in the Complaint-1, the Complaint-2, and the Indictment (collectively, the "Criminal Charging Documents"), there is probable cause to believe the following, in substance and in part:

a.     In or about July 2017, SHARMA, TRAPANI and FARKAS co-founded a startup company called Centra Tech that purported to offer cryptocurrency-related financial products. For example, Centra Tech claimed to have a Centra Tech debit card that allowed users to spend cryptocurrencies such as "Bitcoin" and "Ether" to make purchases in real-time at various stores and other establishments that were part of the networks of merchant locations that accept payment cards from Mastercard and Visa as a result of

6

purported partnerships between Centra Tech and Bancorp, Mastercard and Visa.[2]  Centra Tech was headquartered in Miami Beach, Florida.

b.   From at least on or about July 30, 2017 through at least in or about April 2018, SHARMA, TRAPANI and FARKAS engaged in a scheme to induce victims to invest digital funds worth millions of dollars for the purchase of unregistered securities, in the form of digital tokens issued by Centra Tech in connection with the company's so-called "initial coin offering" ("ICO"), through a series of material misrepresentations and omissions.[3]

---

[2]   As set forth in the Criminal Charging Documents, "Visa" refers to Visa Inc., a multinational financial services corporation headquartered in California that (among other things) facilitates electronic funds transfers throughout the world through "Visa"-branded credit cards and debit cards; "Mastercard" refers to Mastercard Incorporated, a multinational services corporation headquartered in New York that (among other things) processes payments between the banks of merchants and the card issuing banks or credit unions of the purchasers who use "Mastercard"-branded debit and credit cards; and "Bancorp" refers to The Bancorp, Inc., a Delaware-based financial services company that (among other things) issues debit and prepaid card by virtue of contractual partnerships with other financial services companies such as Visa and Mastercard, among others.

[3]   As set forth in the Criminal Charging Documents, an "initial coin offering" or "ICO" is a type of fundraising event in which an entity offers participants a unique digital "coin" or "token" in exchange for consideration.  The consideration often comes in the form of "digital currency" or "cryptocurrency," but can also be "fiat currency," which is a term used to describe currency that a government has declared to be legal tender, such as the U.S. dollar or the Euro, but is not backed by a physical commodity.  "Digital currency" or "cryptocurrency" is a digital representation of value that can be digitally traded and functions as (1) a medium of exchange, (2) a unit of account, or (3) a store of value, but does

Through this fraudulent scheme, SHARMA, TRAPANI and FARKAS solicited digital funds that included thousands of units of a cryptocurrency called "Ether" worth more than $25 million from investors who purchased digital tokens issued by Centra Tech.

        c.    As part of the scheme, SHARMA, TRAPANI and FARKAS made or caused Centra Tech to make the following misstatements in soliciting investments in Centra Tech, among others:

> i.    SHARMA, TRAPANI and FARKAS claimed to investors that Centra Tech had developed a debit card that enabled users to spend various cryptocurrencies to make purchases at any stores that accept Visa or Mastercard payment cards, and that Centra Tech had partnerships with Bancorp, Visa, and Mastercard to issue Centra Tech debit cards. In fact, Centra Tech had no such partnerships with Bancorp, Visa or Mastercard.
>
> ii.    SHARMA, TRAPANI and FARKAS claimed to investors that Centra Tech's executive team included a purported Chief Executive Officer named "Michael Edwards" and a purported Chief Financial Officer named "Jessica Robinson" who had impressive work histories and academic credentials. In fact, neither "Michael Edwards" nor "Jessica Robinson" was a real person.

---

not have legal tender status. Unlike fiat currency, digital currency is not issued by any jurisdiction and functions only by agreement within the community of users of that particular currency. Examples of digital currencies are "Bitcoin" and "Ether," both of which are issued and distributed on their own "blockchains." A "blockchain" is a digitalized, decentralized, cryptographically-secured ledger that allows market participants to keep track of digital currency transactions without central recordkeeping. The digital tokens or coins issued in an ICO are issued and distributed on a blockchain. Tokens often are also listed and traded on online platforms, typically called digital currency exchanges, and they usually trade for other assets.

iii.    SHARMA, TRAPANI and FARKAS claimed to investors that Centra Tech held money transmitter and other relevant licenses in 38 states.   In fact, Centra Tech did not have such licenses in a number of those states.

iv.    SHARMA, TRAPANI and FARKAS caused Centra Tech to make several of those false claims through (among other things) various promotional videos that were posted on the YouTube website; various white papers that were disseminated to investors via the internet; and various LinkedIn profiles that were posted on the LinkedIn social networking website. SHARMA also reiterated several of those false claims during (among other things) an interview on an internet podcast relating to the cryptocurrency industry.

d.    Cellphone   text   message   conversations   between SHARMA, TRAPANI and FARKAS, found in a cellphone recovered from TRAPANI (the "TRAPANI Cellphone"),[4] show that they were well aware of the falsity of the above-described claims:

i.    For   example,   with   respect   to   the   purported partnerships that Centra Tech claimed to have with Bancorp, Visa, and Mastercard, SHARMA engaged in a text message conversation with TRAPANI on or about July 31, 2017 in which

---

[4]    As set forth in the Complaint-2, the TRAPANI Cellphone was recovered from TRAPANI following his surrender on or about October 5, 2017 on a perjury indictment obtained by the District Attorney's Office for New York County.  On the date of this surrender, TRAPANI signed a consent form giving that District Attorney's Office and the New York City Police Department his "voluntary consent to a complete search" of the TRAPANI Cellphone, and he also wrote the password to access the TRAPANI Cellphone on the consent form. Pursuant to that consent form, the TRAPANI Cellphone was searched on or about October 17, 2017, the TRAPANI's Cellphone's contents were copied into an extraction report containing more than 14,000 pages of materials, and the TRAPANI Cellphone was returned to TRAPANI.  I have reviewed the extraction report and documentation generated as result of this consensual search.  The dates and times of particular text messages reported in the Criminal Charging Documents and herein are as they appear in the extraction report, without conversion to Eastern Standard Time.

9

they discussed Centra Tech's lack of actual partnerships with
banks or credit card companies.  During that exchange, SHARMA
(via a cellphone assigned a call number ending with "3138"
that is referred to as the "SHARMA Cellphone-1" in the
Complaint-2) wrote:  "Should write down a list of places to
call tomorrow," "For the conbranded [sic] card."  Later in
the exchange, SHARMA wrote:  "Gotta get it going on the banks
today plz."  SHARMA also subsequently wrote:  "We just need
to get s [sic] banking license," "Need our direct agreement
with visa," "Or MasterCard," "That's the move," "Cut out the
middle man," "I wish we just knew someone."

      ii.     With  respect  to  Centra  Tech's  purported  CEO
"Michael Edwards" and purported CFO "Jessica Robinson,"
SHARMA (via the SHARMA Cellphone-1) text-messaged TRAPANI on
or about July 29, 2017, that they "Need to find someone who
looks  like  Michael," "He's  real  lol,"
"Everyone real," "Except Jessica," "And Mike."  Later that
day,  SHARMA  (via  the  SHARMA  Cellphone-1)  text  messaged
TRAPANI:  "Gonna kill both Ceo and her," "Gonna say they were
married and got into an accident."

      iii.    With  respect  to  Centra  Tech's  purported  money
transmitter and other licenses in 38 states, SHARMA had a
text message conversation with TRAPANI and FARKAS on or about
August 30, 2017 about applying for state licenses that Centra
Tech  had  previously  represented  it  already  held  in  38
states.  For example, SHARMA wrote in one message on or about
August 30, 2017 to TRAPANI and FARKAS:  "Gotta apply for all
licenses," "Should I even say this."

      iv.     With respect to false claims in a white paper that
Centra Tech published to investors on the company's website,
SHARMA had a text message conversation with TRAPANI and FARKAS
on or about September 29, 2017 about taking down (among other
things) the version of the white paper that was on the
company's website at the time.  During this conversation,
SHARMA (via a cellphone assigned a call number ending with
"6091" that is referred to as the "SHARMA Cellphone-2" in the
Complaint-2) sent text messages to TRAPANI and FARKAS in which
SHARMA wrote (among other things):  "I rather cut any fufu,"
"Off right own," "Now," "Then worry," "Anything that doesn't
exist current," "We need to remove," "Have them do it asap."
Later in the same conversation, SHARMA (via the SHARMA
Cellphone-2) wrote:  "I want a product page like [another

10

company]," "Theirs is so nice." TRAPANI wrote "Lol yeah no real product." SHARMA wrote: "Yea but it doesn't say much," "And looks good," "We don't have a real product either right now," "So I wanna tighten up ship asap."

e.   As detailed in the Criminal Charging Documents, SHARMA also sent and received email communications showing that he was well aware of the falsity of the aforementioned claims by Centra Tech in soliciting investments in Centra Tech:

i.   For example, with respect to Centra Tech's claimed partnership with Bancorp for the issuance of Centra Tech debit cards licensed by Visa and Mastercard, SHARMA on or about August 30, 2017 forwarded to FARKAS, among others, an email that SHARMA had received from Bancorp directing Centra Tech to "CEASE AND DESIST FROM REPRESENTING THAT THE BANCORP BANK HAS ANY CONNECTION WITH, OR IS THE ISSUER OF ANY CARD PRODUCTS RELATED TO CENTRA TECH."

ii.   On or about the same day, SHARMA (via the SHARMA Cellphone-1) engaged in a text message conversation with TRAPANI and FARKAS concerning the cease-and-desist notice from Bancorp. During this exchange, SHARMA wrote: "Google Bitsset and Centra," "And contact anyone that has that image," "And ask them to remove it . . . . Or that language," "Saying we work Bancorp," "Od bad," "Their lawyer reached out." Later that day, FARKAS text messaged SHARMA and TRAPANI: "No Bancorp on it." SHARMA responded: "In the bottom? . . . . U sure," "I thought I saw," "On press releases." FARKAS wrote: "Just checked them all," "No Bancorp?" SHARMA responded: "Okay," "We gotta get that shit removed everywhere and blame freelancers lol . . . ."

iii.   In addition, on or about October 13, 2017, FARKAS, via one of his personal email accounts ("rjfarkas6@gmail.com") sent an email to SHARMA, via one his work email accounts ("sam@centra.tech") and one of his personal email accounts ("ssharma491@gmail.com") attaching FARKAS' edits to an investor pitch deck dated August 15, 2017, promoting Centra Tech and its ICO. The pitch deck contained several misleading claims, including, among other things, that: (i) the Centra Card gives users "[a]ccess to more than

11

36 Million Points of Sale wherever Visa and/or Mastercard is accepted"; (ii) the Centra Card was "issued" by "Mastercard and Visa;" and (iii) Centra in January 2017 had a "Major Banking Partnership and license agreement signed with VISA USA Inc."

11.  I have reviewed documents and other evidence provided by the United States Securities and Exchange Commission (the "SEC") that were gathered by the SEC during a parallel SEC investigation of Centra Tech and its co-founders, and I have reviewed an amended complaint filed on or about April 20, 2018 by the SEC against SHARMA, TRAPANI and FARKAS in the Southern District of New York charging the three of them with civil federal securities law violations arising from Centra Tech's ICO (the "SEC Complaint") based upon evidence gathered by the SEC during its parallel investigation.  The SEC Complaint against SHARMA, TRAPANI and FARKAS (who are referred to as the "Defendants" in the SEC Complaint) is attached as Exhibit E and incorporated by reference as though fully set forth herein.  According to the SEC Complaint (at ¶¶ 65-68), in addition to making fraudulent misrepresentations and omissions to solicit investors to purchase digital tokens (called "Centra Tokens" or "CTRs") issued by Centra Tech during its ICO, SHARMA, TRAPANI and FARKAS also engaged in a scheme to manipulate the market price of Centra tokens on various digital asset trading exchanges.  Paragraphs 65 through 68 of the SEC Complaint state the following:

65. Defendants also manipulated the price of the Centra Token in the weeks leading up to the ICO. Defendants' manipulative trading was intended to generate interest in the company and to ensure that prospective investors were not discouraged by the Centra Token price — which was then trading on public exchanges between approximately $.15 and $.50 per token on limited trading volume — or by public comments that were negative of Centra and its purported products. As Sharma explained to Trapani in late August 2017, "[c]an't have more FUD [fear, uncertainty and doubt] . . . There's FUD around[.] Mainly about price." Defendants undertook this manipulative trading knowingly, recklessly, or negligently.

66. As one example of Defendants' manipulations, over August 26 and 27 Sharma and Trapani engaged in a concerted effort to manipulate the CTR Token price higher. On August 27, 2017, for example, Sharma instructed Trapani to artificially increase the Centra Token price: "Ray keep bumping the price. Do [larger] buys." Trapani responded "what size," to which Sharma explained "10 ETH plus" and Trapani agreed. Later that same day, Sharma again instructed Trapani to make additional large purchases, to which Trapani responded "yeah I am doing big buys." That evening, Sharma noted with approval that "we already pushed the price higher By doing that pump[.] Naturally We gotta keep doing that[.] Price is rising." The next day when Sharma noticed that Trapani was making additional large purchases, he directed Trapani to make the purchases at higher prices: "Gotta do higher than 60," Sharma instructed, and then made clear that he should make the buys at $0.80 per token. Trapani agreed, after which Sharma responded that they should "[g]et . . . [r]eady for the pump Lol."

67. When the pump was completed, Sharma messaged Trapani that they had "[b]urned through like 250 ETH" — or approximately $75,000 — and moved "the price higher by 30%."

68. Based on publicly available market data, Trapani and Sharma's efforts to manipulate the Centra Token price were successful. During August 26 — 28, 2017, the

13

price of the Centra Token went from approximately $0.50 per token to over $1, and on August 27 the closing price was $6.91 – which represents the highest closing price ever recorded for Centra Tokens.  In addition, while trade volume in early August ranged anywhere from 2,000 to 50,000 transactions per day, on August 26, 2017 the trade volume increased to well over one million tokens traded.

(Exhibit E at ¶¶ 65-68 (SEC's brackets and alterations).)

12.  From my review of transcripts of various proceedings in the Criminal Case, my participation in this investigation, and my conversations with other law enforcement officials working on this investigation, I have learned the following, in substance and in part:

a.  In April 2018, SHARMA and FARKAS were arrested on the Complaint-1 and TRAPANI was arrested on the Complaint-2, and all three of them were charged in May 2018 in the Indictment in the Criminal Case against them before United States District Judge Lorna G. Schofield in the Southern District of New York.

b.  As relevant for present purposes, SHARMA and FARKAS were arrested on or about April 1, 2018 in the Southern District of Florida on the Complaint-1 in connection with the Criminal Case. Both of them were presented on the Complaint-1 before United States Magistrate Judge Lurana S. Snow in the Southern District of Florida on or about April 2, 2018.  SHARMA and FARKAS subsequently consented to their detention and removal to the Southern District

14

of New York for further proceedings on the Complaint-1, without prejudice to their ability to apply for their releases on bail upon their arrival in the Southern District of New York. After SHARMA and FARKAS were removed to the Southern District of New York, each of them had separate contested bail hearings in May 2018 at which the Office of the United States Attorney for the Southern District of New York (the "Government") sought to have both of them detained pending trial. Transcripts of these bail hearings are attached as Exhibits F, G and H, respectively, and incorporated by reference as though fully set forth herein. SHARMA and FARKAS were ultimately ordered to be released on specified bail conditions but only upon satisfaction of those bail conditions. SHARMA and FARKAS were both eventually released from custody on bail.

c.   TRAPANI has also been released from custody on judicially approved bail conditions that were agreed upon between him and the Government.

**B. Probable Cause as to the Remaining Subject Property**

13.   Based on the facts set forth herein, I respectfully submit that there is probable cause to believe that the Remaining Subject Property constitutes proceeds of the Subject Offenses and is subject to forfeiture to the United States of America.

15

## Overview

14.  Based on the facts set forth below, there is probable cause to believe:

a.  During Centra Tech's ICO, which took place from approximately on or about July 30, 2017 through on or about October 5, 2017 (the "ICO Period"), purchasers of Centra Tech tokens provided funds in the form of digital currency (including thousands of units in a digital currency known as "Ether" or "ETH") in exchange for Centra Tech tokens.  Based on the facts set forth in the Criminal Charging Documents, there is probable cause to believe that all such Ether units were solicited from Centra Tech token purchasers through fraudulent misrepresentations and omissions by Centra Tech and its co-founders SHARMA, TRAPANI and FARKAS as part of their commission of the Subject Offenses, and thus that all such Ether units represent proceeds of the Subject Offenses.

b.  After the SEC made Centra Tech aware of the SEC's investigation of Centra Tech by serving a subpoena on Centra Tech in late November 2017, Centra Tech transferred approximately 100,000 Ether units to the Seizure Wallet, a digital wallet with a unique passcode that was possessed only by Centra Tech co-founder SHARMA.

c.  According to representations of Centra Tech through its outside counsel and representations of SHARMA through his

16

individual counsel, 91,000 of the 100,000 Ether units in the Seizure Wallet (*i.e.*, the Original Subject Property) were raised from purchasers of Centra tokens during the ICO Period in connection with Centra Tech's ICO. Through his own counsel and through Centra Tech's outside counsel, SHARMA claimed that the remaining 9,000 Ether units in the Seizure Wallet (*i.e.*, the Remaining Subject Property), were proceeds of SHARMA's own cryptocurrency trading activities.

        d.   Based in large part on such representations, which were memorialized in the warrant affidavit submitted in support of the Government's application for the Prior Seizure Warrant to seize 91,000 of the Ether units in the Seizure Wallet, the FBI obtained the Prior Seizure Warrant and in May 2018 transferred those funds into a secure digital wallet maintained by the FBI pursuant to the Prior Seizure Warrant.

        e.   As shown below, as a result of the continuing investigation in this matter, I and others at the FBI have become aware of facts, which are described below, that I respectfully submit furnish probable cause to believe that the remaining 9,000 Ether units in the Seizure Wallet also represent ICO proceeds of the Subject Offenses and that the representations by Centra Tech and SHARMA to the contrary were false and misleading.

17

**The Seizure of 91,000 Ether Units from the Seizure Wallet**

15.   I have reviewed materials available to the public via the internet concerning Centra Tech, documents gathered by law enforcement as part of this investigation (including text messages recovered from the TRAPANI Cellphone), documents provided by the SEC that the SEC gathered as part of its parallel investigation, and transcripts of proceedings in the Criminal Case against Centra Tech's co-founders in the Southern District of New York.   I have also gathered information through conversations with other law enforcement officials familiar with this matter, conversations with representatives of the Government concerning representations by Centra Tech and its co-founders through their respective counsel, and conversations with representatives of the SEC concerning information and evidence gathered by the SEC's parallel investigation.   Based on the foregoing sources, I have learned the following, in substance and in part:

a.   From on or about July 30, 2017 through on or about October 5, 2017, Centra Tech raised funds from investors, primarily in the form of units of the digital currency called "Ether" or "ETH," via the company's ICO.   During this ICO, Centra Tech accepted digital funds from investors, including Ether units, in exchange for digital tokens issued by Centra Tech, known as "Centra

18

tokens" or "CTR tokens" or "CTRs" that could be traded, or exchanged, on various digital currency exchanges.  The Ether units that Centra Tech raised from investors can be grouped into two broad categories:  thousands of Ether units provided by a company in South Korea called Bitsett in exchange for Centra tokens, and thousands of Ether units raised from a wide variety of other investors in exchange for Centra tokens.

b.   In or about the fourth quarter of 2017, the SEC initiated an investigation of Centra Tech.  As part of that investigation, the SEC issued a subpoena on or about November 29, 2017 to Centra Tech, care of Centra Tech's outside counsel at the law firm of Ballard Spahr LLP, which has been retained to represent Centra Tech.  The subpoena compelled Centra Tech to produce a variety of documents, including various documents relating to Centra Tech co-founders SOHRAB SHARMA, RAYMOND TRAPANI and ROBERT FARKAS, documents sufficient to identify all digital and other assets held by or on behalf of Centra Tech, and documents sufficient to identify all investors who purchased any tokens offered by Centra Tech, among other categories of documents and information.

c.   During Centra Tech's outside counsel's representation of Centra Tech, the outside counsel engaged in several conversations with representatives of the SEC working on

the SEC's investigation.  Centra Tech's outside counsel also had

separate conversations with representatives of the Government and

the FBI with respect to the parallel criminal investigation

relating to Centra Tech.  During these conversations, the following

occurred, in substance and in part:

      i.    On or about November 29, 2017, during a telephone
call between representatives of the SEC and Centra Tech's
outside counsel, the following occurred, in substance and in
part.  The SEC inquired about the location and status of funds
raised by Centra Tech from its investors during the company's
ICO and about whether the company had taken any measures to
ensure that such funds were not at risk of being dissipated.
Centra Tech represented through its outside counsel that
those funds were intact but undertook to confirm as much.

      ii.   On or about November 30, 2017, during a telephone
call between representatives of the SEC and Centra Tech's
outside counsel, Centra Tech represented the following, in
substance and in part, through its outside counsel.  In
response to the concerns raised by the SEC the day before,
all of the Ether units raised by Centra Tech through its ICO
had been transferred to a digital wallet (namely, the digital
wallet referred to herein as the Seizure Wallet) with a
unique passcode.  As a result, the Seizure Wallet contained a
total of approximately 100,000 Ether units (then worth more
than $40 million in U.S. dollars).  The passcode to the
Seizure Wallet had been in the possession of Centra Tech
co-founder SHARMA, but had been reduced to a piece of paper
that was divided into halves that were given to Centra Tech
executive FARKAS and Centra Tech's General Counsel Allan
Shutt, respectively.  The combination of those halves of the
paper supposedly represented the only copy of the passcode to
the Seizure Wallet.  The half of the paper given to FARKAS,
containing part of the purported passcode, was placed in a
safe deposit box in FARKAS' name; and the other half of the
paper given to Shutt, containing the remainder of the
purported passcode, was placed in a safe deposit box in
Shutt's name.

iii.    On or about January 18, 2018, Centra Tech through
its outside counsel provided a letter to the SEC (the "January
18 Letter") enclosing a summary spreadsheet ("Summary
Spreadsheet") in response to specified document requests in
the SEC's November 29, 2017 subpoena to Centra Tech.
According to the subpoena, the document requests at issue
(namely, document requests numbered 6, 7 and 9 in the
subpoena) sought (among other things) documents sufficient to
identify all investors who purchased any digital token issued
by Centra Tech, documents sufficient to disclose the amounts
and dates of payments for each investor, and documents
sufficient to identify all cryptocurrency digital wallet
addresses that were used to send assets to Centra Tech in
connection with any digital token sold by Centra Tech.
According to the January 18 Letter, the Summary Spreadsheet
was created to respond to those document requests in that SEC
subpoena, the Summary Spreadsheet was "not a pre-existing
document;" and "[s]hould it be determined that there are any
errors in the compilation of information, we will provide a
revised spreadsheet."

iv.    Based on my review of the January 18 Letter and the
Summary Spreadsheet, I have learned that the Summary
Spreadsheet purports to show, in substance and in part, that
Centra Tech received a total of approximately 91,000 Ether
units in exchange for Centra tokens issued by Centra Tech
during the ICO Period as part of the company's ICO: a total
of approximately 40,000 Ether units from so-called "Korea
Partners," a reference to Bitsset,[5] and a total of
approximately 51,000 Ether units from hundreds of individual
Centra token purchasers named in the Summary Spreadsheet.

v.    On or about January 30, 2018, during a telephone
call between representatives of the SEC and Centra Tech's

---

[5]    The Summary Spreadsheet refers to Bitsset as "Korea
Partners," rather than mentioning Bitsset by name. However, as
detailed herein, Centra Tech has made representations through its
outside counsel showing that it was the Korea-based company Bitsset
that provided the 40,000 Ether units attributed to "Korea Partners"
in the Summary Spreadsheet. Accordingly, based on such
representations and other facts set forth in this Affidavit, I
believe that "Korea Partners" is synonymous with Bitsset.

21

outside counsel, Centra Tech represented through its outside counsel, in substance and in part, the following. Centra Tech represented that of the 100,000 Ether units that Centra Tech had transferred into the Seizure Wallet, approximately 40,000 of those Ether units had been raised from Bitset and approximately 51,000 of those Ether units had been raised from other Centra token purchasers during Centra Tech's ICO (for a total of 91,000 Ether units that are collectively referred to herein as the Original Subject Property). Centra Tech further claimed that the remaining 9,000 Ether units (referred to herein as the Remaining Subject Property) belonged to SHARMA and were proceeds and profits of his personal cryptocurrency trading unrelated to Centra Tech, and were not funds raised during Centra Tech's ICO from purchasers of Centra tokens.

d. Centra Tech co-founders SHARMA and FARKAS were arrested in the Southern District of Florida on or about April 1, 2018 based on the Complaint-1 charging them with the Subject Offenses of conspiring to commit, and the commission of, securities and wire fraud, in connection with their solicitation of millions of dollars worth of digital assets (including Ether units) raised from investors in exchange for Centra tokens issued by Centra Tech based on fraudulent misrepresentations and omissions. SHARMA and FARKAS were presented on the Complaint-1 in the Southern District of Florida on or about April 2, 2018 and subsequently consented to their detention and removal to the Southern District of New York for further proceedings on the Complaint-1, without prejudice to their ability to apply for their releases on bail upon their arrival in the Southern District of New York.

22

e.   On or about April 10, 2018, Centra Tech's General Counsel, Allan Shutt, provided his half of what was purported to be the passcode to the Seizure Wallet to FBI agents in the Southern District of Florida in response to grand jury subpoenas that were previously served on Centra Tech.

f.   On or about April 11, 2018, FBI agents in the Southern District of Florida retrieved FARKAS' half of what was purported to be the passcode to the Seizure Wallet pursuant to a judicially authorized search warrant issued by United States Magistrate Judge Barry S. Seltzer of that District.

g.   After FBI agents in the Southern District of Florida gained possession of both Schutt's and FARKAS' halves of paper containing what was purported to be the passcode to the Seizure Wallet containing 100,000 Ether units (namely, the 91,000 Ether units that Centra Tech represented had been raised from Bitset and other Centra token purchasers and the remaining 9,000 Ether units that Centra Tech represented belonged to SHARMA), those agents in the Southern District of Florida sent images of that purported passcode to myself and another FBI agent in the Southern District of New York who has significant training and experience in investigations of crimes involving digital currencies.

h.   On or about April 11, 2018, based on the presence of exigent circumstances described in Exhibit A, I and another FBI

23

agent attempted to use the purported passcode (documented on the paper fragments that had been possessed by Shutt and FARKAS) to transfer the 91,000 Ether units that indisputably represented proceeds of the Subject Offenses from the Seizure Wallet set up by Centra Tech to a secure digital wallet maintained by the FBI, pursuant to Title 18, United States Code, Section 981(b)(2)(B)(ii).

i.   After attempting to use the purported passcode to access the Seizure Wallet, I learned that the passcode formed by combining both Schutt's and FARKAS' halves of paper did not work and was unable to provide access to the funds contained in the Seizure Wallet.

j.   On or about April 13, 2018, United States Magistrate Judge Robert W. Lehrburger of the Southern District of New York signed the Prior Seizure Warrant authorizing the FBI to seize the Original Subject Property consisting of 91,000 Ether units then on deposit in the Seizure Wallet by serving a copy of the Seizure Warrant upon any person or entity in possession or control of the Original Subject Property and directing them to effectuate a transfer of the Original Subject Property to the FBI. The Prior Seizure Warrant was approved by Judge Lehrburger based upon a supporting warrant affidavit detailing evidence furnishing probable cause to believe that the 91,000 Ether units that

24

represent proceeds of the Subject Offenses, including representations of Centra Tech through its outside counsel acknowledging that the 91,000 Ether units were raised from Bitset and other Centra token purchasers during Centra Tech's ICO. The Prior Seizure Warrant was subsequently served on (among others) SHARMA via his original individual counsel at the law firm of Konstelantz & Fink LLP (which was retained by SHARMA to represent him in the Criminal Case), and on FARKAS via his original individual counsel at the law firm of McLaughlin & Stern LLP (which was retained by FARKAS to represent him in the Criminal Case).

k.    After SHARMA and FARKAS, who had been detained following their arrests in the Southern District of Florida in this case, were removed to the Southern District of New York, each of them had separate bail hearings in May 2018 at which the Government sought to have both of them detained pending trial.

l.    On or about May 1, 2018, the Government and FARKAS and his original counsel appeared for a bail hearing before United States Magistrate Judge Ona T. Wang of the Southern District of New York. At the bail hearing, the Government reported that efforts by the FBI to access the Seizure Wallet containing 100,000 Ether units (including at least 91,000 Ether units of victim-investor funds) using the purported passcode obtained from Centra Tech had failed, and that neither SHARMA nor FARKAS had effectuated

25

the transfer of 91,000 of those Ether units to the FBI as required by the Prior Seizure Warrant.   FARKAS represented through his counsel that the purported passcode to the Seizure Wallet had been provided (to FARKAS and Shutt) by SHARMA after the SEC inquired about the Seizure Wallet, that FARKAS believed in good faith that the purported passcode was in fact the actual passcode to the Seizure Wallet, and that FARKAS had learned while he and SHARMA were incarcerated as a result of this Criminal Case that SHARMA had altered the actual passcode before providing it to FARKAS and Shutt in response to the SEC's inquiries.   Judge Wang ordered FARKAS detained until a specific set of conditions were met, including the successful transfer to the FBI of the Original Subject Property of 91,000 Ether units pursuant to the Prior Seizure Warrant.

        m.   On or about May 1, 2018, the day before SHARMA's first bail hearing, SHARMA's original counsel reported to the Government that the actual passcode to the Seizure Wallet was on a piece of paper taped underneath a drawer in the kitchen of an apartment in Miami, Florida where SHARMA lived with his girlfriend. FBI agents from the FBI's Miami Field Office went to that apartment on or about May 2, 2018, and, with the consent of SHARMA's girlfriend, the agents searched the kitchen of the apartment and recovered a piece of paper with what appeared to be a passcode to

26

a digital wallet such as the Seizure Wallet.  On or about May 2, 2018, using this passcode, the FBI successfully transferred the Original Subject Property of 91,000 Ether units from the Seizure Wallet to a secure digital wallet maintained by the FBI pursuant to the Prior Seizure Warrant.  As explained below, because law enforcement had not become aware at that point in this investigation of evidence contradicting representations by Centra Tech that the remaining 9,000 Ether units were proceeds of SHARMA's cryptocurrency trading that were not raised from Centra Tech investors, the 9,000 Ether units were left in the Seizure Wallet.

n.   On or about May 2, 2018, the Government and SHARMA and his original counsel appeared for the first of two bail hearings before United States Magistrate Judge Debra C. Freeman of the Southern District of New York.  At the first bail hearing, SHARMA through his counsel admitted that SHARMA had previously provided a false passcode to the Seizure Wallet in response to inquiries by the SEC.  For example, according to the transcript of this bail hearing, SHARMA's counsel stated the following on behalf of SHARMA on the record before Judge Freeman:

> As you've just heard, my client was arrested on April 1st [in 2018].  Before his arrest, I can tell you I was representing him in the SEC matters since February [2018]. . . .  That was the first that the defendant became aware that there is a criminal investigation.  Up until then, it had been an SEC

investigation.   He was no longer active in his
company as of . . . October of 2017, and so he had
November 29th is the day the SEC appeared and that
is when the passcode situation arose where the SEC
was informed that the virtual wallet [*i.e.*, the
Seizure Wallet] had been secured and the passcode
was in two separate spots.  Your Honor, we now know
that that was not true.  I cannot explain to the
Court why that happened.  I believe my client was
very misguided, taking his own counsel and perhaps
others.  But that was misguided.

I had my first chance to speak with him face-to-
face since he was arrested on April 1st, I met with
him for the first time yesterday when he arrived in
New York.  Within a very short time of my meeting
him, he told me the truth about the passcode, and
I immediately told the Government where it could be
found and his girlfriend met the FBI this morning
and they found it under the kitchen drawer. . . .
So I really — I cannot explain why he did not give
the proper passcode.  It may be a trust issue, I'm
not sure.

(Exhibit G at 19-20.)

o.    At SHARMA's first bail hearing on or about May 2,

2018, SHARMA also represented through his original counsel to Judge

Freeman that the remaining 9,000 Ether units in the Seizure Wallet

(then worth about $6 million in U.S. dollars) belonged to SHARMA

and were not raised from Centra Tech investors.  The Government

explained that it was not aware at that time of evidence

establishing probable cause to seize the remaining 9,000 Ether

units, but noted that the Government's investigation remains

ongoing and that if the Government later learned of facts

establishing probable cause to seize these funds, the Government

28

would seek to do so.  After Judge Freeman expressed concerns that SHARMA could use those funds to flee if he were released on bail, SHARMA's counsel proposed placing the 9,000 Ether units in a different digital wallet that would be controlled by a trustee appointed on behalf of SHARMA and would not be accessible to SHARMA.  To give SHARMA and his counsel enough time to prepare a bail package addressing Judge Freeman's concerns, Judge Freeman continued SHARMA's detention pending a further bail hearing, which took place on or about May 11, 2018.

   p. At SHARMA's second bail hearing on or about May 11, 2018, SHARMA through his counsel proposed a bail package to Judge Freeman that would include a requirement that remaining 9,000 Ether units in the Seizure Wallet (among other assets) be placed in a trust, to be managed by a trustee, that would permit the trustee to use funds in the trust solely for enumerated expenses such as, for example, legal fees and living expenses for SHARMA, pursuant to a trust agreement to be approved by the Government and the Court.  SHARMA's counsel reiterated on behalf of SHARMA that the 9,000 Ether units "is Mr. Sharma's money" (Exhibit H at 7-8 ("as the Court knows, there . . . is a virtual wallet, which still contains 9,000 of ether which is valued right now today a little bit over $6 million that is Mr. Sharma's money")), and further that "although he would be the beneficiary of the trust, [he] would

29

have no ability to invade the trust" (Exhibit H at 8-9).  Judge Freeman ordered that SHARMA be released on specified bail conditions and that he be detained until those bail conditions had been satisfied, including a bail condition requiring that SHARMA's assets in the Seizure Wallet "containing his funds (9,000 in ether, which the Court understands to be currently valued at approx. $6 million) to be placed in trust, with a trust agreement to be reviewed by the [Government] and found acceptable."

16.  I have reviewed transcripts of proceedings and other publicly available court filings in *Jacob Zowie Thomas Rensel* v. *Centra Tech, Inc. et al.*, 17 Civ. 24500 (JLK), a putative class securities fraud action by a lead plaintiff on behalf of Centra Tech investors against defendants Centra Tech, SHARMA, TRAPANI, and FARKAS, among others, that is pending before United States District Judge James L. King of the Southern District of Florida (the "Private Class Action").  Based these sources, I have learned the following, in substance and in part.  After the FBI seized 91,000 of the 100,000 Ether units in the Seizure Warrant, the defendants in the Private Class Action initially consented to the entry of a preliminary injunction freezing all 100,000 of the Ether units in the Seizure Wallet, even though the defendants contended that the remaining funds of about 9,000 Ether units in the Seizure Wallet belonged to Centra Tech but were supposedly unrelated to

its ICO. (*See* ECF 17 Civ. 24500 (JLK), Docket Entry No. 79 at 15
n.10.)    The defendants in the Private Class Action, however,
subsequently revoked their consent to the seizure of the remaining
9,000 Ether units in the Seizure Wallet, and Judge King issued a
preliminary injunction on or about September 25, 2018 that imposes
an asset freeze over the 91,000 Ether units that are currently
held in a digital wallet controlled by law enforcement but does
not freeze or otherwise protect the remaining 9,000 Ether units
in the Seizure Wallet. (ECF 17 Civ. 24500 (JLK), Docket Entry No.
95.)

## The Remaining 9,000 Ether Units in the Seizure Wallet

17.    Since SHARMA's bail hearings in May 2018, as a result of
the continuing investigation in this matter, I and others at the
FBI have become aware of facts, which are described below, that I
respectfully submit furnish probable cause to believe that the
remaining 9,000 Ether units in the Seizure Wallet represent
proceeds of the Subject Offenses, and that the representations by
Centra Tech and SHARMA to contrary were false and misleading.

18.    As shown below, I respectfully submit that there is
probable cause to believe the following:  (a) Centra Tech raised
at least 100,000 Ether units during it ICO from investors who
purchased Centra tokens, not 91,000 Ether units as claimed by
Centra Tech and SHARMA; (b) the 100,000 Ether units that Centra

31

Tech transferred to the Seizure Wallet, including the 9,000 Ether units that remain in the Seizure Wallet after the seizure of the other 91,000 Ether units pursuant to the Prior Seizure Warrant, are traceable in whole or substantial part to funds raised by Centra Tech during and as part of its ICO; and (c) there is evidence described below establishing probable cause to believe that the remaining 9,000 Ether units in the Seizure Wallet are traceable, in whole or substantial part, to transactions in which Centra Tech raised 7,500 Ether units from Bitset and 2,500 Ether units from an investor referred to by SHARMA as "Shin" in exchange for Centra tokens during the ICO Period, and both of these transactions are not included in the 91,000-Ether-unit-figure that Centra Tech has claimed represents the total of all the funds raised through its ICO.

19.   Based on the following facts, I respectfully submit that there is probable cause to believe that Centra Tech raised at least 100,000 units of "Ether" or "ETH" from investors who purchased Centra tokens during Centra Tech's ICO, not 91,000 Ether units as previously claimed by Centra Tech and SHARMA:

   a.   As set forth in the Criminal Charging Documents, during Centra Tech's ICO, Centra Tech published various whitepapers via the company's internet website to solicit investors to purchase Centra tokens in exchange for units of Ether.

32

Based on my review of a whitepaper that was downloaded from Centra Tech's website on or about August 3, 2017, I have learned the following, in substance and in part.  According to this whitepaper, Centra Tech created a total of 100 million Centra tokens ("Issuance of Centra Tokens[:]   100,000,000*"), and planned to offer 68 million of the tokens to investors in exchange for units of Ether during the ICO ("[w]e will be offering 68% of all [100 million] CTR Tokens to be created for purchase in our crowd sale to the public"), and planned to allocate the remaining 32 million of the tokens for specified business purposes and for distribution to Centra Tech's founders and others as incentive compensation ("[w]e will allocate 20% of all [100 million] CTR Tokens created to distribution of bug bounty, business development, community projects, market expansion, and more" and "[t]he remaining 12% will be distributed to Centra Techs founders, early investors, and employees as an incentive").  This whitepaper further provided that the Centra tokens would be offered at an exchange rate of 400 Centra tokens per unit of Ether ("Token Exchange Rate[:] 400 CTR = 1 ETH"), yielding a total of 170,000 Ether units if Centra sold 68 million Centra tokens at that exchange rate ("Total Sale Goal [:] 170,000 ETH").

b.    Based on my review of text messages and other data recovered from the TRAPANI Cellphone, I have learned the following, in substance and in part:

i.    On or about September 24, 2017, SHARMA, via the SHARMA Cellphone-1, engaged in a text message conversation with TRAPANI, via the TRAPANI Cellphone.   Starting at approximately 6:18PM on or about September 24, 2017, TRAPANI text-messaged SHARMA:   "We Gucci tunchi hitting 100k ETH." SHARMA responded:  "Amazing."

ii.    On or about September 26, 2017, SHARMA, via the SHARMA Cellphone-2 engaged in a text message conversation with TRAPANI, via the TRAPANI Cellphone.   Starting at approximately 12:13AM on or about September 26, 2017, TRAPANI text-messaged SHARMA:   "Niggas said 100k ETH," "Wild how we did that."  SHARMA responded:   "Nigga what," "I'm going to Korea to get us 26k more," "We gonna have 100K sitting . . . And 20K liquidated."  TRAPANI wrote:  "It's crazy Brodie lol."

iii.    On or about October 2, 2017, SHARMA, via the SHARMA Cellphone-2, engaged in a group text message conversation with TRAPANI, via the TRAPANI Cellphone, and FARKAS, via a cellphone with a call number ending with "2656" (the "FARKAS Cellphone").   Starting at approximately 12:47PM on or about October 2, 2017, SHARMA text-messaged TRAPANI and FARKAS:   "I did mad job stuff over the weekend," "Also got us 100K in ETH in the account . . . . And we still have 28.9M ctr left." TRAPANI wrote:   "Good shit . . . . Was just watching it as you where moving it wondering what you where doing lol," "Perfect."  Later in the group conversation, at approximately 12:48PM on or about October 2, 2017, SHARMA wrote:   "Made it 100K in ETH for storage."   Furthermore, starting at approximately 12:49PM on or about October 2, 2017 during this group conversation, SHARMA wrote:  "I wanna flip like 5M of CTR," "Actually like 8.5M," "And hold 20M CTR and 100k ETH." TRAPANI responded:  "Word."[6]

---

[6]  In the Private Class Action, Centra Tech publicly filed a declaration of its general counsel Allan Shutt (ECF Docket No. 17 Civ. 24500 (JLK), Docket Entry No. 26-1) making conclusory assertions that "Centra Tech's business records from its ICO demonstrate that, in total, Centra Tech ultimately raised a total of approximately 51,068,675 ETH from Centra token purchasers in addition to 40,000 ETH raised from Bitsset and that the remaining sum of close

20.  Based on the foregoing and the facts set forth below, I respectfully submit that there is probable cause to believe that the 9,000 Ether units that were left in the Seizure Wallet when the Prior Seizure Warrant was executed are traceable to proceeds of the Subject Offenses raised from investors who purchased Centra tokens during Centra Tech's ICO.

21.  As set forth above, Centra Tech transferred approximately 100,000 Ether units into the Seizure Wallet on or about November 29, 2017 in response to inquiries from the SEC; Centra Tech on or about January 18, 2018 provided the SEC with the Summary Spreadsheet purporting to show that Centra Tech raised a total of approximately 91,000 Ether units (40,000 Ether units from the "Korea Partners," a reference to Bitset, and 51,000 Ether units from other investors) in exchange for Centra tokens issued during Centra Tech's ICO; and the FBI on or about May 2, 2018 transferred 91,000 of those Ether units to a digital wallet

to 9,000 ETH "represents funds outside of the ICO belonging to Centra Tech." This declaration does not disclose or address the above-quoted text messages to the contrary, does not state which business records support these conclusory assertions, does not state whether Shutt performed any Ether tracing analysis to support these conclusory assertions, and does not state whether Shutt relied on others at Centra Tech (such as SHARMA) to form these conclusory assertions. As shown in this Affidavit, there is cause to believe that various records created by Centra Tech such as the January 18 Letter and Summary Spreadsheet purporting to disclose the sources of Centra Tech's ICO proceeds dot not fully account for all of the ICO proceeds. For these reasons and based on the other facts set forth in this Affidavit, Shutt's declaration does not alter my belief that there is probable cause that Centra Tech raised at least 100,000 Ether units in the ICO and that the Remaining Subject Property represents proceeds of the Subject Offenses.

maintained by the FBI pursuant to the Prior Seizure Warrant based on a judicial determination that there was probable cause to believe that the 91,000 Ether units was subject to seizure and forfeiture as proceeds of the Subject Offenses.

22.   Based on my review of text messages recovered from the TRAPANI Cellphone and records of Ether transactions that are publicly available via the internet as described below, I respectfully submit that there is probable cause to believe that (a) there are transactions in which more than 9,000 Ether units were raised from Centra investors during the ICO that are not accounted for in the Summary Spreadsheet that Centra Tech created in response to inquiries from the SEC; and (b) that a substantial portion, if not all, of the 9,000 Ether units that comprise the Remaining Subject Property are traceable to such transactions. This belief is based on the following:

a.   Based on my training and experience and my participation in this investigation, I have learned, in substance and in part, the following about transactions in Ether. "Ether" or "ETH" is a digital currency, or cryptocurrency, whose transactions are stored on an internet-based platform called the Ethereum blockchain.   The Ethereum blockchain is a continuously growing list of records, called blocks, which are linked and secured using cryptography.   The blockchain records transactions

36

between parties in a manner that is verifiable and resistant to modification. By inspecting the blockchain, anyone can review any Ether transaction ever made, although the identities of the participants in the transaction are anonymized and cannot be discerned without additional information. Records of Ether transactions on the Ethereum blockchain are viewable by the public at various websites available on the internet, including a website called Etherscan (available at https://etherscan.io) that is an Ethereum block explorer (the "Etherscan Website").

b.    I have used the Etherscan Website to review and analyze transactions associated with digital wallet addresses that were used to receive or send Ether raised by Centra Tech during its ICO. As part of this analysis, I have also reviewed documents in which Centra Tech identified various digital wallets owned and controlled by Centra Tech, including the January 18 Letter and Summary Spreadsheet that Centra Tech created in response to inquires from the SEC. From these sources and my analysis based upon them, I have learned, in substance and in part, the following:

    i.    The Seizure Wallet received a total of approximately 100,000 Ether units on or about November 29, 2017. Those funds originated from several digital wallets that Centra Tech has acknowledged belonged to it and were routed, via several intermediate digital wallets that (as shown below) are associated with Centra Tech, to the Seizure Wallet. The final routing wallet that transmitted the 100,000 Ether units to the Seizure Wallet on or about November 29, 2017 was a digital wallet with an address of

"0x494C7f57396CE9ef51A49B1377d40c3e095b206F"        ("Centra Routing Wallet 1").

ii.    Centra Routing Wallet 1 received a total of approximately 100,000 Ether units on or about October 17, 2017 from a digital wallet with an address of "0x2fA49Bd15512aA4a549b4ddB2181cA7edeAb14B4" ("Centra Routing Wallet 2").

iii.    Centra Routing Wallet 2 received a total of approximately 102,000 Ether units, of which approximately 75,000 Ether units were received on or about October 17, 2017 from a digital wallet with an address of "0x71e5A90eDA0834bd0AaAAE51314929BFd1ea4294"        ("Centra Routing Wallet 3") and approximately 27,000 Ether units were received on or about October 14, 2017 from a digital wallet with an address of "0x55107767B83A18b15258BfAf12ecB0dbe468DbE5"        ("Centra Routing Wallet 4").

iv.    Centra Routing Wallet 3 received approximately 90,000 Ether units on or about October 8, 2017 from a digital wallet with an address of "0x0E730C2731c875e4542c0Da2425F5119175FF6d0"        ("Centra Routing Wallet 5").    Centra Routing Wallet 4 received approximately 15,000 Ether units from Centra Routing Wallet 3 on or about October 10, 2017, and received approximately 10,000 Ether units from Centra Routing Wallet 5 on or about October 8, 2017.

v.    Centra Routing Wallet 5 received approximately 90,000 Ether units from a digital wallet with an address of "0x38874083663D11C952a7812acaf689Bc3595588c"        ("Centra Routing Wallet 6") on or about September 27, 2017.

vi.    Centra Routing Wallet 6 received more than 130,000 Ether units from a digital wallet with an address of "0x387792f7d2AA6e7Fa1312261cF36F5F6f6b97c00"        through a series of transfers from on or about September 19 through September 26, 2017.    According to the January 18 Letter that Centra Tech provided to the SEC, Centra Tech has identified this wallet address as the "Centra Token Owner" wallet (the "Centra Token Owner Wallet") and has represented that the Centra Token Owner Wallet was one of several wallet addresses used by Centra Tech to receive Ether from Centra token

purchasers during Centra Tech's ICO, along with the "Centra Token" wallet with an address of "0x96a65609a7b84e8842732deb08f56c3e21ac6f8a" (the "Centra Token Wallet"), the "Centra White List" wallet with an address of "0x5d268508179db4dA44De9057792758bFf280E3ed" (the "Centra White List Wallet"), and the "Centra Sale" wallet with an address of "0xbDB45d02D8eF8dc5E59aa58B26b99A4af3806bAa" (the "Centra Sale Wallet").   With respect to the 40,000 Ether units that Centra Tech received from "Korea Partners" (which, as set forth above, is a reference to Bitsset) in exchange for Centra tokens during Centra Tech's ICO, Centra Tech's January 18 Letter to the SEC further provides, in substance and in part, that Centra Tech received 3,000 of those Ether units using the Centra Token Owner Wallet and received the remaining 37,000 of those Ether units using a digital wallet with an address of "0x0445335f74da6e2119c648b79af8cc299474586f" ("Centra Bitsset Wallet").   According to the Etherscan Website, virtually all of the Ether in the Centra Bitsset Wallet was transferred to the Centra Sale Wallet and the Centra Routing Wallet 6 via a series of transfers on or about September 23, 2017.

vii.     From my review of the Summary Spreadsheet that Centra Tech created in response to in inquiries from the SEC and Centra Tech's accompanying January 18 Letter to the SEC, I have learned the following, in substance and in part.   These documents purport to show that during Centra Tech's ICO (a) Centra Tech received approximately 18,356 Ether units via the Centra Token wallet, approximately 8,365 Ether units via the Centra White List Wallet, approximately 15,079 Ether units via the Centra Sale Wallet, and approximately 9,267 Ether units via the Centra Token Owner Wallet, for a total of approximately 51,000 Ether units, from a variety of Centra token purchasers identified in the Summary Spreadsheet; and (b) Centra Tech received approximately 40,000 Ether units via the Centra Token Owner Wallet and the Centra Bitsset Wallet from Centra token purchasers referred to as "Korea Partners," which is a reference to Bitsset.

c.     For the following reasons, I respectfully submit that there is probable cause to believe that the Centra Routing Wallets 1 through 6 ("collectively, the "Centra Routing Wallets")

were owned and controlled by Centra Tech. *First*, from my review
of the Etherscan Website, I have learned, in substance and in part,
that the Centra Token Wallet, the Centra White List Wallet and the
Centra Sale Wallet forwarded virtually all of the Ether that they
received during Centra Tech's ICO to the Centra Token Owner Wallet.
*Second*, as shown above, most of the Ether in the Centra Token Owner
Wallet was forwarded, through the Centra Routing Wallets, to the
Seizure Wallet.  Because the Centra Routing Wallets both received
Ether funds sent from the Centra Token Owner Wallet and sent such
funds on toward the Seizure Wallet, which Centra Tech set up, I
respectfully submit that there is probable cause to believe that
the Centra Routing Wallets were owned and controlled by Centra
Tech.

      d.   On or about October 2, 2018, SHARMA, via the SHARMA
Cellphone-2, engaged in a group text message conversation with
TRAPANI, via the TRAPANI Cellphone, and FARKAS, via the FARKAS
Cellphone.  As noted above, starting at approximately 12:47PM on
or about October 2, 2017, SHARMA text-messaged TRAPANI and FARKAS:
"I did mad job stuff over the weekend," "Also got us 100K in ETH
in the account . . . . And we still have 28.9M ctr left."  TRAPANI
wrote:  "Good shit . . . .  Was just watching it as you where
moving it wondering what you where doing lol," "Perfect."  SHARMA

then responded: "Sold 7500 to bit set," "Moved 2500 over from
that dude Shin."[7]

     e.   Based on my review of records of Ether transactions
that are publicly available via the Etherscan website, I have
learned, in substance and in part, the following.  On or about
October 2, 2017, which was the date on which SHARMA text-messaged
TRAPANI and FARKAS that he had "Sold 7500 to bit set," a total of
approximately 7,500 Ether units were transferred via two
transactions from a digital wallet associated with Bitset

---

[7]   With respect to the above-quoted text messages between SHARMA
and his co-conspirator TRAPANI during Centra Tech's ICO indicating
that Centra Tech raised 7,500 Ether units from Bitsset and 2,500
Ether units from "Shin," I have been informed by representatives
of the Government that during recent communications between them
and SHARMA's current counsel, SHARMA has claimed through his
counsel that SHARMA was lying to TRAPANI in these text messages
about the source of those funds because, according to SHARMA, he
was worried that if he had told TRAPANI that these funds came from
SHARMA's personal cryptocurrency trading activities, TRAPANI would
have asked SHARMA to borrow all or a portion of those funds.  As
set forth in the Criminal Charging Documents and above, SHARMA has
previously been convicted of perjury, made numerous fraudulent
misrepresentations to dupe investors into providing funds to
Centra Tech, and attempted to obstruct the SEC's parallel
investigation by providing a false passcode to the Seizure Wallet
after the SEC sought assurances from Centra Tech that victim-
investor funds raised through the Subject Offenses were secure in
the Seizure Wallet.  Given SHARMA's record of perjury and history
of deception and a lack of candor, and the timing and the self-
serving nature of his claims denying the veracity of those
contemporaneous text messages, I respectfully submit that there is
probable cause to believe that these self-serving claims are false.

("Bitset Wallet 1"),[8] to the Centra Routing Wallet 5 associated

with Centra Tech.   On that same date, approximately 3,562,500

Centra tokens were transferred from the Centra Routing Wallet 5 to

the Bitset Wallet 1.   As shown above, most of the 100,000 Ether

units that Centra Tech later transferred to the Seizure Wallet are

traceable to the Centra Routing Wallet 5.[9]

---

[8]    The Bitset Wallet 1 refers to a digital wallet address of
"0x9f51ca6a19c650555be53206b6a20d91681da7f6."   According to the
Summary Spreadsheet that Centra Tech created in response to
inquiries from the SEC, Centra Tech received 3,000 Ether units
through three transactions on or about August 30, 2017 from the
"Korea Partners" via the digital wallet referred to herein as the
Bitset Wallet 1, and a transfer of 37,000 Ether units on or about
September 23, 2017 from the "Korea Partners" via a digital wallet
with an address of "0x65190d08f1f241cf2361e7c70a40c1d59400736b"
("Bitset Wallet 2").   Based on the foregoing and the other facts
set forth in this Affidavit, I believe that the Bitset Wallet 1
and Bitset Wallet 2 were associated with Bitset.

[9]    I have been informed by representatives of the Government
that during recent communications between them and SHARMA's
current counsel, SHARMA has claimed through his counsel that the
3,562,500 Centra tokens transferred from the Centra Routing Wallet
5 to the Bitset Wallet 1 were left in the Bitset Wallet 1 until
a few days after SHARMA's arrest on or about April 1, 2018 in this
case, and that this demonstrates that the Bitset Wallet 1 was
actually controlled by Centra Tech and not an external investor
such as Bitset.   Although requested to do so by the Government,
SHARMA has not provided any corroborating evidence that the Bitset
Wallet 1 was owned or controlled by Centra Tech, although he has
asserted that he had passcodes to various digital wallets that
would have corroborated his claims but lost those passcodes as a
result of cyber-hacks of various of his electronic devices.   Since
SHARMA and FARKAS were both arrested and detained on or about April
1, 2018, it is doubtful that they had the capacity to transfer or
liquidate millions of Centra tokens from the Bitset Wallet 1 a
few days later while there were jailed.   Moreover, from my training
and experience and participation in this investigation, I

42

f.   The Summary Spreadsheet that Centra Tech created for the SEC discloses four transactions in which Centra Tech raised a total of 40,000 Ether units from Bitset:  three transactions on or about August 30, 2017 in which Centra Tech received a total of 3,000 Ether units from the Bitset Wallet 1, and a transaction on or about September 23, 2017 in which Centra Tech received a total of 37,000 Ether units from the Bitset Wallet 2.   The Summary Spreadsheet does not disclose any transfers of Ether from Bitset to Centra Tech after September 23, 2017, let alone a transaction in which the Centra Routing Wallet 5 received 7,500 Ether units that are traceable to a transfer on or about October 2, 2017 from the Bitset Wallet 1.

g.   Based on the foregoing, I respectfully submit that there is probable cause to believe that Centra Tech has not accounted in the Summary Spreadsheet for the likelihood that the 9,000 Ether units that remain in the Seizure Wallet are traceable, in whole or in part, to the 7,500 Ether units that Centra Tech raised on or about October 2, 2017 from Bitset.

respectfully submit that it is not uncommon for investors who purchase securities (such as, in this case, Centra tokens) to hold them for substantial periods of time in the hope that they will appreciate.  For these reasons and based upon the other evidence set forth in this Affidavit, I respectfully submit that there is probable cause to believe that the Bitset Wallet 1 was, in fact, owned and controlled by Bitset.

43

h.   In addition, from my review of the Etherscan Website, I know that on or about October 2, 2017, which was the date on which SHARMA text-messaged TRAPANI and FARKAS that SHARMA had "Moved 2500 over from that dude Shin," approximately 2,500 Ether units were transferred from the Centra Routing Wallet 4 to the Centra Routing Wallet 5.   A day earlier, the Centra Routing Wallet 4 received 5,200 Ether units from a digital wallet associated with Bitsset referred to herein as the "Bitsset Routing Wallet 1,"[10] and the Bitsset Routing Wallet 1 received approximately 1,742,000 Centra tokens.   As shown above, of the 100,000 Ether units that Centra Tech later transferred to the Seizure Wallet, a substantial portion (approximately 27,000 Ether units) are traceable to the Centra Routing Wallet 4, and most are traceable to the Centra Routing Wallet 5.

i.   The Summary Spreadsheet that Centra Tech created for the SEC does not disclose any transactions in which the Centra

---

[10]   The Bitsset Routing Wallet 1 is a digital wallet with an address of "0xcb7b1fd4d3a097a796bb3bced863b1fd5e90a3cf," which received 5,219 Ether units from a digital wallet with an address of "0xcE7fD61737092Ac648fBC982Efc39b628a8713F9" the same day ("Bitsset Routing Wallet 2"), which in turn received thousands of Ether units from, and sent thousands of Ether units to, the Bitsset Wallet 1 during a series of transactions from on or about September 30 through October 1, 2017.   Based on the foregoing, I respectfully submit that there is probable cause to believe that the Bitsset Routing Wallet 1 and Bitsset Routing Wallet 2 are associated with the Bitsset Wallet 1.

Routing Wallet 4 received Ether units from a Centra token purchaser, and does not disclose any transfers of Ether from Bitsset to Centra Tech after September 23, 2017, let alone a transaction in which a digital wallet associated with Centra Tech received 2,500 Ether units that are traceable to a transfer on or about October 1, 2017 from the Bitsset Routing Wallet 1.

j. Based on the foregoing, there is probable cause to believe that Centra Tech has not accounted in the Summary Spreadsheet for the likelihood that the 9,000 Ether units that remain in the Seizure Wallet are traceable, in part, to 5,200 Ether units that Centra Tech raised on or about October 1, 2017 from an individual referred to by SHARMA as "Shin" who may be affiliated with Bitsset.[11]

---

[11]   I have been informed by representatives of the Government that during recent communications between the Government and SHARMA's current counsel, SHARMA has claimed through his counsel that specified trading records of SHARMA's cryptocurrency trading activities (via a cryptocurrency exchange called Coinbase) before Centra Tech's ICO began in late July 2017 support SHARMA's claims that the 9,000 Ether units remaining in the Seizure Wallet are actually proceeds of his pre-ICO cryptocurrency trading, and not ICO proceeds of the charged Subject Offenses. From my review of these records, I have learned that these records reveal the following, in substance and in part. During the period from on or about May 23, 2017, when SHARMA opened a Coinbase account in his name, through the end of July 2017, which is the month in which Centra Tech's ICO began, SHARMA deposited about $111,040 into his Coinbase account, acquired a total of approximately 471 Ether units, and acquired a total of approximately 10.7 Bitcoin units (worth about 131 Ether units as of or about July 26, 2017). While this arguably shows that SHARMA had acquired 471 Ether units and

23.  By viewing the Etherscan Website earlier today, I was able to confirm that the Remaining Subject Property consisting of approximately 9,000 Ether units were in the Seizure Wallet as of this morning, and that the estimated value of the Remaining Subject Property is more than $1,855,000 at the current Ether-to-dollar exchange rate.

24.  Based on the facts set forth above, my participation in this investigation, and my consultations with other FBI agents, including one with significant training and experience in investigations of crimes involved digital currencies, I believe and respectfully submit that as long as the Remaining Subject Property was retrievable via the Seizure Wallet, there existed a significant danger that the Remaining Subject Property could be dissipated.  For example, as set forth above, SHARMA initially provided a false passcode to the Seizure Wallet, and although he eventually made the actual passcode to the Seizure Wallet available

other assets worth about 131 Ether units before Centra Tech's ICO began, it does not show that he possessed 9,000 Ether units before the ICO.  Furthermore, although requested to do so by the Government, SHARMA has not produced or identified any records of Ether transactions tracing SHARMA's pre-ICO Ether holdings to the 9,000 Ether units in the Seizure Warrant.  For these reasons and based on the other facts set forth in this Affidavit, these Coinbase trading records do not alter my belief that there is probable cause to believe that the remaining 9,000 Ether units in the Seizure Wallet are ICO proceeds of the charged Subject Offenses.

to the FBI after his co-defendant FARKAS was detained until the Prior Seizure Warrant was complied with, it is possible that he has retained a copy of the actual passcode to the Seizure Wallet. If SHARMA secretly maintained a copy of the actual passcode to the Seizure Wallet, he or an associate could use that copy of the passcode to dissipate the Remaining Subject Property via any computer with internet access.

25. I have been informed by representatives of the Government that during a telephone call earlier today between them and SHARMA's current counsel, the following occurred in substance and in part. The Government notified SHARMA through his counsel that the Government has uncovered evidence furnishing probable cause to seize the Remaining Subject Property (which SHARMA's counsel may have intended to use to cover his legal fees for representing SHARMA) and intended to seize the Remaining Subject Property. The Government asked SHARMA's counsel whether SHARMA possessed a copy of the passcode or other means of accessing the 9,000 Ether units that had been left in the Seizure Wallet, and SHARMA's counsel stated that he could not confirm or deny that without divulging privileged communications between himself and his client.

26. Based on the presence of exigent circumstances as long as the Remaining Subject Property was contained in the Seizure

47

Wallet (including (a) the significant danger that SHARMA could easily and swiftly dissipate the Remaining Subject Property using a copy of the passcode to retrieve the Remaining Subject Property from the Seizure Wallet, and (b) the fact that SHARMA's counsel was notified earlier today that the Government plans to seize the Remaining Subject Property from the Seizure Wallet), I transferred the Remaining Subject Property from the Seizure Wallet to a secure digital wallet maintained by the FBI earlier today, pursuant to Title 18, United States Code, Section 981(b)(2)(B)(ii).

27.   Accordingly, I respectfully request that the instant warrant be granted to authorize this seizure of the Remaining Subject Property and to permit the FBI to retain the Remaining Subject Property in an FBI-maintained digital wallet until further order of the Court in order to preserve the Remaining Subject Property for forfeiture to the United States.

### SEIZURE AND FORFEITURE AUTHORITY

28.   The statutory provisions pursuant to which the Remaining Subject Property is subject to seizure and forfeiture are as follows:

29.   Title 18, United States Code, Section 981(a)(1)(C) subjects to civil forfeiture:

> [a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined

48

in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

18 U.S.C. § 1956(c)(7)(A) provides that the term "specified unlawful activity" includes "any act or activity constituting an offense listed in section 1961(1) of this title". Section 1961(1), in turn, includes "section 1343 (relating to wire fraud)," and "fraud in the sale of securities." In the case of "illegal goods, illegal services, and unlawful activities," 18 U.S.C. § 981(a)(2)(A) defines the term "proceeds" as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto." Accordingly, the Remaining Subject Property is subject to civil forfeiture to the United States of America pursuant to 18 U.S.C. §§ 981(a)(1)(C) as proceeds of the crimes of conspiracy to commit, and the commission of, securities fraud and wire fraud.

30.   Section 981(b)(1) of Title 18 provides that any property subject to civil forfeiture to the United States under 18 U.S.C. § 981(a) may be seized by the Attorney General. Section 981(b)(2) provides that such a seizure may be made "pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure."

31.  In addition, Section 981(b)(3) of Title 18 provides that, notwithstanding the provisions of Federal Rule of Criminal Procedure 41(a), a seizure warrant may be issued pursuant to Section 981(b) by a judicial officer in any district in which a forfeiture action against the property may be filed under Title 28, United States Code, Section 1355(b).   Under Section 1355(b)(1)(A), a forfeiture action or proceeding may be brought in the district in which any of the acts or omissions giving rise to the forfeiture occurred.   Section 981(b)(3) further provides a seizure warrant "may be executed in any district in which the property is found."

32.  For the foregoing reasons, the Remaining Subject Property is subject to both seizure and forfeiture, and a warrant for its seizure may be issued in the Southern District of New York, the district where some of the acts and omissions giving rise to the forfeiture occurred.

## CONCLUSION

33.  For the reasons set forth above, I respectfully request that the Court issue a seizure warrant pursuant to 18 U.S.C. § 981 for the Remaining Subject Property.

34.  Although the Indictment against three of Centra Tech co-founders SHARMA, TRAPANI and FARKAS has been unsealed, the full scope of the ongoing criminal investigation in this matter has not

50

been made public, including ongoing law enforcement efforts to determine whether any other co-conspirators involved in the Subject Offenses should be charged with criminal offenses and law enforcement efforts to identify any proceeds of the Subject Offenses, separate from and in addition to the Original Subject Property and the Remaining Subject Property, that are subject to forfeiture to the United States.

35. Accordingly, I also respectfully request that this Affidavit be sealed until further order of the Court so as not to jeopardize the ongoing investigation of this matter, except that the Government may without further order from this Court produce this Affidavit in the Criminal Case and in any other criminal or forfeiture proceedings as necessary to comply with any discovery and disclosure obligations.

Dated:    New York, New York
          October 22, 2018

_____
BRANDON S. RACZ
Special Agent
Federal Bureau of Investigation

Sworn to before me this
22nd day of October, 2018:

_____
HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

**It is hereby ORDERED that this Affidavit shall remain under seal until further Order of the Court (subject to the exceptions set forth in paragraph 35 above).**

SO ORDERED

_____
HONORABLE KATHARINE H. PARKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF NEW YORK

52