J7HVTRAP

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4            v.                        18 CR 340 (LGS)

5  RAYMOND TRAPANI,

6            Defendant.               PLEA

7  ------------------------------x

8                                     New York, N.Y.
                                      July 17, 2019
9                                     10:40 a.m.

10
   Before:
11
                       HON. KEVIN N. FOX,
12
                                      Magistrate Judge
13

14                       APPEARANCES

15
   GEOFFREY S. BERMAN,
16      United States Attorney for the
        Southern District of New York
17 SAMSON A. ENZER
        Assistant United States Attorney
18
   JOSEPH A. BONDY
19 STEPHANIE R. SCHUMAN
        Attorneys for Defendant
20

21 ALSO PRESENT:  BRANDON RACZ, FBI

22

23

24

25

J7HVTRAP

1              (Case called)

2              MR. ENZER:  Good morning, your Honor.

3              Samson Enzer, for the government.

4              With me at counsel table is Special Agent Brandon Racz

5    from the FBI.

6              THE COURT:  Good morning.

7              MR. BONDY:  Good morning, your Honor.

8              On behalf of Raymond Trapani, I am Joseph Bondy.  And

9    I am accompanied today by co-counsel.

10             MS. SCHUMAN:  Good morning, your Honor.

11             Stephanie Schuman.

12             THE COURT:  Good morning.

13             Is there an application on behalf of the defendant?

14             MR. BONDY:  Yes, your Honor.

15             We'd like to withdraw our previously entered plea of

16   not guilty, and enter a plea of guilty to the superseding

17   information, the agreement before the Court.

18             THE COURT:  Very well.

19             I have before me superseding information S1 18 CR 340,

20   a multi-count information, ten counts in the information.

21             The information charges a violation of Title 18,

22   United States Code, Section 371, which makes it an offense for

23   a person to conspire with others to violate the laws of the

24   United States.  It also charges a violation, among others, 15

25   U.S.C., Section 78j(b) and 78ff, make it an offense to commit

J7HVTRAP

securities fraud; 18 U.S.C., Section 1343, making it an offense

to commit wire fraud; 18 U.S.C., Section 1512(c), making it an

offense to obstruct justice; 18 U.S.C., Section 1349, which

makes it an offense to conspire to commit a multiplicity of

frauds.  In this case, the fraud that is the focus of that

conspiracy is the wire fraud.  18 U.S.C., Section 922(g)(1),

which makes it an offense for a person who has previously been

convicted of an offense, the penalty for which is in excess of

a year, to possess ammunition or a firearm in or affecting

commerce; 21 U.S.C., Section 846, which makes it an offense for

a person to conspire with others to violate the laws of the

United States respecting controlled substances.

You have a right to have this morning's proceeding

proceeded over by a district judge.  You may, if you wish,

consent to have a magistrate judge preside at this morning's

proceeding.  In that connection, I have before me a document

which is labeled "Consent to Proceed Before a United States

Magistrate Judge on a Felony Plea Allocution."

Mr. Quintero, will you swear the defendant.

(Defendant sworn)

THE DEPUTY CLERK:  Have you signed this waiver of

indictment?

THE DEFENDANT:  Yes, sir.

THE DEPUTY CLERK:  Before you signed it, did you

discuss it with your attorney?

J7HVTRAP

 1          THE DEFENDANT:  Yes.

 2          THE DEPUTY CLERK:  Did your attorney explain it to

 3  you?

 4          THE DEFENDANT:  Yes.

 5          THE DEPUTY CLERK:  Do you understand what you are

 6  doing?

 7          THE DEFENDANT:  Yes.

 8          THE DEPUTY CLERK:  Do you understand that you are

 9  under no obligation to waive indictment?

10          THE DEFENDANT:  Yes.

11          THE DEPUTY CLERK:  Do you understand that if you do

12  not waive indictment, if the government wants to prosecute you,

13  they will have to present this case to a grand jury, which may

14  or may not indict you?

15          THE DEFENDANT:  Yes.

16          THE DEPUTY CLERK:  Do you understand that by signing

17  this waiver of indictment, you have given up your right to have

18  this case presented to a grand jury?

19          THE DEFENDANT:  Yes.

20          THE DEPUTY CLERK:  Do you understand what a grand jury

21  is?

22          THE DEFENDANT:  Yes.

23          THE DEPUTY CLERK:  Have you seen a copy of the

24  information?

25          THE DEFENDANT:  Yes.

J7HVTRAP

1          THE DEPUTY CLERK:  Do you waive its public reading?

2          THE DEFENDANT:  Yes.

3          THE DEPUTY CLERK:  Thank you.

4          THE COURT:  I want to show you the consent form about

5     which I was speaking earlier.  Do you recognize the document?

6     Remain seated.  Pull the microphone close to you please.

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Did you have an opportunity to review the

9     document with your attorney?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Is there anything contained in the consent

12     form that you do not understand?

13          THE DEFENDANT:  No, your Honor.

14          THE COURT:  Do you acknowledge that the consent form

15     explains in greater detail what I mentioned to you a moment

16     ago, about your right to have this proceeding presided over by

17     a district judge and, further, that by signing the document,

18     you are agreeing that a magistrate judge will preside over this

19     morning's proceeding?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Is your true signature on the consent

22     form?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Did anyone force you to sign the document,

25     sir?

J7HVTRAP

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  Let me turn my attention to your counsel.

3          Is your signature also on the consent form?

4          MR. BONDY:  Yes, your Honor, it is.

5          THE COURT:  Very well.

6          I shall sign the document and we shall continue.

7          Mr. Trapani, would you state your full name please.

8          THE DEFENDANT:  Raymond William Trapani.

9          THE COURT:   In the last 24 hours, have you consumed

10    any medicine, alcohol, or drugs that would affect your ability

11    to understand what you are doing here today?

12          THE DEFENDANT:  No, your Honor.

13          THE COURT:  Are you under the care of a physician or

14    psychiatrist for any condition?

15          THE DEFENDANT:  Any condition?  I take sleeping

16    medicine from a doctor.  I take sleeping medicine from a

17    doctor, which is Seroquel.  And I also get Gabapentin from a

18    doctor for anxiety and -- basically for anxiety.

19          THE COURT:  Is there anything about either the

20    treatment you are receiving or the medications that you are

21    taking that affects your ability to understand what you are

22    doing here today?

23          THE DEFENDANT:  No, your Honor.

24          THE COURT:  Have you ever been treated for alcoholism

25    or drug addiction?

J7HVTRAP

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Which?

3              THE DEFENDANT:  Drug addiction.

4              THE COURT:  When was the last time that you received

5      treatment for that, or approximately when?

6              THE DEFENDANT:  After I was arrested, I was in a

7      rehab.  I was sent to rehab after I got out of jail for 30

8      days, and then I was in a outpatient rehab up until about, I

9      would say, a month ago I completed it.

10             THE COURT:  Is there anything about the treatment that

11     you received, either inpatient or outpatient, that affects your

12     ability to understand what you are doing here today?

13             THE DEFENDANT:  No, your Honor.

14             THE COURT:  Do you feel all right today?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  What is the extent of your education, sir?

17             THE DEFENDANT:  I've got my GED.

18             THE COURT:  Have you received a copy of Information S1

19     18 CR 340?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Would you like to have the information

22     read to you now in open court?

23             THE DEFENDANT:  No, your Honor.

24             THE COURT:  Do you understand what is charged against

25     you through the information?

J7HVTRAP

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Have you had sufficient opportunity to

3    speak with your attorney about the charges made through the

4    information and how you wish to plead to them?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Are you satisfied with the assistance that

7    your attorneys rendered to you in connection with this matter?

8              THE DEFENDANT:  Can you repeat that please?

9              THE COURT:  Are you satisfied with the assistance that

10   your lawyers have rendered to you in connection with this

11   matter?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Are you ready to plead to information S1

14   18 CR 340?

15             THE DEFENDANT:  Yes.

16             THE COURT:  What is your plea, sir, guilty or not

17   guilty?

18             THE DEFENDANT:  Guilty.

19             THE COURT:  By pleading guilty to the offenses that

20   are outlined in the information, which are felony offenses, if

21   you are not a United States citizen, your plea of guilty may

22   affect adversely your ability to remain in the United States,

23   become a United States citizen, or be admitted into the United

24   States.  Do you understand, sir?

25             THE DEFENDANT:  Yes, your Honor.

J7HVTRAP

1          THE COURT:  I have to determine whether your plea of

2     guilty is being made voluntarily, and whether you understand

3     fully the charges made against you and the possible

4     consequences of your plea, so I shall be asking you additional

5     questions.

6          I want to ensure that you understand the nature of the

7     charges made against you.

8          At Count One of the information, it charges, you

9     violated Title 18, United States Code, Section 371 by

10    conspiring with others to commit securities fraud.  The law

11    provides as a maximum penalty for the offense set forth at

12    Count One of the information the following:

13         A term of imprisonment of five years, a maximum term

14    of supervised release of three years, a maximum fine pursuant

15    to Title 18, United States Code, Section 3571, the greatest of

16    $250,000, twice the gross pecuniary gain derived from the

17    offense, or twice the gross pecuniary loss to persons other

18    than yourself resulting from the offense, and a $100 mandatory

19    special assessment.

20         Sir, do you understand the charge made against you at

21    Count One of the information?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you also understand the range of

24    penalties, including the maximum sentence, to which you are

25    potentially exposing yourself by your plea to Count One of the

J7HVTRAP

1  information?

2         THE DEFENDANT:  Yes.

3         THE COURT:  If you are sentenced to a term of

4  supervised release and violate the terms and conditions of that

5  supervised release such that it is revoked, you expose yourself

6  to serving in prison all or part of the term of supervised

7  release authorized by statute for the offense that resulted in

8  such term of supervised release, without credit for time

9  previously served on post-release supervision.

10         Do you understand, sir?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Count Two of the information charges that

13  you violated Title 15, United States Code, Sections 78j(b),

14  78ff; Title 17, the Code of Federal Regulations, Section

15  240.10b-5; and Title 18, United States Code, Section 2.  Those

16  offenses deal with fraud in connection with securities.

17         The law provides as a maximum penalty for the offense

18  set forth at Count Two the following -- before I address that,

19  let me say that with respect to Title 18, United States Code,

20  Section 2, that provision of Title 18 makes it an offense for a

21  person to aid or abet another in the commission of a crime.

22         The law provides as a maximum penalty for the offenses

23  set forth at Count Two of the information the following:

24         A maximum term of imprisonment of 20 years; a maximum

25  term of supervised release of three years; a maximum fine

J7HVTRAP

pursuant to Title 15, United States Code, Section 78ff, and

Title 18, United States Code, Section 3571, of the greatest of

$5 million, twice the gross pecuniary gain derived from the

offense, or twice the gross pecuniary loss to persons other

than yourself resulting from the offense; and a $100 mandatory

special assessment.

With respect to Count Two of the information, if you

are sentenced to a term of supervised release and violate the

terms of the supervised release such that it is revoked, the

same consequences would befall you as I spoke to you about on

Count One, so I won't repeat that to you.

With respect to Count Two of the information, do you

understand the nature of the charge being alleged against you

of that count?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you also understand the maximum

penalties to which you are potentially exposing yourself by

your plea of guilty to Count Two of the information?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Count Three of the information charges

violation of Title 18, United States Code, Section 1349.  As I

indicated to you earlier, Section 1349 of Title 18 makes it an

offense for a person to conspire to commit various frauds that

are recited in a particular chapter of Title 18.

With respect to Count Three of the information, it is

J7HVTRAP

alleged that you conspired with others to commit wire fraud. The law provides as a maximum penalty for the offense set forth at Count Three of the information the following:

A maximum sentence of 20 years' imprisonment; a maximum term of supervised release of three years; a maximum fine pursuant to Title 18, United States Code, Section 3571, the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than yourself resulting from the offense; and a $100 mandatory special assessment.

Once again, if you are sentenced to a term of supervised release and violate the terms such that the period of supervised release is revoked, the consequences that I explained to you when I addressed Count One would attend and I shall not repeat them to you.

Sir, do you understand the nature of the charges made against you at Count Three of the information?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you also understand the range of penalties, including the maximum sentence, to which you're potentially exposing yourself by your plea to Count Three of the information?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Count Four of the information charges violation of Title 18, United States Code, Section 1343, which

J7HVTRAP

makes it an offense for a person to commit wire fraud.  Count

Four also contains an allegation that you violated Title 18,

United States Code, Section 2, which I explained earlier makes

it an offense for a person to aid or abet another in the

commission of a crime.

The law provides as a maximum penalty for the offense

set forth at Count Four of the information the following:

A maximum term of imprisonment of 20 years; a maximum

term of supervised release of three years; a maximum fine

pursuant to Title 18, United States Code, Section 3571, the

greatest of $250,000, twice the gross pecuniary gain derived

from the offense, or twice the gross pecuniary loss to persons

other than yourself resulting from the offense; and a $100

mandatory special assessment.

If you are sentenced to a term of supervised release

and violate the terms such that supervised release is revoked,

the consequences that I explained to you earlier in addressing

Count One would befall you.  I will not repeat them to you.

Sir, do you understand the nature of the charge made

against you at Count Four of the information?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand the range of penalties,

including the maximum sentence, to which you are potentially

exposing yourself by your plea of guilty to Count Four of the

information?

J7HVTRAP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Count Five of the information charges a

3     violation of Title 18, United States Code, Section 1512(c).

4     The law provides that a person who obstructs justice violates

5     that provision of Title 18.

6          The law provides as a maximum penalty for that offense

7     the following:

8          A period of five years' imprisonment -- excuse me.  A

9     period of 20 years' imprisonment is the maximum penalty for

10    Count Five; a maximum term of supervised release of three

11    years; a maximum fine pursuant to Title 18, United States Code,

12    Section 3571, the greatest of $250,000, twice the gross

13    pecuniary gain derived from the offense, or twice the gross

14    pecuniary loss to persons other than yourself resulting from

15    the offense; and a $100 mandatory special assessment.

16         Once again, if you are sentenced to a term of

17    supervised release and you violate the terms and conditions of

18    supervised release such that it is revoked, the consequences

19    that I explained to you in reviewing Count One would attend.  I

20    shall not repeat them to you.

21         Sir, do you understand the nature of the offense

22    recited at Count Five of the information?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Do you understand the range of penalties,

25    including the maximum sentence, to which you're potentially

J7HVTRAP

exposing yourself by your plea of guilty to Count Five of the

information?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Count Six of the information charges a

violation of Title 18, United States Code, Section 1349, which

makes it an offense for a person to conspire with others to

commit certain frauds.  In this instance, the fraud that is the

subject of Count Six is said to be wire fraud.

The law provides as a maximum penalty for the offense

set forth at Count Six of the information the following:

A maximum sentence of imprisonment of 20 years; a

maximum term of supervised release of three years; a maximum

fine pursuant to Title 18, United States Code, Section 3571,

the greatest of $250,000, twice the gross pecuniary gain

derived from the offense, twice the gross pecuniary loss to

persons other than yourself resulting from the offense, and a

$100 mandatory special assessment.

If you are sentenced to a term of supervised release

with respect to Count Six and violate the terms and conditions

of supervised release such that it is revoked, the consequences

that may befall you are those that I explained when addressing

Count One, and I shall not repeat them to you.

Sir, do you understand the nature of the charge made

against you at Count Six of the information?

THE DEFENDANT:  Yes, your Honor.

J7HVTRAP

1          THE COURT:  Do you understand the range of penalties,

2     including the maximum sentence, to which you are potentially

3     exposing yourself by your plea of guilty to Count Six of the

4     information?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Count Seven of the information charges

7     violation of Title 18, United States Code, Section 1349, which

8     makes it an offense to conspire with others to violate certain

9     frauds.  In this case the fraud that is the subject of Count

10    Seven of the information is said to be wire fraud.

11         The law provides as a maximum penalty for the offense

12    set forth at Count Seven of the information the following:

13         A maximum term of imprisonment of 20 years; a maximum

14    term of supervised release of three years; a maximum fine

15    pursuant to Title 18, United States Code, Section 3571, the

16    greatest of $250,000, twice the gross pecuniary gain derived

17    from the offense, twice the gross pecuniary loss to persons

18    other than yourself resulting from the offense, and a $100

19    mandatory special assessment.

20         If you are sentenced to a term of supervised release

21    with respect to Count Seven and violate the terms and

22    conditions of supervised release, the consequences that I

23    mentioned to you when addressing Count One would attend.  I

24    shall not repeat them to you.

25         Sir, do you understand the nature of the charges made

J7HVTRAP

1   against you at Count Seven of the information?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Do you understand the range of penalties,

4   including the maximum sentence, to which you are potentially

5   exposing yourself by your plea of guilty to Count Seven of the

6   information?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Count Eight of the information charges a

9   violation of Title 18, United States Code, Section 1343, and

10  Title 18, United States Code, Section 2.  Section 1343 of Title

11  18 makes it an offense for a person to commit wire fraud; and

12  Section 2 of Title 18 makes it an offense for a person to aid

13  or abet another in the commission of a crime.

14         The law provides as a maximum penalty for the offense

15  set forth at Count Eight of the information the following:

16         A maximum sentence of imprisonment of 20 years; a

17  maximum term of supervised release of three years; a maximum

18  fine pursuant to Title 18, United States Code, Section 3571 of

19  the greatest of $250,000, twice the gross pecuniary gain

20  derived from the offense, or twice the gross pecuniary loss to

21  persons other than yourself resulting from the offense, and a

22  $100 mandatory special assessment.

23         If you are sentenced to a term of supervised release

24  with respect to Count Eight of the information and violate the

25  terms of supervised release such that supervised release is

J7HVTRAP

revoked, the consequences that I mentioned when I addressed

Count One would befall you; I shall not repeat them.

          Sir, do you understand the nature of the charge made

against you at Count Eight of the information?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  Do you understand the range of penalties,

including the maximum sentence, to which you're potentially

exposing yourself by your plea to Count Eight of the

information?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  Count Nine of the information charges a

violation of Title 18, United States Code, Section 922(g)(1).

That section of Title 18 makes it an offense for a person who

previously has been convicted of an offense, the penalty for

which is in excess of a year, to possess knowingly a firearm or

ammunition in commerce, has traveled from commerce.

          The law provides as a maximum penalty for the offense

set forth at Count Nine of the information the following:

          A maximum term of incarceration of ten years; a

maximum term of supervised release of three years; a maximum

fine pursuant to Title 18, United States Code, Section 3571,

the greatest of $250,000, twice the gross pecuniary gain

derived from the offense, or twice the gross pecuniary loss to

persons other than yourself resulting from the offense, and a

$100 mandatory special assessment.

J7HVTRAP

1          If you are sentenced to a term of supervised release

2     with respect to Count Nine of the information and violate the

3     terms of supervised release such that supervised release is

4     revoked, the consequences that I explained when reviewing Count

5     One of the indictment with you would attend, and I shall not

6     repeat them to you.

7          Sir, do you understand the nature of the charge made

8     against you at Count Nine of the information?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Do you understand the range of penalties,

11    including the maximum sentence, to which you're potentially

12    exposing yourself with respect to the offense set forth at

13    Count Nine of the information?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Count Ten of the information charges a

16    violation of Title 21, United States Code, Section 846,

17    841(a)(1), 841(b)(1)(C), and 841(b)(1)(D).  The offense at

18    Count Ten of the information is alleged to be a charge of

19    conspiracy to possess and distribute controlled substances.

20         The law provides as a maximum penalty for the offense

21    set forth at Count Ten of the information the following:

22         A maximum term of incarceration of 20 years; a maximum

23    lifetime term of supervised release; a mandatory minimum term

24    of three years of supervised release; a maximum fine pursuant

25    to Title 21, United States Code, Section 841(b)(1)(C), and

J7HVTRAP

```
 1    Title 18, United States Code, Section 3571, of the greatest of

 2    $1 million, twice the gross pecuniary gain derived from the

 3    offense, or twice the gross pecuniary loss to persons other

 4    than yourself resulting from the offense, and a $100 mandatory

 5    special assessment.

 6            If you are sentenced to a term of supervised release

 7    with respect to Count Ten of the information and violate the

 8    terms of supervised release such that supervised release is

 9    revoked, the consequences that I addressed with you when I

10    spoke about Count One of the information would befall you, and

11    I shall not repeat them to you.

12            Sir, do you understand the nature of the charge made

13    against you at Count Ten of the information?

14            THE DEFENDANT:  Yes, your Honor.

15            THE COURT:  Do you understand the range of penalties,

16    including the maximum sentence, to which you are potentially

17    exposing yourself by your plea of guilty to Count Ten of the

18    information?

19            THE DEFENDANT:  Yes, your Honor.

20            THE COURT:  Do you understand that you have a right to

21    plead not guilty and to persist in that plea?

22            THE DEFENDANT:  Yes, your Honor.

23            THE COURT:  Do you understand that you have a right to

24    a jury trial on the charges contained in the information?

25            THE DEFENDANT:  Yes, your Honor.
```

J7HVTRAP

1          THE COURT:  Do you understand that if you plead not

2     guilty and go to trial, the burden would be upon the government

3     to prove that you are guilty beyond a reasonable doubt?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Do you understand that at a trial you

6     would be presumed innocent until the government proved your

7     guilt beyond a reasonable doubt?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand that at such a trial and

10    at every other stage of the proceeding, you would have a right

11    to be represented by an attorney and, if necessary, the Court

12    would appoint an attorney to represent you?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Do you understand that at a trial you'd

15    have the right to testify, to confront and question any

16    witnesses who might testify against you, and the right not to

17    be forced to incriminate yourself, that is, you do not have to

18    be a witness against yourself?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Do you understand that at a trial you

21    would be entitled to present evidence, to call witnesses to

22    testify, and to compel the attendance of witnesses?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Do you understand that if you plead

25    guilty, there will be no trial of any kind, so that you give up

J7HVTRAP

1    your trial rights, and the only remaining step will be for the

2    assigned district judge to sentence you?

3                THE DEFENDANT:  Yes, your Honor.

4                THE COURT:  Sir, are you certain that you understand

5    the nature of the charges to which you are pleading?

6                THE DEFENDANT:  Yes, your Honor.

7                THE COURT:  Are you certain that you understand the

8    range of penalties, including the maximum sentence, to which

9    you are potentially subjecting yourself by your plea?

10               THE DEFENDANT:  Yes, your Honor.

11               THE COURT:  Do you understand that the sentencing

12   judge may be obligated to impose a special assessment on you?

13               THE DEFENDANT:  Yes, your Honor.

14               THE COURT:  Among the charges to which you are

15   tendering a plea is one that involves controlled substances.

16   As a result of your plea to a felony offense involving

17   controlled substances, you may be giving up certain valuable

18   civil rights that you possess, among them the following:  The

19   right to vote; the right to hold public office; the right to

20   serve on a jury; the right to possess any type of firearm,

21   including rifles and shotguns; the right to be considered for

22   certain types of employment; the right to possess or obtain

23   certain professional licenses; you may also become ineligible

24   for certain federal and federally funded benefits to which

25   otherwise you might have been eligible, including, but not

J7HVTRAP

1      limited to, food stamp benefits, education loans or grants.

2              Do you understand, sir?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Those matters are addressed at Title 21,

5      United States Code, Section 862.

6              Have you and your attorney talked about how the

7      Sentencing Commission Guidelines, which are advisory only,

8      might apply to your case?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Do you understand that in determining your

11     sentence, the sentencing judge is obligated to calculate the

12     applicable sentencing guidelines range and possible departures

13     under the sentencing guidelines?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Do you understand that in addition to the

16     factors outlined in the Sentencing Commission Guidelines, the

17     sentencing judge will also consider factors that are set forth

18     at 18 U.S.C., Section 3553 in determining what an appropriate

19     sentence might be for you?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Do you understand that parole has been

22     abolished, and that if you are sentenced to prison, you will

23     not be released on parole?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Do you understand that the answers you

J7HVTRAP

1    give to me today under oath may in the future be used against

2    you in a prosecution for perjury or false statement if you do

3    not tell the truth in court?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  What are the elements of the offense as

6    set forth in the information?

7              MR. ENZER:  Your Honor, I'm going to take the counts

8    out of order; I think it's easier that way.

9              So for Count Two, the substantive securities fraud

10   count relating to a company called Centra Tech, the government

11   would have to prove the following elements beyond a reasonable

12   doubt:

13             First, that in connection with the purchase or sale of

14   securities, the defendant, Mr. Trapani, made an untrue

15   statement of a material fact or omitted to state a material

16   fact, which made what was said under the circumstances

17   misleading or aided and abetted the same.

18             Second, that the defendant, Mr. Trapani, acted

19   unlawfully, knowingly, willfully, and with intent to defraud.

20             And third, that Mr. Trapani used or caused to be used

21   any means or instruments of transportation or communication in

22   interstate commerce or the use of the mails or any facility of

23   any national securities exchange in furtherance of the

24   fraudulent conduct.  And I note that the term "security" is

25   broadly defined to include, among other things, any investment

J7HVTRAP

contract.  An investment contract exists whenever there is an

investment of money in a common enterprise with a reasonable

expectation of profits to be derived from the efforts of

others, such as the promoter who solicited the investment.

For Count One, conspiracy to commit securities fraud

relating to Centra Tech, the government would have to prove

beyond a reasonable doubt the following elements:

First, that two or more people entered into an

agreement or an understanding to accomplish the securities

fraud scheme alleged in the superseding information.

Second, that Mr. Trapani intentionally joined and

participated in the conspiracy during the applicable time

period.

And third, that at least one of the members of the

conspiracy committed an overt act to further some objective of

the conspiracy.

Next, for the substantive wire fraud counts of the

superseding information, which are Counts Four and Eight, the

government would have to prove beyond a reasonable doubt the

following elements:

First, that there was a scheme or artifice to defraud

or obtain money or to obtain property by materially false and

fraudulent pretenses, representations, or promises, as charged

in the relevant count of the superseding information.

Second, that Mr. Trapani knowingly participated in the

J7HVTRAP

scheme or artifice to defraud, with knowledge of its fraudulent
nature and with specific intent to defraud.

And third, that in the execution of the scheme,
Mr. Trapani used or caused the use of interstate wires, such as
communications by phone calls, cell phone text message
communication, email communications, electronic trades, or
other communications over the Internet.

Next, for the wire fraud conspiracy counts, which are
Counts Three, Six, and Seven, the government would have to
prove beyond a reasonable doubt the following elements:

First, that two or more persons entered into an
agreement or an understanding to accomplish the wire fraud
scheme charged in the relevant count of the superseding
information.

And second, that Mr. Trapani knowingly and willfully
became a member of that conspiracy.

For Count Five, obstruction of justice, the government
would have to prove beyond a reasonable doubt the following
elements:

First, that Mr. Trapani obstructed, influenced, or
impeded an official proceeding, in this case, an investigation
by the United States Securities and Exchange Commission's New
York regional office in New York or attempted to do that.

And second, that Mr. Trapani acted corruptly, that is,
with an improper purpose and to engage in conduct knowingly and

J7HVTRAP

1    dishonestly and with the intent to obstruct, impede, or

2    influence the due administration of justice.

3        For Count Nine, the firearm possession count, the

4    government would have to prove beyond a reasonable doubt,

5    first, that during the time period from on or about February

6    21, 2018, to on or about April 20, 2018, as specified in the

7    superseding information, Mr. Trapani knowingly possessed a

8    firearm.

9        Second, that Mr. Trapani knew that he had previously

10   been convicted of a crime punishable for a term exceeding one

11   year, in other words, a felony.

12       And third, that the firearm had traveled in interstate

13   or foreign commerce at some point before Mr. Trapani possessed

14   it.

15       And the last count, the narcotics conspiracy count,

16   the government would have to prove beyond a reasonable doubt,

17   first, that two or more people entered into an agreement or

18   understanding to distribute illegal narcotics or to possess

19   illegal narcotics with the intent to distribute them.

20       And second, that Mr. Trapani knowingly joined and

21   participated in this narcotics conspiracy.  The narcotics that

22   Mr. Trapani is charged with conspiring to distribute are

23   mixtures and substances containing detectable amounts of

24   cocaine and heroin and prescription pills, specifically,

25   Oxycodone, Xanax, and Suboxone pills containing detectable

J7HVTRAP

1    amount of Oxycodone, alprazolam, and buprenorphine

2    respectively.

3            The government would also have to prove that venue is

4    appropriate in the Southern District of New York by a

5    preponderance of the evidence as to Counts One through Five and

6    Seven of the superseding information.

7            As to the remaining counts, Counts Six, Eight, Nine

8    and Ten, Mr. Trapani has agreed to waive venue as to those

9    counts.

10           THE COURT:  Thank you.

11           Having heard the elements of the offenses that are

12   recited in information S1 18 CR 340, is it still your desire to

13   tender a plea of guilty?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  Sir, have any threats been made to you by

16   anyone to influence you to plead guilty?

17           THE DEFENDANT:  No, your Honor.

18           THE COURT:  Have any promises been made to you

19   concerning the sentence that you will receive?

20           THE DEFENDANT:  No, your Honor.

21           THE COURT:  I understand that you and your attorney

22   and representatives of the government have reached certain

23   agreements and understandings in connection with your tender of

24   plea of guilty; and those agreements and understandings have

25   been reduced to a writing, specifically, a letter dated July

J7HVTRAP

1  10, 2019, addressed to Joseph A. Bondy, your attorney.  I have

2  a copy of that document before me which I shall show you now.

3          Do you recognize the document, sir?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Did you have an opportunity to review it

6  with your attorneys?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Is there anything contained in the

9  document that you do not understand?

10          THE DEFENDANT:  No, your Honor.

11          THE COURT:  Among other things, there is text in the

12  July 10, 2019 writing which requires you to make certain tax

13  filings and to pay certain taxes owed.

14          Are you aware of that, sir?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  The information S1 18 CR 340, in addition

17  to reciting the various statutes alleged to have been violated,

18  contains forfeiture allegations through which the government

19  has indicated it intends to recoup the proceeds of illegal

20  conduct described in the information from you.

21          Are you aware that the information contains forfeiture

22  allegations, sir?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  In the July 10, 2019 writing, there is

25  text through which you admit the forfeiture allegations

J7HVTRAP

```
1    respecting Counts One through Four, Six, Eight, Nine, and Ten.

2              Are you aware of that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  There's also text in that same writing

5    through which you waive venue for various counts of the

6    information:  Six, Eight, Nine, and Ten.

7              Are you aware of that?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  There's also text in the same writing

10   through which it is agreed that the bail conditions that were

11   previously fixed would remain in place after today's

12   proceeding.  Are you aware of that, sir?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  There's also text in the July 10, 2019

15   writing about which we have been speaking that constricts your

16   ability to appeal from or collaterally attack the Judgment of

17   Conviction or sentence that might be imposed upon you.  And

18   that would include a sentence involving supervised release or

19   any fines that might be part of the sentence.

20             Do you understand that, sir?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Let me show you the last page of the July

23   10, 2019 writing about which we've been speaking.

24             Is your true signature on that page?

25             THE DEFENDANT:  Yes, your Honor.
```

J7HVTRAP

1          THE COURT:  Did anyone force you to sign the document?

2          THE DEFENDANT:  No, your Honor.

3          THE COURT:  Let me turn my attention to your counsel.

4          Again, is counsel's signature also on the last page of

5     the document?

6          MR. BONDY:  Yes, your Honor.

7          THE COURT:  And representatives of the government also

8     signed the last page of the document?

9          MR. ENZER:  Yes, your Honor.

10          THE COURT:  Mr. Trapani, other than the agreements and

11    understandings that you and your attorney and representatives

12    of the government have made and reached that are outlined in

13    the July 10, 2019 writing about which we have been speaking,

14    have any other agreements or understandings been made or

15    reached with you in connection with your tender of plea of

16    guilty to information S1 18 CR 340?

17          THE DEFENDANT:  No, your Honor.

18          THE COURT:  Sir, is your plea to the information being

19    made voluntarily, that is, of your own free will?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Did you commit the offenses that are

22    outlined in the information?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Would you tell me in your own words what

25    it is that you did that makes you believe yourself guilty of

J7HVTRAP

1   the offenses outlined in the information?

2              THE DEFENDANT:  All right.  From about July 2017 to --

3              THE COURT:  Sir, please speak slowly so that the

4   reporter can capture everything that you want to say

5   accurately.

6              THE DEFENDANT:  Understood.

7              From about July 2017, to the beginning of 2018, I

8   agreed with other people to raise money from investors through

9   a white paper, social media, Internet, press releases, and

10  other electronic communication regarding a company named Centra

11  Tech Incorporated, allegedly for the purchase of digital tokens

12  that were part of an initial coin offering by making fraudulent

13  misrepresentations and omitting important facts.  I personally

14  participated in making some of these fraudulent

15  misrepresentations and omissions.  My acts included early

16  October text messages that I sent from New York City to other

17  people affiliated with Centra Tech regarding its operations.  I

18  knew at the time my acts were wrong and illegal.

19             Now we're going to go to Count Five.

20             In the beginning of 2018, after I had stopped being

21  employed by Centra Tech, but knowing that the SEC's New York

22  regional office had issued a subpoena for records relating to

23  the initial coin offering, I destroyed my laptop computer,

24  believing that information requested by the subpoena was

25  contained in some of its files.  I knew at the time my acts

J7HVTRAP

were wrong and illegal.

Count Six.  In about 2016 to 2017, I agreed with
another person to make false statements via the Internet and
phone to online mobile payment system Venmo to obtain money.  I
knew at the time my acts were wrong and illegal.  Although this
conduct occurred outside of the Southern District of New York,
I agree to waive the defense of venue for this count.

Count Seven.  I agreed to assist a person in
connection with his plan to obtain funds that were borrowed
against the credit of various members of my extended family.
Based on fraudulent misrepresentations and omitting important
facts, the plan included one of my co-conspirators making
computer searches from their office in the Southern District of
New York.  I knew at the time my acts were wrong and illegal.

Count Eight.  From about 2014 to 2017, I obtained
various credit cards and avoided repayment of various lenders
for credit card charges, debit card charges, and cash advances
by making false statements by phone and Internet.  I knew at
the time my acts were wrong and illegal.  Although this conduct
did not occur in the Southern District of New York, I agree to
waive defense of venue for this count.

For Count Nine, from February to April 2018, I
knowingly possessed a handgun, knowing that I had previously
been convicted of a felony offense.  Although this conduct
occurred in Florida, I agree to waive the defense of venue for

J7HVTRAP

1     this count.

2             For Count Ten, from 2009 to 2012, I agreed with others

3     to possess with intent to sell illegal drugs.  I knew at the

4     time my acts were wrong and illegal.  Although this conduct

5     occurred in the Eastern District of New York, I agree to waive

6     the defense of venue.  And even though it occurred over five

7     years before being charged, I agree to waive the defense of

8     statute of limitations for this count.  And in regards to the

9     forfeiture, I also agree that I will have to forfeit property

10    in this case, including my gun and all property that I

11    personally received or obtained through the crimes that I am

12    pleading guilty to today.

13            THE COURT:  When you indicated at the beginning of

14    your statement from July 2017 to 2018 you agreed to raise money

15    from investors through electronic communications, that you did

16    that activity from New York City, where in New York City did

17    you engage in that activity that you were discussing, sir?

18            THE DEFENDANT:  There was a period of time where I

19    actually had court for a case in the state court near here.

20    And I was sending text messages to other codefendants or

21    co-conspirators in regards to the fraud.

22            MR. ENZER:  New York County, New York, Judge.

23            THE COURT:  When you say that you were in a court near

24    here, when you say "near here," where is it that you're

25    referencing?

J7HVTRAP

1          THE DEFENDANT:  It's 100 Centre Street, New York, New
2     York.
3          THE COURT:  Thank you.
4          Any questions that the government would have me put to
5     Mr. Trapani?
6          MR. ENZER:  No questions, your Honor.
7          I have a few facts to proffer at an appropriate time.
8          THE COURT:  Mr. Trapani, I'm going to turn my
9     attention to your counsel again.
10          Is there any reason defense counsel knows of why
11     Mr. Trapani should not plead guilty to the information?
12          MR. BONDY:  No, your Honor.
13          THE COURT:  Is there any reason the government is
14     aware of why Mr. Trapani should not plead guilty to the
15     information?
16          MR. ENZER:  No, your Honor.
17          THE COURT:  If the matter would proceed to trial, what
18     evidence would the government offer in support of the charges
19     made from the information?
20          MR. ENZER:  Your Honor, the government incorporates by
21     reference the criminal complaint against Mr. Trapani which is
22     marked 18 MJ 3271, the facts set forth therein, and also the
23     indictment 18 CR 340, which have a detailed recitation of the
24     evidence, or at least some of it, for Counts One through Four.
25          To summarize, the government would offer witness

J7HVTRAP

testimony and documents establishing for Counts One through
Four that Mr. Trapani and other co-conspirators who founded a
company called Centra Tech raised millions of dollars from
investors through an initial coin offering based on fraudulent
and misleading representations about the company, about its
executive team, about partnerships it had, about licenses it
had; that those fraudulent statements were made in, among other
places, white papers and other documents which the government
would offer at a trial as evidence of the misrepresentations.

        There would be victim testimony that in reliance on
those and other false representations, investors, in fact,
provided money to purchase digital tokens issued by Centra
Tech.  There would be documentary evidence, including emails
and cell phone communications, between and among Mr. Trapani
and his co-conspirators establishing their knowledge of the
fraudulent scheme, their intent, and the fact that they were
aware and willfully participated in the scheme and made
fraudulent representations.  That and other evidence as laid
out in the complaint and the charging documents would be used
to establish guilt on Counts One through Four.

        Counts Five through Ten are based upon statements that
Mr. Trapani has made to law enforcement, and that is the only
evidence that the government has for Five through Ten.

        THE COURT:  Can you communicate to me in a general way
what those statements are that you say Mr. Trapani made with

J7HVTRAP

respect to Counts Five through Ten of the information?

MR. ENZER:  Your Honor, in substance, Mr. Trapani told the government in substance and in part essentially what he has allocuted for Five through Ten.

THE COURT:  Thank you.

MR. ENZER:  And, your Honor, if this is an appropriate time, I can proffer a few facts that are necessary for interstate commerce and venue.

THE COURT:  All right.

MR. ENZER:  So based on the facts that are incorporated from the charging documents that I referenced, the government proffers that the digital tokens that Mr. Trapani and his co-conspirators offered to Centra Tech investors in exchange for funds raised from investors in the initial coin offering constituted securities under the federal securities laws.

Among other things, in soliciting investments, Mr. Trapani and his co-conspirators caused Centra Tech to make representations to investors that would have prompted a reasonable investor to believe that by purchasing a digital token, he was investing in a common enterprise with a reasonable expectation of profits to be derived from the efforts of Centra Tech's cofounders, including Mr. Trapani and his co-conspirators.

The government also proffers that victims who were

J7HVTRAP

1    investors based in New York who were solicited in New York via

2    the Internet invested from New York in the initial coin

3    offering, and that other acts that are set forth in the

4    charging documents occurred in New York during and in

5    furtherance of the conspiracy by one or more members of the

6    conspiracy.

7          For purposes of Count Five, the obstruction count, the

8    government proffers that the Securities and Exchange

9    Commission's New York regional office, which is located in New

10   York, New York, issued the subpoena to which Mr. Trapani failed

11   to respond and, instead, destroyed a laptop that was called for

12   by the subpoena.

13         And for Count Nine, the firearms count, the government

14   proffers that the firearm in question, which was a Glock, was

15   manufactured outside of the State of Florida, where it was

16   seized and, thus, traveled in interstate or foreign commerce at

17   some point before Mr. Trapani possessed it in Florida.

18         THE COURT:  I'm satisfied that the defendant

19   understands the nature of the charges made against him through

20   information S1 18 CR 340.  I'm also satisfied that he

21   understands the consequences of the plea of guilty.  I'm

22   satisfied that the plea is being made voluntarily and knowingly

23   and that there is a factual basis for the plea.  So I shall

24   report and recommend to the assigned district judge that the

25   plea be accepted.

J7HVTRAP

1          It is my understanding that no date for sentence has

2     been fixed by the assigned district judge; is that correct?

3          MR. ENZER:  That's correct, your Honor.

4          THE COURT:  I'll fix a date and direct the parties to

5     contact the assigned district judge to see if that date is

6     convenient for a sentencing proceeding.

7          November 18, 2019.  I'll direct that a presentence

8     report be prepared prior to the date of sentence.  I shall also

9     direct the government to obtain a transcript of the minutes

10    made during this proceeding and present same to the assigned

11    district judge before the date of sentence.

12         MR. ENZER:  Your Honor, we will order the transcript

13    for immediate delivery.

14         Because of the nature of this agreement, we would ask

15    that the presentence report not be ordered at this time and

16    that the date for sentencing be merely a control date.

17         THE COURT:  As I indicated to you, you can contact the

18    assigned district judge.  And if that date is not convenient or

19    if the parties want to propose a different date, the assigned

20    district judge will entertain that, I'm certain.

21         MR. ENZER:  Okay.

22         THE COURT:  I'll turn to the defendant's counsel with

23    respect to the request that no presentence report be ordered at

24    this time.  What is defendant's position on that application?

25         MR. BONDY:  Your Honor, we join in that application.

J7HVTRAP

1              THE COURT:  The application is granted.

2              As I indicated earlier, I understood that there would

3    be no application to change bail conditions, and so the bail

4    conditions that were previously fixed will remain in place.

5              Is there anything else that we need to address this

6    morning?

7              MR. ENZER:  Nothing further from the government.

8              Thank you, your Honor.

9              MR. BONDY:  Nothing from us, your Honor.

10             Thank you very much.

11             THE COURT:  You're welcome.  Good day.

12             THE DEFENDANT:  Thank you, your Honor.

13             THE COURT:  You're welcome.

14                           *    *    *

15

16

17

18

19

20

21

22

23

24

25