

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 1, 2021

**VIA ECF AND EMAIL**
Honorable Lorna B. Schofield
United States District Judge
Southern District of New York
New York, New York 10007

The application is GRANTED. The Government's response to the Reply will be considered in evaluating the petitioners' arguments.
SO ORDERED
Dated: March 1, 2021
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

**Re:** *United States* v. *Sohrab Sharma et al.*, 18 Cr. 340

Dear Judge Schofield:

      The plaintiffs' attorneys (the "Plaintiffs' Attorneys") representing seven alleged victims of the defendants' fraud on Centra Tech, Inc. investors recently filed a 40-page reply (the "Reply") in support of their clients' 23-page third-party petition (the "Petition"), which demanded an order of restitution and a ruling validating their clients' purported claims to a portion of the $33 million in fraud proceeds that defendant Sharma has forfeited to the Government. The Reply contains numerous misleading claims that were raised for the first time in the Reply. The Government respectfully requests permission to file the brief response set forth below to address the most consequential of the Reply's new claims. Defendant Sharma has indicated through his counsel that he has no objection to this request. The Plaintiffs' Attorneys object to this request, though the Government respectfully submits that their objection should be overruled so that the Court has the benefit of the Government's responses to these new claims when it rules on the Petition. Should the Court grant the instant request, the Government's response to the Reply is as follows:

      For the reasons set forth in the Government's opposition (Dkt. 445) to the Petition, the Petition is meritless and should be dismissed without a hearing. Neither the new claims in the Reply addressed below, nor anything else in the Reply, alters that conclusion.

      *First*, in their Reply, the Plaintiffs' Attorneys — reversing course from their Petition's demand for an order awarding restitution as to all of the many victims of the defendants' fraud (*see, e.g.*, Dkt. 438 at 2-3/23) — now argue that the Court should award restitution only to their seven clients, even if it would be impracticable to identify and award restitution to the full universe of victims (*see* Dkt. 455 at 27-31/40). Judge McKenna of this Court rejected the same argument in *United States* v. *McQuillan*, No. 07 Cr. 17 (LMM), 2007 WL 2827850 (S.D.N.Y. 2007). In that securities fraud prosecution of a senior officer of a publicly traded company for deceiving investors into buying shares offered by the company, private attorneys for two alleged victims of the defendant's fraud intervened to seek restitution in excess of $5 million for losses that their clients suffered by purchasing shares at artificially inflated prices during the fraud and selling the shares after their prices fell in response to company disclosures revealing the fraud. *Id.* at *1. Judge McKenna denied the private attorneys' demand for restitution to their clients because their clients were only two of many potential investors who might have been victimized by the defendant's fraud, because "[i]t would not be appropriate to award restitution to [their clients], sophisticated investors with counsel, without attempting to locate and award restitution *pro rata* to the majority

of the purchasers in the offering" (*id.* at \*2), and because doing so was impracticable in that case such that any "attempt to include in defendant's sentence a restitution order would complicate or prolong the sentencing process to a degree that any need to provide restitution to [their clients] [was] outweighed by the burden on the sentencing process" (*id.*). For the same reasons, this Court should reject the Plaintiffs' Attorneys' attempt to secure a restitution award for their clients, from the finite financial resources of the defendants, through a restitution process that would risk unfairly prioritizing recoveries for their seven clients over thousands of other victims in this case.

As purported support for their argument to the contrary, the Plaintiffs' Attorneys cite several cases in their Reply (*see* Dkt. 455 at 13, 27-31/40) that are either inapposite or affirmatively contradict their position. For example, the Plaintiffs' Attorneys cite out-of-context *dicta* from *United States* v. *Grimes*, 173 F.3d 634 (7th Cir. 1999) and *United States* v. *Adetiloye*, 716 F.3d 1030 (8th Cir. 2013) as alleged support for their claim that the applicable restitution statute does not require losses for every potential victim to be identified for an order of restitution to be entered (*see* Dkt. 455 at 13, 28-29/40). Yet, both of those appellate decisions vacated district court orders awarding restitution to incomplete lists of fraud victims because the district courts had failed to engage in sufficient efforts identify all of the victims entitled to restitution or calculate their respective losses for restitution before entering those orders, and thus both decisions refute that claim. *See Grimes*, 173 F.3d at 638-39 (holding that district court exceeded its authority when it ordered restitution to an incomplete list of fraud victims based on an estimate of their total losses, "even though this is a case in which at the time of (prison) sentencing so many victims remained unidentified"); *Adetiloye*, 716 F.3d at 1035, 1038-40 (vacating district court's order awarding restitution to only three of many fraud victims, even though there was insufficient proof at the time of sentencing of the other victims' losses for restitution; "the district court should have postponed the restitution proceedings to allow for the gathering and presentation of additional evidence"). The remaining cases cited by the Plaintiffs' Attorneys' Reply (*see* Dkt. 455 at 13, 27-31/40) are also unhelpful at best (or affirmatively harmful at worst) to their position in this regard.[1]

---

[1] The Plaintiffs' Attorneys' belated attempt in their Reply (*see* Dkt. 455 at 27-28/40) to distinguish *In re W.R. Huff Asset Mgmt. Co.,* 409 F.3d 555, 563 (2d Cir. 2005) also fails. That and another Second Circuit decision (*see* Dkt. 445 at 31-31, 37-38 (discussing *W.R.Huff* and *United States* v. *Reifler*, 446 F.3d 65, 136 (2d Cir. 2006))) that the Plaintiffs' Attorneys failed to cite in their Petition squarely affirm the broad discretion afforded to district courts under 18 U.S.C. § 3663A(c)(3) to forgo restitution as impracticable in complex multi-victim securities fraud cases such as this one. The main cases cited by the Plaintiffs' Attorneys — *United States* v. *Gushlak*, 728 F.3d 184 (2d Cir. 2013) and *United States* v. *Catoggio*, 326 F.3d 323 (2d Cir. 2003) — are not to the contrary. Both decisions confirmed district courts' considerable discretion to decline restitution under § 3663A(c)(3). *See Catoggio*, 326 F.3d at 328; *Gushlak*, 728 F.3d at 192. In those two cases, where there was apparently insufficient forfeiture proceeds to fund a remission program, the district courts exercised their discretion to order restitution to victims despite the resulting burdens and protracted delays. *See Catoggio*, 326 F.3d 323, 324-30, 328 n.4 (vacating district court restitution order and remanding after 20 months of contested restitution proceedings); *Gushlak*, 728 F.3d at 188-90 (district court restitution proceedings took 18 months and required rulings on four restitution submissions). It would be unnecessary and imprudent to go through such burdensome

*Second*, despite the Plaintiffs' Attorneys' prior representations to this Court that this case falls within the category of complex multi-victim fraud cases where a sentencing court should "declin[e] to fashion a *post-conviction* order of restitution" because imposing one "would severely complicate and prolong the sentencing process" (Dkt. 211-1 at 9/14 (Plaintiffs' Attorneys' italics) (citation and quotation marks omitted)), the Plaintiffs' Attorneys now claim in their Reply that "as between restitution and the Government's proposed forfeiture and potential remission process, restitution is the clearly superior (and mandatory) option that would provide a path to genuine recovery for themselves" and other potential victims of the defendants' fraud (Dkt. 455 at 9/40). This new claim fails. As illustrated by the Plaintiffs' Attorneys' inability to collect on their clients' default judgments against Centra Tech, Inc., the defendants have limited assets with which to pay any award of restitution. The only significant assets available to provide any meaningful compensation to eligible victims of the defendants' fraud are the $33 million in funds that the Government seized pursuant to judicially authorized warrants and defendant Sharma agreed, after extensive litigation, to forfeit to the Government. Because district courts cannot order the Government to apply forfeited funds to pay down a defendant's restitution obligations,[2] attempting to identify and award restitution to all of the many victims in this case as part of the criminal sentencing and restitution process is unlikely to result in any compensation to victims beyond what they would otherwise receive through the process of forfeiture and remission. It will, however, impose extraordinary burdens on this Court, the Probation Department, and the Government that will unduly complicate and delay the resolution of this case (*see* Dkt. 445 at 35-38/50) for no practical benefit to victims. The forfeiture and remission process, in contrast, would permit the Department of Justice to use the pool of $33 million in forfeited funds to hire a suitable claims administrator to oversee the process of notifying potential victims, reviewing the flood of anticipated claims for remission, determining the validity of the claims, calculating the amounts to disburse on valid claims, and disbursing funds to eligible victims. (*See* Dkt. 445 at 20, 36, 48-49/50). If that process were conducted through the criminal restitution process, the Court would have to oversee analogous efforts by the Probation Department and the Government that would

---

restitution proceedings here, where the Government has secured $33 million in forfeited fraud proceeds that will be used to fund a remission program to compensate victims.

[2] Because forfeited assets are property of the Government under applicable forfeiture statutes, courts and defendants lack authority to use them to satisfy a defendant's criminal debts, including fines and restitution obligations. *See, e.g.*, *United States* v. *Trotter*, 912 F.2d 964, 966 (8th Cir. 1990). The Attorney General has sole authority to control the disposition of forfeited funds under applicable forfeiture statutes. *See United States* v. *Pescatore*, 637 F.3d 128, 137-38 (2d Cir. 2011). District courts do not have authority to reduce mandated criminal forfeiture to satisfy a defendant's restitution obligation. *See United States* v. *Bodouva*, 853 F.3d 76, 78 (2d Cir. 2017). As such, the cases cited by the Plaintiffs' Attorneys' Reply in which district courts required payments made by defendants (using assets owned by the defendants) be first directed toward their outstanding restitution obligations before any forfeiture obligations do not apply. (*See* Dkt. 455 at 23/40 (citing inapposite cases)). Here, the funds in question were forfeitable to the Government when defendant Sharma committed the fraud in this case, were seized from Sharma based on determinations by federal magistrate judges that there was sufficient cause to believe that those funds represented fraud proceeds subject to forfeiture to the Government, and Sharma has since forfeited those funds to the Government. Therefore, any judicial order directing Sharma to use his assets to pay restitution therefore could not reach those funds, which belong to the Government.

likely take years to complete and the Court would have to resolve an avalanche of litigation challenges arising from inevitable disputes as to the eligibility of restitution claimants or the calculation of their losses for restitution (*see* 18 U.S.C. § 3664(e) ("[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court")).  (*See* Dkt. 445 at 35-6/50).

*Third*, in a baseless attempt to persuade the Court that only a "small fraction" of the assets forfeited to the Government will be used to compensate victims pursuant to a remission program, the Plaintiffs' Attorneys argue misleadingly in their Reply that "from 2014 through 2016, payments from the [Department of Justice's Asset Forfeiture Fund ('AFF')] to victims accounted for just 15% of the AFF's expenditures." (*See* Dkt. 455 at 17-18/40). The Plaintiffs' Attorneys fail to disclose, however, that the AFF is composed, in significant part, of forfeited assets from non-victim offenses such as forfeited narcotics trafficking proceeds, and thus the statistics cited by the Plaintiffs' Attorneys are irrelevant to the disposition of forfeited assets in any particular case with victims, such as this one.

*Fourth*, the Plaintiffs' Attorneys seek belatedly and ineffectively to cure the fatal flaw in the Petition that their clients lack standing to assert an interest in the 100,000 Ether units seized by the Government and forfeited by defendant Sharma (the "Seized Ether Units"). The Plaintiffs' Attorneys seek to obscure this deficiency by claiming in conclusory fashion in the Reply that their clients' "specific interest in the Seized Ether Units is indelibly recorded on the Ethereum blockchain." (*See* Dkt. 455 at 35/40). As an initial matter, it is well established that a "claim that is asserted in a brief but not in a pleading is not a properly pleaded claim, and the court will not deem the pleading amended by the brief." *Marlin* v. *City of New York*, No. 15 Civ. 2235, 2016 WL 4939371, at *17 (S.D.N.Y. 2016).[3] The requirement that allegations be made in the pleading itself is paramount in a forfeiture proceeding, where the statute specifically requires the petition to be filed "under penalty of perjury." *See* 21 U.S.C. § 853(n)(3); *see also United States* v. *Speed Joyeros, S.A.*, 410 F. Supp. 2d 121, 124 (E.D.N.Y. 2006) (requiring the claimant to sign under penalty of perjury serves the Government's legitimate interest in protecting forfeited assets). In short, the Plaintiffs' Attorneys bore the burden to plead sufficient facts in the Petition to support their clients' claims and for their clients to swear to the truth of such factual pleadings under penalty of perjury, and the Court should not excuse their failure to do so.

Even if the Court were to entertain the Plaintiffs' Attorneys' belated attempt to rectify their failure to establish standing, the conclusory claims in the Reply still fall far short of the sort of allegations required to set forth a cognizable legal interest in the Seized Ether Units. For example, the Plaintiffs' Attorneys fail to submit or identify any specific blockchain or other records showing that specific Seized Ether Units are attributable to their clients as opposed to others among the thousands of the defendants' victims whose cryptocurrency funds were taken by fraud, routed to a number of different digital wallets (including but not limited to the wallet that contained the Seized Ether Units), and commingled with other assets. The Plaintiffs' Attorneys' reliance on *United States* v. *Egan*, 811 F. Supp. 2d 829 (S.D.N.Y. 2011) is misplaced, as there, the claimants alleged, among other things, that "specific, identifiable portions of [funds seized by the government] . . . had not yet been commingled . . . at the time that [the] funds were seized" (*id.* at 839), an assertion

---

[3] The Government's motion to dismiss the Petition is treated like a motion to dismiss under Federal Rule of Civil Procedure 12(b). (*See* Dkt. 445 at 43/50 (collecting authorities)).

that the Plaintiffs' Attorneys do not, and cannot, make here. The Plaintiffs' Attorneys also fail to account for the fact that a significant portion of the assets their clients claim to have lost include Bitcoin funds that by definition cannot be directly traced to the Seized Ether Units and Ether funds provided to secondary market sellers of CTR tokens that also cannot be traced to the Seized Ether Units. Lacking any specific evidence to trace particular Seized Ether Units to their clients' investments, the Plaintiffs' Attorneys are left to cite an unsworn assertion from a footnote in a brief filed by the Centra Tech defendants in the parallel civil proceeding in the Southern District of Florida suggesting that as a general matter, investments in the form of Bitcoin were converted to Ether and transferred to the relevant digital wallet.[4] This type of generalized and conclusory assertion is simply insufficient to confer standing under the forfeiture statute. *See*, *e.g.*, *United States* v. *Castle*, No. 18 Cr. 531 (KMK), 2020 WL 4059808, at *3 (S.D.N.Y. 2020) (dismissing petition where the petitioner failed to provide sufficient detail to plausibly allege his interest in the forfeited funds); *United States* v. *Patel*, No. 16 Cr. 85402, 2019 WL 3216654, at *4 (E.D.N.Y. 2019) (same); *United States* v. *Raniere*, No. 18 Cr. 204, 2020 WL 264958, at *2 (E.D.N.Y. 2020) (same). Aside from their conclusory assertions about the potential flow of their clients' cryptocurrency funds, the only evidence that the Plaintiffs' Attorneys point to is the "Government's own repeated representations regarding the source of the funds" in the relevant wallet. (*See* Dkt. 455 at 35/40). Yet none of the Government's representations purport to trace the specific cryptocurrency funds invested by the Plaintiffs' Attorneys' clients to specific Seized Ether Units; rather, those representations concern the flow of investor funds generally, and the fact that the Seized Ether Units were comprised of funds from investors writ large does not enable the Plaintiffs' Attorneys to assert a legal interest with respect to any specific Seized Ether Units, as necessary to state a viable claim under the forfeiture statute.

For these reasons and those set forth in the Government's opposition to the Petition, the Petition should be dismissed without a hearing, and the Plaintiffs' Attorneys should not be permitted to elevate their clients' interests above those of similarly situated victims of the defendants' fraud. Instead, the appropriate solution is the remission process under which the Government will distribute forfeited proceeds equitably on a *pro rata* basis to all eligible victims.

Respectfully submitted,

ILAN T. GRAFF
Attorney for the United States
Acting Under 28 U.S.C. § 515

by: /s/
Samson Enzer / Negar Tekeei / Daniel Loss
Assistant United States Attorneys
212-637-2342 / -2482 / -6527

cc: All counsel of record

---

[4] The Reply (Dkt. 455 at 17-18/40) quotes from footnote 2 at page 2 of a filing in the parallel Florida litigation, but erroneously attributes that quote to footnote 3 at page 3 of that filing.