

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 22, 2021

<u>**VIA ECF AND EMAIL**</u>
Honorable Lorna B. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:  *United States* v. *Sohrab Sharma et al.*, 18 Cr. 340 (LGS)

Dear Judge Schofield:

The Government respectfully requests that the Court deny as futile the application filed by plaintiffs' counsel on behalf of seven victims of the defendants' fraud on Centra Tech, Inc. investors (the "Claimants") seeking leave to file and commence ancillary proceedings under 21 U.S.C. § 853(n) on the Claimants' proposed amended petition (the "Amended Petition").  The Amended Petition claims that under § 853(n)(6)(A), the Claimants owned 3,357.45 of the 100,000 Ether units in fraud proceeds (the "Seized Ether Units") that were seized from a digital wallet controlled by defendant Sharma (the "Sharma Wallet" or "Seizure Wallet") and forfeited by Sharma to the Government, and demands payment of $6,226,592.27 representing the current market value of 3,357.45 Ether units and about 19% of the pool of funds from the liquidation of the Seized Ether Units.  Because the Amended Petition fails to adequately establish that the Claimants had a legally cognizable interest in any specific Seized Ether Units that vested before or was superior to the Government's interest at the time of the fraudulent acts that rendered those funds forfeitable to the Government, as is the Claimants' burden under § 853(n)(6)(A), the Amended Petition would be subject to dismissal without a hearing pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A).  As a result, it would be pointless to allow the Claimants to file the Amended Petition, let alone to initiate ancillary proceedings, which, as the Court previously noted, "can take on a life of their own" and "years" to litigate.  (*See* Mar. 4, 2021 Hr'g Tr. at 31).

As the Court is aware, the Government plans to use the pool of about $33.4 million in proceeds from the Seized Ether Units' liquidation to fund a remission program to compensate all eligible victims of the fraud on a *pro rata* basis for losses from the fraud (the "Victim Remission Pool").  But the Victim Remission Pool is likely insufficient to fully compensate the thousands of victims who might qualify for remission, and the remission process cannot begin until the Claimants' forfeiture challenge is resolved.  In allowing the Claimants another chance to try to cure the deficiencies that prompted the dismissal of their original § 853(n) petition for lack of standing, the Court gave the Claimants an opportunity to submit a proposed amended petition pleading the factual allegations necessary for their claims to withstand dismissal, and provided the Claimants with guidance about the nature and quantum of the factual allegations that they would be required to plead to move forward.  Now, with the benefit of the Claimants' Amended Petition, it is evident that the Claimants have failed to heed the Court's guidance.  Instead, the Claimants grossly overreach, demanding $6.2 million or about 19% of the funds from the finite Victim

Remission Pool — nearly double their Florida default judgments against Centra Tech, Inc. for $3.4 million in damages plus interest — based on allegations that do not satisfy the Court's directives and on arguments that cannot be reconciled with the law.  Rule 32.2(c)(1)(A) was designed for precisely these circumstances, so that the Court can dismiss such legally untenable claims rather than entertaining protracted ancillary proceedings that "can involve issues of enormous complexity that require years to resolve" (Fed. R. Crim. P. 32.2(c), Adv. Comm. N. (2000)) and would delay, and potentially diminish, the remission of funds to potentially thousands of victims all to resolve the excessive demands of seven Claimants.  (*See id.* (citing authorities)).[1]

As the Court advised the Claimants in the Court's Opinion and Order dismissing their original § 853(n) petition, in order to survive dismissal, any § 853(n) petition filed by the Claimants must allege facts showing that the Claimants have a legal interest in the Seized Ether Units that arose before the Government's interest vested, which occurred at the moment of the fraudulent acts that rendered those assets forfeitable to the Government.  (*See* Dkt. 468 at 9-13/13).  In a purported effort to address that ruling, the Amended Petition relies on allegations falling into three categories:  (1) tracing allegations purporting to trace 3,357.45 of the Seized Ether Units to Ether and Bitcoin investments that six of the seven Claimants provided to the defendants in exchange for CTR tokens in connection with Centra Tech's fraudulent initial coin offering ("ICO"); (2) allegations that the Court should grant the Claimants a "constructive trust" over 3,357.45 of the Seized Ether Units; and (3) allegations that the Claimants have a judgment lien against a portion of the Seized Ether Units.  (*See* Dkt. 471-1 at ¶ 71).  None of those allegations is sufficient to meet the Claimants' burden of pleading a plausible § 853(n)(6)(A) claim to any of the Seized Ether Units.

***Claimants' Tracing Allegations Fail.***  Even if the Amended Petition plausibly alleged that the Seized Ether Units were traceable to all of the Claimants' CTR purchases — which it does not — that would be insufficient as a matter of law to give the Claimants a viable interest in specific Seized Ether Units.  Absent a constructive trust (*see Willis Mgmt.* v. *United States*, 652 F.3d 236, 242-46 (2d Cir. 2011)) — which the Claimants are not entitled to here, as shown below — fraud victims such as the Claimants are "unlikely ever to prevail at an ancillary hearing under § 853(n)(6)(A) where the forfeited property consists of 'proceeds' derived from or traceable to" a defendant's fraud, as opposed to property used to facilitate a fraud that existed before the fraud. *See United States* v. *Watts*, 786 F.3d 152, 166 (2d Cir. 2015).  That is "[b]ecause, by definition, the proceeds of an offense do not exist before the offense is committed and because the

---

[1] As this Court has stated, Rule 32.2(c) allows the Court to dismiss a § 853(n) petition without a hearing for failure to state a claim upon which relief can be granted, lack of standing, or any other lawful reason, under the same standards that apply on a motion to dismiss under Federal Rule of Civil Procedure 12(b).  (*See* Dkt. 468 at 10/13).  In assessing the sufficiency of a § 853(n) petition, the Court may consider any well-pled factual allegations in the petition, documents attached to the petition as exhibits or incorporated in it by reference, matters of which judicial notice may be taken, or documents in the Claimants' possession or of which the Claimants had knowledge and relied in petitioning the Court.  *See United States* v. *Mendez*, No. 07 Cr. 107, 2009 WL 1706354, at *2 (E.D.N.Y. June 17, 2009) (citing cases).  To withstand dismissal, the petition must allege "'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp.* v. *Twombly,* 550 U.S. 544, 127 (2007)).

government's interest under the relation-back doctrine immediately vests upon the commission of that offense." *Id.* As a result, in cases like this (where a constructive trust is unwarranted), "[a] fraud victim who voluntarily transfers property to the defendant has a cause of action in tort against the defendant but has no greater interest in the forfeited property than does any other general creditor. Title to the funds in question no longer belongs to the victim; it belongs to the defendant." *United States* v. *Eldick*, 223 Fed. App'x 837, 839-40 (11th Cir. 2007); *United States* v. *Lesak*, No. 07 Cr. 0396 (GEL), 2009 WL 1788411, at \*4-6 (S.D.N.Y. 2009) ("Crime victims are typically general creditors." (citing *Eldick*)). "It is well-established that general unsecured creditors do not have standing to contest the forfeiture of their debtor's property." *See also DSI Associates, LLC* v. *United States*, 496 F.3d 175, 184 (2d Cir. 2007); *accord United States* v. *Schwimmer*, 968 F.2d 1570, 1582 (2d Cir. 1992). With those principles in mind, allegations that some of the Seized Ether Units are traceable to the Claimants' investment funds, without more, merely establish that the Claimants are general creditors of defendant Sharma for fraudulently inducing them to relinquish those funds and do not confer standing to contest the forfeiture of the funds, which they gave away to Sharma. *See United States* v. *BCCI Holdings, Luxembourg, S.A.*, 69 F. Supp. 2d 36, 59-61 (D.D.C. 1999); *United States* v. *Ramunno*, 599 F.3d 1269, 1271-72 (11th Cir. 2010).

In any event, the Amended Petition's tracing allegations do not plead plausible claims that specific Seized Ether Units are traceable to the Claimants' investments. At the outset, the bulk of the Amended Petition's tracing claims — alleging that 2,500 of the Seized Ether Units representing $4.6 million of the $6.2 million that the Claimants demand from the Victim Remission Pool are traceable to Claimant Wang Yun He's investment of 150 Bitcoin units in CTR tokens — are based on meritless allegations that grossly mischaracterize the evidence on which those claims rely. Specifically, the Amended Petition rests those claims on: (a) allegations that 150 Bitcoin units were worth about 2,500 Ether units when Claimant He used that much Bitcoin to buy CTR tokens (*see* Dkt. 471-1 at ¶ 51); (b) allegations that Centra Tech generally converted Bitcoin received from ICO investors into Ether that was ultimately transferred to the Seizure Wallet (*see id.* at ¶ 49); (c) allegations that the day after Claimant He completed his CTR purchases, defendant Sharma sent a text message to a co-conspirator "saying 'Moved over 2500 [Ether] from that dude [REDACTED]'" (*id.* at ¶ 50 (Claimants' brackets and alterations)); and (d) allegations leaping to the conclusion that "it is overwhelmingly likely" that the unnamed victim referenced in Sharma's text message was Claimant He (*id.* at ¶ 51). Those allegations are belied by the actual text message, in which Sharma wrote "'Moved over 2500 over from that dude Shin'" (Dkt. 121-7 at 42-43/421), making clear that the victim who provided the 2,500 Ether units in question was "Shin," not Claimant Wang Yun He as the Amended Petition misrepresents. Furthermore, any deposits of Bitcoin that the Claimants provided to the defendants by definition cannot qualify as specific units of a different cryptocurrency, Ether, that defendant Sharma forfeited. *See United States* v. *Ribadeneira*, 920 F. Supp. 553, 555 (S.D.N.Y. 1996) (Sand, J.) ("[P]etitioners are general creditors who have no interest in the specific accounts to which their deposits might be traced, only in the defendant's estate as a whole—and therefore can have no interest in particular assets forfeited" as "currency is inherently nonspecific and unidentifiable" and "[u]nlike purchasers of specified antique coins or earmarked out-of-print bills, petitioners here can point to no particular asset and call it their own." (citations and quotation marks omitted)), *aff'd*, 105 F.3d 833, 836 (2d Cir. 1997); *accord DSI*, 496 F.3d 175, 184-85.

Setting aside those baseless claims to 2,500 of the Seized Ether Units, the remainder of the Amended Petition's tracing allegations purport to plead that 857.45 of the Seized Ether Units are traceable to six of the seven Claimants' ICO investments of Ether for CTR tokens. Although these allegations are interspersed over a 36-page pleading with 110 pages of exhibits and are virtually incoherent at times, they can be boiled down to the following chain of assertions: (1) *first*, allegations that thousands of ICO investors, including six of the seven Claimants, deposited unspecified quantities of Ether into several virtual smart contract wallets maintained by Centra Tech, Inc. in exchange for CTR tokens (the "Receiving Wallets") (*see* Dkt. 471-1 at ¶¶ 30-37, 76; *id.* at 119/150); (2) *second*, allegations that virtually all of the Ether received by the Receiving Wallets was forwarded to the so-called "Centra Token Owner Wallet" (*see id.* at ¶¶ 38-41); (3) *third*, allegations that 100,000 Ether units (*see id.* at ¶¶ 42-48), representing "most" but not all of the Ether in the Centra Token Owner Wallet (*see id.* at ¶ 38), was further forwarded, through a series of intermediate routing wallets, to the Seizure Wallet (*see id.* at ¶¶ 7-8, 38).

If the Receiving Wallets had received only 100,000 Ether units from ICO investors, the Amended Petition's tracing allegations would set forth a plausible (indeed, a strong) claim that the 100,000 Ether units seized from the Seizure Wallet included the 857.45 Ether units invested by six of the Claimants. But as the Claimants are well aware, and yet fail to disclose to the Court in the body of the Amended Petition, the Receiving Wallets raised well in excess of 100,000 Ether units from ICO investors, and a significant portion of those Ether funds were dissipated by the defendants, rather than being routed to the Seizure Wallet. In an attorney declaration describing a prior tracing analysis by the Claimants' counsel that the Claimants filed in April 2018 in their parallel lawsuit in the Southern District of Florida ("SDFL"), one of the plaintiffs' attorneys for the Claimants stated in the declaration, under penalty of perjury, that (a) he had "reviewed transactions associated with Ethereum addresses belonging to Centra Tech, Inc." (SDFL Dkt. 65-1 at ¶ 3); (b) that "[m]ost, but not all, of the ETH in the [Centra Token] Owner address was forwarded on toward the [Seizure] Wallet containing 100,000 ETH that is presently the subject of the seizure warrant issued in the Southern District of New York" (*id.* at ¶ 7) by way of at least eight different "'Routing Addresses'" (*id.*); (c) that "[i]n total, Defendants collected at least, 112,777 ETH in proceeds from the Centra ICO" (*id.* ¶ 15); and (d) that "[a] review of the Ethereum blockhain also reveals that not all the ETH collected by Centra was sent to the [Seizure] Wallet," as more than 10,000 Ether units of such ICO proceeds "were sent to other addresses or cryptocurrency exchanges where they may have been liquidated" by the defendants (*id.* ¶¶ 16-18; *see also id.* at ¶ 18 (underscoring that "[n]one of these ICO Proceeds were ever kept in the [Seizure] Wallet")). Indeed, one of the exhibits that the Claimants appended to the Amended Petition shows that the Centra Token Owner Wallet received more than 130,000 Ether units in ICO proceeds of which 100,000 Ether units were routed through intermediate wallets to the Seizure Wallet (*see id.*, Ex. 2 at ¶¶ 22(b)(i)-(vii)), which also suggests that thousands of Ether units were dissipated by the defendants.[2] That Claimants failed to bring the prospect of such dissipated Ether to the Court's attention is troubling, as they undoubtedly knew that this exposes the implausibility of their tracing allegations. Because the Amended Petition at best pleads that six of the Claimants invested 857.45

---

[2] The record developed from years of litigation in this case has confirmed that the defendants, in fact, fraudulently raised a total of about $39 million in digital assets from ICO investors, consisting of the 100,000 Seized Ether Units (then worth about $29 million) routed to the Seizure Wallet plus $10 million in digital assets that the defendants dissipated. (*See, e.g.*, Dkt. 445 at 10, 44/50).

Ether units in Receiving Wallets, and because it appears that the defendants diverted in excess of 10,000 Ether units in ICO proceeds traceable to the Receiving Wallets according to the Claimants' prior tracing analysis, the Claimants' own allegations reveal the significant likelihood that the 857.45 Ether units provided by six of the Claimants were in the group of thousands of Ether units that the defendants diverted away from the Seizure Wallet, rather than the group of Ether units that made its way into the Seizure Wallet.  The Amended Petition fails to address, let alone grapple, with this gaping hole in the Claimants' tracing claims.  Aside from conclusory assertions that are insufficient to defeat dismissal, the Amended Petition is completely devoid of any factual allegations ruling out that the Ether deposited by the Claimants was diverted by the defendants, and thus fails to plead a plausible claim to any of the Seized Ether Units.  *See United States* v. *Castle*, No. 18 Cr. 531 (KMK), 2020 WL 4059808, at \*3 (S.D.N.Y. July 20, 2020) (dismissing petition for failure to plead non-conclusory factual allegations ruling out that forfeited funds from account were fraud proceeds, as opposed to clean funds in which the petitioner might have a superior interest).[3]

    ***Claimants' Constructive Trust Allegations Fail.***  In a futile effort to effort to side-step those fatal defects, the Amended Petition asserts in a conclusory fashion that the Court should find that the Claimants have a legal interest in 3,357.45 of the Seized Ether Units "by recognition of a constructive trust" (Dkt. 471-1 at ¶ 71).  Disregarding that conclusory assertion and the Amended Petition's legal arguments and case citations (*see, e.g.*, *id.* at ¶¶ 71 & n.10) that have no proper place in that pleading and cannot save it from dismissal (*see, e.g.*, *Castle*, 2020 WL 4059808, at \*3 (citing cases)), the Amended Petition is bereft of any factual allegations establishing that the Claimants should be afforded a constructive trust in any Seized Ether Units.  The Amended Petition contains none of the factual allegations needed to identify the proper locus of any constructive trust or the relevant state law that would define the elements required to justify such equitable relief for the Claimants' benefit, let alone the factual allegations necessary to plead critical elements.  For example, "'[i]t is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer'" (*Schwimmer*, 968 F.2d at 1583 (quoting authority)), but the Amended Petition fails to assert plausible tracing claims to the Seized Ether Units as shown above.  (Indeed, as to Claimant Rodney Warren the Amended Petition does not even purport to trace his entirely secondary market purchases of CTR tokens to any of the Seized Ether Units.)  For lack of such critical allegations, the Amended Petition fails to plead a viable constructive trust claim.  *See Ribadeneira*, 105 F.3d at 837 n.5.

    Even if the Amended Petition cleared those hurdles (which it does not), it fails to show, as is the Claimants' burden, that it would be equitable to award seven Claimants a constructive trust in $6.4 million or about 19% of the finite Victim Remission Pool, at the expense of the recoveries of numerous other similarly situated victims of the defendants' fraud who may have chosen to await the *pro rata* distribution of forfeited assets through a fair remission process rather than

[3] Unlike non-fungible tokens ("NFTs"), such as those used to authenticate digital artworks as discussed in *The Wall Street Journal*'s recent article "Sotheby's Enters NFT Art Market," items such as "ETH or dollars are fungible" according to the *Ethereum.org* website's section on NFTs. As such, it is hard to see how Claimants could ever rule out the dissipation of their Ether deposits.

pursuing litigation. *See United States* v. *Dreier*, No. 09 Cr. 085 (JSR), 2010 WL 1223087, at \*2-3 (S.D.N.Y. Mar. 24, 2010) (citing cases). Courts routinely refuse to impose "a constructive trust over forfeited property for the benefit of certain petitioning crime victims where, as here, doing so would harm other crime victims also seeking to recover from the same limited pool of forfeited assets" through restoration or remission by the Government. *See id.* (denying constructive trust for intervening fraud victim in favor of allowing the Government to exercise its discretion to return forfeited assets to all fraud victims on a *pro rata* basis), citing *United States* v. *Andrews,* 530 F.3d 1232, 1237-39 (10th Cir. 2008) (same); *United States* v. *Peoples Benefit Life Ins.*, 271 F.3d 411, 414-15 (2d Cir. 2001) (affirming denial of claimant's forfeiture challenge based on constructive trust claim that would enable one victim to "leapfrog" over other victims); *Ramunno*, 599 F.3d at 1275 ("[f]airness does not call for a constructive trust in this case even if Martin can prove that he can trace, because it would elevate his position over that of similarly situated victims" awaiting remission from the Government). This Court should do the same.

   ***Claimants' Judgment Lien Allegations Fail.*** The Amended Petition's allegations that the Claimants supposedly have a judgment lien in certain Seized Ether Units — based on assertions that they obtained "writs of execution" purporting to compel the United States Government to use the Seized Ether Units to satisfy their Florida default judgments against Centra Tech, Inc. — are equally unavailing. Even if these writs could create a valid lien against the Seized Ether Units — which they cannot — any such lien was not established until, at the very earliest, September 2, 2020 according to the Claimants' own allegations. (*See* Dkt. 471 at 3/4; Dkt. 471-1 at ¶¶ 26-29). That was years after the Government's interest in the Seized Ether Units had fully vested pursuant to 21 U.S.C. § 853's relation-back doctrine. As the Court previously explained in dismissing the Claimants' original § 853(n) petition, "[u]nder the 'relation-back' doctrine of § 853(c), the government's interest in the proceeds of a fraud vests as soon as those proceeds come into existence, and is therefore superior to that of any subsequent third-party recipient of those funds" (Dkt. 468 at 9/13 (citation and quotation marks omitted)). The criminal acts that rendered the Seized Ether Units forfeitable to the Government occurred during Centra Tech's fraudulent ICO in 2017, long before the 2020 writs could possibly have bestowed on the Claimants any conceivable interest in the Seized Ether Units. As such, the writs are insufficient to establish a valid § 853(n)(6)(A) claim to the Seized Ether Units. *See United States* v. *Speed Joyeros, S.A.*, 410 F. Supp. 2d 121, 125-26 (E.D.N.Y. 2006) (because § 853(n)(6)(A) claimants perfected an order of attachment in forfeited assets after the criminal acts that rendered those funds forfeitable under the relation-back doctrine, the attachment order came "too late in the day"); *accord United States* v. *Madoff*, No. 09 Cr. 213 (DC), 2012 WL 1142292, at \*5 (S.D.N.Y. Apr. 3, 2012).

   In any event, the "writs of execution" that the Claimants rely so heavily on were void *ab initio* pursuant to 21 U.S.C. § 853(k), and therefore cannot transform the Claimants' general default money judgments against Centra Tech into a legally cognizable interest in particular Seized Ether Units. Section 853(k) affirmatively bars anyone claiming an interest in forfeited property from intervening in a criminal case involving the forfeiture of the property, and also from "commenc[ing] an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section" (21 U.S.C. § 853(k)), except through a post-conviction ancillary proceeding pursuant to Section 853(n) (*id.* §§ 853(k) and (n)). *See Libretti* v. *United States*, 516 U.S. 29, 44 (1995); *DSI*, 496 F.3d at 183. Here, the Claimants did

not obtain their writs of execution until after the Government filed charging instruments making clear that the Seized Ether Units were forfeitable to the Government. For example, on July 17, 2020, the Government filed a superseding felony Information against defendant Sharma containing a forfeiture notice that Sharma must forfeit all proceeds that he obtained from defrauding Centra Tech investors, including but not limited to all 100,000 of the Seized Ether Units, and Sharma pleaded guilty to the Information pursuant to a plea agreement in which he admitted the Information's forfeiture allegations and agreed to forfeit to the Government all of his right, title and interest "in 100,000 Ether units that were seized by the Federal Bureau of Investigation" from the Sharma Wallet in 2018. (*See* Dkt. 362 at 9-11/12). On July 20, 2020, a notice was filed in the Claimants' Florida lawsuit against Centra Tech (a) enclosing the Information to which Sharma pled guilty, his plea agreement, and a transcript of his guilty plea hearing, and (b) advising the Claimants that "[a]s part of that plea, Sharma specifically forfeited any interest in the 100,000 Ether seized by the FBI" paving the way for the Government to "begin providing compensation to victims in accordance with its standard procedures." (*See* SDFL Dkt. 307). Although the Claimants were well aware of those forfeiture notifications — which indisputably triggered Section 853(k)'s prohibition on the commencement of any "action at law or equity against the United States" to assert an interest in the Seized Ether Units except in an ancillary § 853(n) proceeding before Your Honor in this case (*see* 21 U.S.C. §§ 853(k), (n)) — the Claimants nonetheless violated that prohibition and this Court's jurisdiction over forfeiture of the Seized Ether Units by filing their writs of execution as miscellaneous actions "on August 8th, 2020 against the U.S. Attorney's Office for the Southern District of New York" (Dkt. 471-1 at ¶¶ 23, 26) before seven other Judges of this Court, purporting to direct the United States Department of Justice to pay the Claimants' default judgments against Centra Tech from the Seized Ether Units (*see id.* ¶ 26). Because the Claimants were barred by statute from seeking or obtaining those writs, the writs have no force or effect and cannot create a lien in the Seized Ether Units. *See* 21 U.S.C. § 853(k); *Watts*, 786 F.3d at 175.

***Claimants' Remaining Allegations Fail.*** The Amended Petition's remaining allegations purporting to show that the Seized Ether Units belonged to Centra Tech, Inc. rather than defendant Sharma cannot not save the Amended Petition from dismissal. It is not surprising that the Amended Petition devotes so many paragraphs to these allegations, because if the Seized Ether Units in fact belonged to Sharma rather than the Centra Tech corporation, the Claimants' writs of execution purporting to establish a lien only on "goods and chattels of Centra Tech, Inc." in the Government's possession (Dkt. 471-1 at ¶ 26) would be useless. While these allegations are necessary to support a link in the chain of arguments on which the Amended Petition's lien claims rest, they are not sufficient to sustain those or any of the other purported § 853(n)(6)(A) claims in the Amended Petition. Because the Amended Petition's tracing, constructive trust and judgment lien claims are meritless for reasons (set forth above) that in no way turn on whether the Seized Ether Units belonged to Sharma versus Centra Tech, there is no need for the Court to reach that irrelevant legal question.[4] Nevertheless, we note that the Amended Petition's allegations denying

---

[4] Because Sharma wholly owned and controlled Centra Tech, Inc., and had exclusive control of the Seized Ether Units until he surrendered them to law enforcement, the Government's forfeiture authority would reach the Seized Ether Units even if his company technically owned them. *See United States* v. *Bergstein*, 788 Fed. App'x 742, 748 (2d Cir. 2019); *United States* v. *Contorinis*, 692 F.3d 136, 147 (2d Cir. 2012). In any event, the Claimants have no standing to challenge or

that Sharma ever owned the Seized Ether Units are implausible.  The record of prior proceedings in this case furnishes more than ample evidence that the Seized Ether Units — which Sharma obtained through lies to investors, transferred to the Sharma Wallet to which he possessed the only passcode, and transferred to law enforcement by releasing the true passcode to federal agents — belonged to Sharma.  (*See, e.g.*, Dkt. 445 at 9-10, 47/50).  In connection with his guilty plea and sentencing, Sharma made admissions to the Court that he owned the Seized Ether Units worth $29 million when he obtained them, even though those admissions increased the financial penalties to which he was exposed.  (*See, e.g.*, Dkt. 411).  The Centra Tech corporation — which was represented by its own attorney in the Claimants' Florida lawsuit — elected not to file a § 853(n) petition challenging Sharma's forfeiture of the Seized Ether Units.  Those irrefutable facts, among many others in the record, render implausible any claim that Sharma had no interest in the Seized Ether Units that he forfeited as the Amended Petition contends.

       *Conclusion.*  This Office has sympathy for the plight of all victims of the defendants' fraud, including the Claimants, and hopes that all of them recover as much of their losses from the fraud as possible from the Victim Remission Pool once the Justice Department can commence the remission claims process.  The Amended Petition makes clear that at least several of the Claimants will have strong claims for remission under the governing regulations in 28 C.F.R. §§ 9.2(b) and 9.8.  But that is an entirely different inquiry from whether the Amended Petition pleads a valid claim under 21 U.S.C. § 853(n) that certain Seized Ether Units belonged to and should be returned to them.  The law is clear that the Amended Petition simply fails to do so.  As such, it would be lawless and unjust to award the seven Claimants $6.4 million or about 19% of the finite Victim Remission Pool to compensate them as demanded in their Amended Petition, while multitudes of other similarly situated victims of the same crime will have to await the remission claims process and will receive only a *pro rata* share of whatever leftover funds remain after the Claimants are paid nearly double their default judgments for $3.4 million against Centra Tech.  The Court should decline the Claimants' attempt to leapfrog ahead of other victims by filing and pursuing ancillary proceedings on their Amended Petition's inflated monetary demands.  The Claimants' application for leave to file and pursue ancillary proceedings on the Amended Petition should be denied.

                            Respectfully submitted,

                            ILAN T. GRAFF
                            Attorney for the United States
                            Acting Under 28 U.S.C. § 515

by:  _/s/_____
                     Samson Enzer / Negar Tekeei / Daniel Loss
                     Assistant United States Attorneys
                     212-637-2342 / -2482 / -6527

cc: All counsel of record

---

relitigate the Court's finding that defendant Sharma forfeited the Seized Ether Units to the Government.  *See United States* v. *Holy Land Found.*, 722 F.3d 677, 689-90 (5th Cir. 2013) (citing cases including *DSI*, 496 F.3d at 184-85 (2d Cir. 2007)).