# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

C.A. No. 1:18-cr-340 (LGS)

United States of America

                              Plaintiffs,

v.

SOHRAB SHARMA, ET. AL.,

                              Defendants.

## REVISED ANCILLARY PETITION FOR HEARING TO ADJUDICATE VALIDITY OF LEGAL INTEREST AND RIGHT TO FORFEITED PROPERTY UNDER 21 U.S.C. § 853(N)(1)

## TABLE OF CONTENTS

BACKGROUND ................................................................................................................. 1

I.   CLAIMANTS HAVE A SUPERIOR INTEREST IN THE SEIZED ETHER ............... 10

   A.   Claimants' Judgment Liens Demonstrate a Legal Interest in the Specific Seized Ether ................................................................................................................. 11

   B   Claimants Rensel,  He, Hao Poon, Fung Poon, Lee, and Ganczarek's Interest  in the Seized ETH is Demonstrated as their Ethereum Investments are  Directly Traceable to the Seized Ether ................................................................................ 12

     1.   Flow of Claimants' Contributions to the Centra Token Owner Wallet,  Centra Routing Wallet 6, and Centra Routing Wallet 5 .................................................. 14

     2.   Flow of Claimants' Contributions From Centra Routing Wallet 5 to the Seizure Wallet................................................................................................................. .. 17

     3.   Claimant He's Bitcoin Investments ................................................................ 22

II.   CLAIMANTS ARE ENTITLED TO THE RETURN OF THE THEIR ETHER IN  THE SEIZURE WALLET ........................................................................................ 23

III.  SHARMA DOES NOT HAVE ANY VESTED INTEREST IN THE SEIZED ETHER BECAUSE  THE  VICTIM  FUNDS WERE SEIZED FROM CENTRA TECH, INC., NOT DEFENDANT SHARMA ...................................................................... 24

   A.   Claimants Have Standing to Challenge the Nexus of Their Forfeited Property  in a § 853 Ancillary Hearing Under the Due Process Clause ........................................... 24

   B.   The Government Has No Vested Interest in the Claimants' Ether Because  the Ether's Nexus is to Centra Tech—Not to Defendant Sharma ................................. 26

IV. CLAIMANTS' INTEREST IN THE SEIZED ETHER IS SUPERIOR IN TIME TO SHARMA'S INTEREST ................................................................................................. 33

Jacob Zowie Thomas Rensel ("Rensel"), Wang Yun He ("Yun He"), Chi Hao Poon ("Hao Poon"), King Fung Poon ("Fung Poon"), Jae J. Lee ("Lee"), Mateusz Ganczarek ("Ganczarek"), and Rodney Warren ("Warren") (collectively, "Plaintiffs" or "Claimants")[1] are each investor-victims of Centra Tech, Inc.'s ("Centra Tech") extensive fraud to which Sohrab Sharma ("Sharma"), Raymond Trapani ("Trapani") and Robert Farkas ("Farkas") have pled guilty to in this action (the "Criminal Action") hereby petition, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n), for a hearing to adjudicate the validity of Claimants' interest in a portion of the 100,000 Ethereum ("ETH") seized from Centra Tech by the Federal Bureau of Investigations ("FBI") on behalf of Centra Tech's victims ("Centra Victims") in 2018 (the "Seized ETH" or "Victim Funds").

## BACKGROUND

### Centra Tech's Corporate Structure

1.     Defendants Sharma, Farkas and Trapani (collectively, the "Founder Defendants") founded Centra Tech in July 2017, *see* Indictment, ECF 14 ¶16, and it was incorporated under the laws of Delaware on July 27, 2017.  *See* ECF No. 127-1 (Delaware state corporate records previously filed as Exhibit A to Defendants' Joint Omnibus Reply in further support of their Motion to Dismiss).

2.     Defendant Sharma was Centra Tech's President, CEO, and sole Director until October 27, 2017. Since that date, Centra Tech's Board of Directors has been comprised of Defendant Farkas and Defendant Trapani's now deceased grandfather, William Hagner ("Hagner").  *See* ECF No. 81-1 (October 27, 2017 Action of the Board of Directors of Centra Tech

---

[1] Claimants are plaintiffs in a civil action pending in the Southern District of Florida captioned *Rensel v. Centra Tech, Inc. et al,* 17cv24500 ("Civil Action").

signed by Defendant Sharma which removed Sharma as a Director and appointed Hagner and Defendant Farkas the sole Directors of Centra Tech), and ECF No. 81-3 (October 27, 2017 Action of the Board of Directors of Centra Tech signed by Defendant Sharma which removed Sharma as an Officer of the company, and appointed Hagner as Centra Tech's President and Farkas as its "Secretary and Treasurer; with full authority to control the Company bank accounts").[2]

3.       At present, Defendant Farkas is the only living director of Centra Tech, and thus "the only individual with the ability to make corporate decisions on behalf of Centra Tech, Inc." ECF No. 81 (Defendant Sharma's opposition to the Government's motion to revoke bail), at 2 ("On October 27, 2017, Sam Sharma was removed as a director and President of Centra Tech, Inc. so he has no legal authority to act on behalf of Centra Tech, Inc. as that power vests in the Board of Directors.")

***Centra Tech's Fraudulent ICO***

4.       Centra Tech was a start-up company that purported to develop and market the Centra Debit Card, which the company claimed would permit individuals to store and spend their cryptocurrencies, including bitcoin ("BTC") and ETH, in real time at any vendor that accepted Visa or Mastercard. *See* Indictment, ECF No. 14 ¶1. To finance Centra Tech's operations and development of the Centra Debit Card and related products, Centra Tech conducted an "initial coin offering", during which it accepted digital funds from Centra Victims in exchange for unregistered securities in the form of Centra Tokens ("CTR"). *Id.*, ¶3.

---

[2] *See also* ECF No. 405, Government's Sentencing Memorandum as to Defendant Farkas, at 20 ("On October 27, 2017, Sharma signed corporate resolutions: (a) removing himself from his positions as a Director and President of Centra Tech; (b) appointing Trapani's grandfather, William Hagner, as a Director and President of Centra Tech; and (c) appointing Farkas as a director of Centra Tech with full authority to control the company bank accounts.").

5.      The Founder Defendants engaged in a scheme to defraud investors in the Centra ICO, including Claimants, through the sale of unregistered securities and a series of material misrepresentations and omissions (the "Centra Fraud"). *Id*., ¶16.

6.      Defendants' criminal conduct in connection with the Centra Fraud resulted in Centra Tech obtaining the Victim Funds from Claimants and other Centra Victims. *Id*; *see also* ECF No. 209 (The Government's Opposition to Defendants Sharma and Farkas's Motion to Return Ether), at 7 ("As a result of the defendants' fraudulent conduct, Centra Tech raised tens of millions of dollars in assets from victims during the ICO from approximately July 30, 2017 through October 5, 2017.").

7.      On October 17, 2017, Centra Tech moved the overwhelming majority of the cryptocurrency it received from Centra ICO investors (i.e., the 100,000 ETH) into a wallet  with the public address of  0x494C7f57396CE9ef51A49B1377d40c3e095b206F (the "First ICO Wallet").  This 100,000 ETH "includes proceeds that were originally sent in other currencies such as Bitcoin."[3]

***Centra Tech Faces Parallel Civil, Criminal, and SEC Actions***

8.      On November 29, 2017, the Securities and Exchange Commission issued a subpoena to Centra Tech, care of its outside counsel, Ballard Spahr LLP compelling the production of a variety of documents related to the Centra ICO.  *See* **Exhibit 1**, FBI Agent Kristin Allain's Affidavit in Support of Seizure Warrant Pursuant to 18 U.S.C. 981 as to 91,000 of the 100,000 ETH in Victim Funds (the "91,000 ETH Seizure Affidavit"), at ¶8.a.  That same day, "**Centra Tech transferred** all of the digital assets in that digital wallet [the First ICO Proceeds Wallet],

---

[3] *See* Civil Action, ECF No. 85-2, attached as **Exhibit 3** (April 12, 2018 email from Centra Tech and the Founder Defendants' counsel regarding the Centra ICO proceeds)

including the [91,000 ETH], to a different digital wallet with its own unique passcode" *Id.* ¶8.b.ii (emphasis added). The wallet that Centra Tech transferred the 100,000 ETH to has the public address of [0xdA6F983076725cB2899205A16E16d1ed60a0067A](0xdA6F983076725cB2899205A16E16d1ed60a0067A) (the "Seizure Wallet"), and is the wallet from which the government seized the Centra Tech Victim Funds.

9.      On December 13, 2017, the Civil Action was initiated against, *inter alia*, Centra Tech, Sharma, Farkas, and Trapani (collectively, the "Centra Defendants"). *See* Civil Action, at ECF No. 1.  On March 31, 2018, the Criminal Action was initiated against Sharma and Farkas and each individual was arrested on April 1, 2018. ECF No. 1.  Both the Civil Action and Criminal Action concern identical facts and substantively identical claims arising from the Founder Defendants orchestrating the fraud on Centra Tech's investors. *See* Complaint, at ¶ 3; *see generally*, Criminal Complaint.  Thereafter, on April 18, 2018, a similar Criminal Action was filed against Trapani.

10.     On April 5, 2018, Claimants filed an emergency renewed application for a temporary restraining order imposing an asset freeze over the Victim Funds.  *See* Civil Action, ECF No. 54 ("TRO Application").  On April 12, 2018, the Centra Defendants consented to the issuance of a preliminary injunction imposing an asset freeze over the full 100,000 ETH of Victim Funds raised from Plaintiffs and the putative class.[4]  *See also Rensel v. Centra Tech, Inc.*, No. 17-24500-CIV, 2018 WL 4410126, at *4 (S.D. Fla. June 25, 2018), *report and recommendation adopted,* No. 17-24500-CIV, 2018 WL 4828444 (S.D. Fla. Sept. 25, 2018) ("In its Response, the Defendants state that "Centra Tech consents to an order enjoining Centra Tech from accessing the

---

[4] *See* **Exhibit 3** (April 12, 2018 email from defense counsel consenting to such terms).  Indeed, the Centra Defendants also consented to an asset freeze covering the full 100,000 ETH in their papers concerning Plaintiffs' application for an asset freeze (Civil Action, ECF No. 63 at 4) as well as in open court during the hearing on the matter (*Id.* at ECF Nos. 85-3 at 76, 83, and 99).

assets in the ICO Wallet for any purpose other than complying with the Seizure Warrant (and to a preliminary injunction of the same scope)." ECF No. 63, Response at 4. Centra Tech further "consents to the entry of a preservation order" "to the extent that Centra Tech is currently in possession of or has returned to it any materials relevant to the instant matter." ECF No. [63], Response at 5.4 At oral argument, the Defendants further consented to entry of an asset freeze as to the contents of the ICO Wallet, including the 8,932.325 Ether that was not subject to the government's Seizure Warrant.")

11.     On April 13, 2018, the FBI sought a warrant of seizure pursuant to 18 U.S.C. § 981 with respect to 91,000 ETH of the Victim Funds. *See* **Exhibit 1**, 91,000 ETH Seizure Affidavit. In requesting the 91,000 Seizure Warrant, FBI Agent Allain explained that the FBI was seeking "to transfer the Subject Property [91,000 ETH] **from the Digital Wallet set up by Centra Tech** to a secure digital wallet maintained by the FBI." *Id.* ¶9.

12.     Also on April 13, 2018, after obtaining the 91,000 ETH Seizure Warrant, given that the ICO Wallet was owned and controlled by Centra Tech, the DOJ served the warrant on Centra Tech's outside counsel. *See* Civil Action, ECF No. 63-1, attached as **Exhibit 4** (declaration of Centra Tech's outside counsel in support of the Centra Defendants' response to the TRO Application), at ¶6.

13.     While attempting to seize the Victim Funds and thereafter, the DOJ consistently maintained that its efforts were meant to secure the funds for the benefit of the Centra Victims. *See, e.g.*, ECF No. 77, Motion for Revocation of Defendant Sharma's Bail, at 14 ("Sharma has thus repeatedly misrepresented material facts to the SEC, the Government and the FBI, and this Court – all in an effort to hide his access to significant assets that **belong to Centra Tech victims**.") (emphasis added).

5

14.     On May 10, 2018, the government moved 91,000 of the Victim Funds to the public wallet with the address 0x5B011E46FE3b44125633ab13CE33232a8561DbDD.

15.     On June 25, 2018, Magistrate Judge Simonton recommended in Claimants' Action in the Southern District of Florida that an asset freeze be imposed over the Victim Funds. *Rensel v. Centra Tech*, 2018 WL 4410126, *report and recommendation adopted,* 2018 WL 4828444. Shortly thereafter, the Centra Defendants filed an emergency motion to modify the asset freeze and revoke their consent as to 9,000 of the 100,000 ETH. Civil Action, *see* **Exhibit 2**, FBI Agent Brandon Racz Affidavit in Support of Seizure Warrant Pursuant to 18 U.S.C. 981 as to the 9,000 ETH (the "9,000 ETH Seizure Affidavit"), ¶16 (discussing circumstances surrounding Plaintiffs' efforts to secure the ICO Funds).  On September 25, 2018, Judge King in Claimants' Civil Action imposed an asset freeze covering 91,000 ETH of the ICO Funds contained in the digital wallet currently secured by law enforcement. *Id*; Civil Action, at ECF No. 95.

16.     In October 2018, the FBI sought a warrant of seizure pursuant to 18 U.S.C. § 981 as to the remaining 9,000 ETH in the ICO Wallet.  *See* **Exhibit 2**, 9,000 ETH Seizure Affidavit. In requesting the 9,000 ETH Warrant, Agent Racz explained that seizure was necessary as the Centra Defendants in the Civil Action "revoked their consent to the seizure of the remaining 9,000 Ether units in the Seizure Wallet, and Judge King issued a preliminary injunction on or about September 25, 2018 that imposes an asset freeze over the 91,000 Ether units that are currently held in a digital wallet controlled by law enforcement but does not freeze or otherwise protect the remaining 9,000 Ether units in the Seizure Wallet." *Id.* ¶16.

17.     On November 8, 2018, the government moved the remaining 9,000 of the Victim Funds to the public wallet with the address 0x7f98B3890b57992Ba0A328698E0920921332F32C.

***Claimants Secure Judgment Liens against the Seized ETH***

18.     On December 13, 2019, after two years of actively litigating their claims against the Centra Defendants, Claimants secured entry of a final default judgment against Centra Tech. *See* Civil Action, ECF No. 263 (Order Granting Plaintiffs' Motion for Default Judgment), attached as **Exhibit 5**.  The Court determined that "the proper computation of Plaintiffs' damages is the value of the BTC or ETH consideration paid for CTR Tokens reduced by the amount realized through that sale of CTR Tokens on the date of sale, if any." *Id.* at 5.

19.     That same day, Centra Tech filed a motion for reconsideration of the Court's computation of Plaintiffs' losses contained in the final default judgment.  On January 31, 2020, the District Court held a hearing on Defendant Centra Tech's challenges to the calculation of Plaintiffs' losses attributable to the Centra Fraud.  *See* ECF No. 276 (Order Denying Motion for Reconsideration), attached as **Exhibit 6**, at 1.  On February 4, 2020, the District Court issued an order denying Centra Tech's motion for reconsideration and reaffirming the final default judgment entered in favor of Plaintiffs upon finding: "The basis of Centra Tech's argument is that the Court should calculate damages using the dollar value of the cryptocurrency originally paid by each Plaintiff to purchase CTR Tokens. (ECF No. 264 at 6.) The Plaintiffs, however, did not use U.S. dollars to pay for the CTR Tokens and this measure of damages would not place investors back in their pre-investment position. Accordingly, the Court finds no basis to reconsider its prior ruling." *Id.* at 3–4.  The Court's final judgments recognized that:

- "Plaintiff He purchased 1,283,717 CTR Tokens in exchange for 203.0054 BTC and 511.35 ETH. (ECF No. 260-3 at ¶ 4.) When He sold those CTR Tokens, he received less than 66.7 BTC in exchange. (*Id.* at ¶ 5.) He's total losses as a result of his investment in CTR Tokens is 136.3069 BTC and 511.35 ETH. (*Id.* at ¶ 6.) The dollar value of that BTC and ETH on the dates of He's sales was $2,672,864.54. (*Id.* at ¶¶ 7-10.)."

- Plaintiff Rensel purchased 13,369 CTR Tokens in exchange for 23.4 ETH. When Rensel sold those CTR Tokens he received BTC worth less than 23.4 ETH. (ECF No. 260-2 at ¶ 6.) Specifically, he received 1.18964396 BTC,

then worth 23.1228 ETH. (*Id*. ¶ 7–8.) Accordingly, Rensel's total losses as a result of investing in CTR Tokens is 1.177 ETH. (*Id*. ¶ 9.)

- Plaintiff Poon purchased 68,000 CTR Tokens in exchange for 160 ETH. (ECF No. 97 at ¶ 40.) Accordingly, Plaintiff Poon's total losses from investing in CTR Tokens is 160 ETH.

- Plaintiff King Fung Poon purchased 56,000 CTR Tokens in exchange for 100 ETH. (ECF No. 97 at ¶ 42.) Accordingly, Plaintiff King Fung Poon's total losses from investing in CTR Tokens are 100 ETH.

- Plaintiff Lee purchased 6,000 CTR Tokens in exchange for 30 ETH. (ECF No. 260-4 at ¶ 5.) Accordingly, Plaintiff Lee's total losses from investing in CTR Tokens are 30 ETH. (Id. ¶ 6.)

- Plaintiff Ganczarek purchased 8,204.99 CTR Tokens in exchange for 40 ETH and 0.026111 BTC. (ECF No. 260-5 at ¶ 5.) Accordingly, Plaintiff Ganczarek's total losses from investing in CTR Tokens are 40 ETH and 0.026111 BTC. (Id. ¶ 7.)

- Plaintiff Warren purchased 39,528 CTR Tokens in exchange for 1.75796768 BTC. (ECF No. 260-6 at ¶ 4.) Accordingly, Plaintiff Warren's total losses from investing in CTR Tokens are 1.75796768 BTC. (Id. ¶ 6.).

***The grand total of Plaintiffs' Final Judgments added together is three million, four hundred and thirteen thousand, nine hundred and one dollars and sixty-eight cents ($3,413,901.68) (the "Total Judgment Figure")***. *Id.* at ECF No. 308.

20.    On March 24, 2020, Plaintiffs filed a motion for entries of Form AO 450s setting forth final judgment of Plaintiffs against Defendant Centra Tech. Civil Action, ECF No. 293. This motion was granted on June 5, 2020. *Id*. at ECF No. 299. Accordingly, on June 8, 2020, judgment was entered on Form AO 450s (the "AO 450s") for each individual Claimant against Centra Tech. *Id*. at ECF Nos. 300-06 (the "Final Judgments"). The AO 450s set the following as Final Judgments against Centra Tech:

- Plaintiff Jacob Zowie Thomas Rensel: "the amount of four hundred and seven dollars and seventy-nine cents ($407.79), which includes prejudgment interest at the rate of 6.89% per annum beginning on July 23, 2017 through December 13, 2019, plus post judgment interest at the rate of 1.57% per annum, computed daily to the date of payment and compounded annually, along with costs." *Id.* at ECF No. 300.

- Plaintiff Wang Yun He: "the amount of three million, one hundred and thirteen thousand, three hundred and thirty-fixe dollars and forty-nine cents ($3,113,335.49), which includes prejudgment interest at the rate of 6.89% per annum beginning on July 23, 2017 through December 13, 2019, plus post judgment interest at the rate of 1.57% per annum, computed daily to the date of payment and compounded annually, along with costs." *Id.* at ECF No. 301.

- Plaintiff Chi Hao Poon: "the amount of one hundred and twenty-nine thousand, six hundred and seventy-seven dollars and eighty-seven cents ($129,677.87), which includes prejudgment interest at the rate of 6.89% per annum beginning on July 23, 2017 through December 13, 2019, plus post judgment interest at the rate of 1.57% per annum, computed daily to the date of payment and compounded annually, along with costs." *Id.* at ECF No. 302.

- Plaintiff King Hung Poon: "the amount of eighty-one thousand forty-eight dollars and sixty-seven cents ($81,048.67), which includes prejudgment interest at the rate of 6.89% per annum beginning on July 23, 2017 through December 13, 2019, plus post judgment interest at the rate of 1.57% per annum, computed daily to the date of payment and compounded annually, along with costs." *Id.* at ECF No. 303.

- Plaintiff Jae J. Lee: "the amount of twenty-four thousand, three hundred fourteen dollars and sixty cents ($24,314.60), which includes prejudgment interest at the rate of 6.89% per annum beginning on July 23, 2017 through December 13, 2019, plus post judgment interest at the rate of 1.57% per annum, computed daily to the date of payment and compounded annually, along with costs." *Id.* at ECF No. 304.

- Plaintiff Mateusz Ganzarek: "the amount of thirty-two thousand, nine hundred twenty-three dollars and twenty-four cents ($32,923.24), which includes prejudgment interest at the rate of 6.89% per annum beginning on July 23, 2017 through December 13, 2019, plus post judgment interest at the rate of 1.57% per annum, computed daily to the date of payment and compounded annually, along with costs." *Id.* at ECF No. 305.

- Plaintiff Rodney Warren: "the amount of thirty-nine thousand, one hundred ninety-four dollars and three cents ($39,194.02) [sic], which includes prejudgment interest at the rate of 6.89% per annum beginning on July 23, 2017 through December 13, 2019, plus post judgment interest at the rate of 1.57% per annum, computed daily to the date of payment and compounded annually, along with costs." *Id.* at ECF No. 306.

21.    On June 8, 2020, Plaintiffs' counsel contacted the government attorneys in this Action to inform them that the Claimants had secured certified final judgments against Centra Tech in their favor, and requested a meet-and-confer to discuss Plaintiffs' request that the government to utilize the "quick release" mechanisms available under 28 C.F.R. § 8.7 to release an amount of ETH from the Victim Funds necessary to satisfy the final judgments obtained by

Plaintiffs.  On July 6, 2020, counsel for Claimants and the DOJ held a telephonic conference to discuss Plaintiffs' request.  During that conference, the DOJ declined Plaintiffs' request for the DOJ to exercise its discretion to utilize the "quick release" to satisfy Plaintiffs' final judgments against Centra Tech.

22.     On July 21, 2020, Plaintiffs filed their Motion for a Writ of Execution against Centra Tech (the "Florida Writs of Execution"). *Id.* On July 22, 2020, the Florida Writs of Execution were issued. Civil Action, ECF No. 309.

23.     Concurrently with obtaining the Florida Writs of Execution, Plaintiffs also sought writs of execution for enforcement of their Final Judgments in New York (the "New York Writs of Execution"). The New York Writs of Execution were issued by the Southern District of New York on August 8th, 2020, against the U.S. Attorney's Office for the Southern District of New York.[5]

24.     On November 19, 2020, the United States posted their notice of their intent to complete the forfeiture process for the "100,000 Ether units that the Federal Bureau of Investigation (the "FBI") seized in 2018 from the Defendant's digital Ether wallet." *See* Notice of Forfeiture, S3 18 CR. 340. The Notice of Forfeiture provided for sixty (60) days to file a petition in response. Claimants filed a timely petition asserting their interest in the seized Ether.

## I.     CLAIMANTS HAVE A SUPERIOR INTEREST IN SEIZED ETHER

25.     The government has repeatedly and correctly observed that Centra Tech, Sharma, Trapani, and Farkas "engaged in a scheme to induce victims to invest digital funds worth millions of dollars for the purchase of unregistered securities."  **Exhibit 2**, 9,000 ETH Seizure Affidavit, at

---

[5] *See* **Exhibit 7**; Case Nos. 1:20-mc-00232; 1:20-mc-00267; 1:20-mc-00268; 1:20-mc-00269; 1:20-mc-00272; 1:20-mc-00273; 1:20-mc-00274.

¶ 10-b.  Claimants here are those victims.  They invested millions of dollars' worth of digital funds to purchase unregistered CTR securities, and it is those digital funds that are sitting in the Seizure Wallet seized from Centra Tech by the FBI.

A.   **Claimants' Judgment Liens Demonstrate a Legal Interest in the Specific Seized Ether**

26.   As noted *supra*, the New York Writs of Execution were issued by the Southern District of New York on August 8th, 2020, against the U.S. Attorney's Office for the Southern District of New York.[6]  Each of the New York Writs of Execution directed the Marshal of the Southern District to collect on the final judgments using the:

> "goods and chattels of Centra Tech, Inc., held in the possession of The Department of Justice, Southern District of New York, accessible at Ethereum Wallet Nos.: 0xc8E0C9ba619f64c948B065a70f4085FDBAf9316D and 0x7f98B3890b57992Ba0A328698E0920921332F32C; and including those goods and chattels of Centra Tech, Inc. seized in connection with the criminal prosecution, USA v. Sharma, et al., Case No. 1:18-00340"

*Id.*

27.   On September 2, 2020, Plaintiffs delivered the New York Writs of Execution to the United States Marshal Service of the Southern District of New York.  *See* **Exhibit 8 [**email to the USMS attaching the Writs]. Accordingly, **a judgment lien was created against the Seized ETH on September 2, 2020**. *See, e.g.*, *U.S. S.E.C. v. Universal Exp., Inc.*, No. 04 CIV. 2322 (GEL), 2008 WL 1944803, at *5 (S.D.N.Y. Apr. 30, 2008) ("Under New York law, a 'judgment lien is created when a writ of execution is delivered to the sheriff.'") (quoting *Mongelli v. Mongelli,* 849 F.Supp. 215, 219 (S.D.N.Y.1994)); *see also* N.Y. C.P.L.R. 5202 (McKinney): Practice Commentaries, Richard C. Kelly, C5202:2. Execution Creditor Versus Transferee ("It should be noted that CPLR 5202 speaks only of delivering the execution to a "sheriff." If one of the lower

---

[6] *See* **Exhibits 7**; Case Nos. 1:20-mc-00232; 1:20-mc-00267; 1:20-mc-00268; 1:20-mc-00269; 1:20-mc-00272; 1:20-mc-00273; 1:20-mc-00274.

courts is involved, however, and its enforcement officers are marshals or constables, delivery to one of them is the equivalent of delivery to a sheriff. See § 701(b) in the New York City Civil Court Act and in the Uniform District, City and Justice court acts, McKinney's Vol. 29A, Parts 2 and 3.").

28.     Accordingly, because the New York Writs of Execution identify the specific Seized ETH, and were served on the U.S. Marshal Service on September 2, 2020, Claimants have demonstrated a "lien against specifically-identified property" (ECF No. 468, at 12) and thus, have standing to contest the government's forfeiture.

29.     After delays related to the COVID-19 pandemic, in which the U.S Marshals Service for the Southern District of New York could not and would not effect personal service for an indefinite period of time, the New York Writs of Execution were personally served on the United States Attorney's Office for the Southern District of New York on November 23, 2020

**B      Claimants Rensel,  He, Hao Poon, Fung Poon, Lee, and Ganczarek's Interest in the Seized ETH is Demonstrated as their Ethereum Investments are Directly Traceable to the Seized Ether**

30.     Where Claimants and other victims invested Ether in the Centra Tech ICO, they did so by sending Ether from their own wallets to Centra Tech smart contract wallets.  The vast majority of this Ether was then transferred through wallets controlled by Centra Tech, before ultimately being placed in the wallet seized by the FBI.  These transactions are recorded on the Ethereum blockchain and can be viewed by anyone.  There is thus a clear, permanent record, showing the flow of Ether from each Claimant to the Seizure Wallet.

31.     Between September 21, 2017 and September 24, 2017, Claimant He invested a total of 511.35 Ether in the Centra ICO by sending seven separate Ether transactions from his Ethereum Wallet to the widely publicized Centra smart contract[7] address. *See* Civil Action, ECF No. 263-3.

32.     Claimant Rensel invested 16.1 Ether in the Centra ICO by sending it from his Ethereum Wallet to the Centra Smart Contract on July 30, 2017. *See* Civil Action, ECF No. 263-2).

33.     Between September 11, 2017 and September 16, 2017, Claimant Ganczarek invested a total of 40 Ether in the Centra ICO by sending two separate Ether transactions from his Ethereum Wallet to the widely publicized Centra White List address. *See* Civil Action, ECF No. 263-5).

34.     Claimant Lee invested 30 Ether in the Centra ICO by sending it from his Ethereum Wallet to the Centra White List on September 16, 2017. *See* Civil Action, ECF No. 263-4.

35.     Between August 17, 2017 and September 15, 2017, Claimant Hao Poon invested a total of 160 Ether in the Centra ICO by sending two Ether transaction from his Ethereum Wallet to the widely publicized Centra White List address and a separate Ether transaction to the Centra Smart Contract. *See* Civil Action, ECF Nos. 239-8, 239-10.

36.     Claimant Fung Poon invested 100 Ether in the Centra ICO by sending it from his Ethereum Wallet to the Centra Smart Contract on August 25, 2017. *See* Civil Action, ECF Nos. 239-8, 239-9.

37.     Claimants' Ether investments are summarized in the chart below:

| Claimant | Date | Ether | Sent to |
|---|---|---|---|
| He | | | Centra Smart Contract; TX ID: |
| | 9/21/2017 | 13.97 | 0xd59e3cf1d7f3aea472abd411aad2a5c8420e6228faa2da95f3517c079771b29c |

---

[7] The government and FBI Special Agent Brandon S. Racz have referred to this wallet as the Centra Sale Wallet.

| | | | |
|---|---|---|---|
| | 9/24/2017 | 75.7 | Centra Smart Contract; TX ID:<br>0xa7d7afc69922503ff686a3e3f895fb149652fd5ccbb347e79ac70d4276ac88f9 |
| | 9/24/2017 | 76.9 | Centra Smart Contract; TX ID:<br>0x7916fde3b74afc346c3a59cbef76bc368d42a8da155a765d791a54539b9b36f6 |
| | 9/24/2017 | 34.91 | Centra Smart Contract; TX ID:<br>0xf01deeb32f3abac0538c20fdd33a1f99492ac5362a6f775d442c907b5ffb510b |
| | 9/24/2017 | 96.51 | Centra Smart Contract; TX ID:<br>0xfd9b9d87624c5349540722a721f4af82d927071051c95f0ad2611fdbb573bcea |
| | 9/24/2017 | 91.18 | Centra Smart Contract; TX ID:<br>0x69c5aa45fd3916643ade84bac41801cbd046a60719a9b41c3feb48579c2d8837 |
| | 9/24/2017 | 122.18 | Centra Smart Contract; TX ID:<br>0x7ac891a6298217d6eb1ff3aabaecc44cba7807efc34a3abc29143df2ccd39772 |
| **Rensel** | | | Centra Smart Contract; TX ID:<br>0x4b378f788fc8ae583bc8dc3523dc99d65dcda11594de7d2c771279e7dfea546c;<br>0x54e5b1c1282048456 9f7413f1633400c868ba3d5dd77830ec1a10be38750d54d |
| | 7/30/2017 | 16.1 | |
| **Ganczarek** | 9/11/2017 | 25 | Centra White List; TX ID:<br>0x004f7c6b2cf9d72cbab0d8c1099220e5aab229918a0b7667f7087ba9f255ae48 |
| | 9/16/2017 | 15 | Centra White List; TX ID:<br>0xcd3bb3fcbd245907cdf1cde2700465bbee9beb47c814a9821832b0059527d392 |
| **Lee** | 9/16/2017 | 30 | Centra White List; TX ID:<br>0x87a6f86583dd3d934b8840bc05836220fa04daf954dce3c0f7e56881c0a07102 |
| **Hao Poon** | 8/17/2017 | 100 | Centra Smart Contract; TX ID:<br>0x133087ecf073ecfc4ab6c6b293fd6993575d202d1c8db8a1b06c85cb6f733973 |
| | 9/15/2017 | 60 | Centra White List; TX ID<br>0xdf88b3244d4d9820c3555873cca388de93e77ba7edf84b25cbdba8a3d56e2731 |
| **Fung Poon** | 8/25/2017 | 100 | Centra Smart Contract<br>0xe0be84dfe619e02ad91dede5dc38976c6ade65dbefa8e4ce01a835d3e39431e9 |

1. **Flow of Claimants' Contributions to the Centra Token Owner Wallet, Centra Routing Wallet 6, and Centra Routing Wallet 5**

38.   As FBI Special Agent Brandon S. Racz observed, the Centra Smart Contract, the Centra White List Wallet, and the Centra Token Wallet "forwarded virtually all of the Ether that they received during Centra Tech's ICO to the Centra Token Owner Wallet," and that "most of the Ether in the Centra Token Owner Wallet was forwarded, through the Centra Routing Wallets, to the Seizure Wallet." **Exhibit 2**, 9,000 ETH Seizure Affidavit, at ¶ 22(c).   The Centra Token Owner Wallet has the address of 0x387792f7d2AA6e7Fa1312261cF36F5F6f6b97c00.  The funds in the Seizure Wallet are thus directly traceable to Claimants' investments in the Centra Tech ICO through Ether contributions to the Centra Smart Contract and Centra White List smart contracts.

39.   The Ethereum blockchain demonstrates that all of the ETH Claimants contributed to the Centra Tech ICO though the **Centra Sale**

(0xbdb45d02d8ef8dc5e59aa58b26b99a4af3806baa) and **Centra White List** (0x5d268508179db4da44de9057792758bff280e3ed) smart contracts was forwarded to the **Centra Token Owner Wallet** (0x387792f7d2aa6e7fa1312261cf36f5f6f6b97c00).

40. Specifically, the Ethereum blockchain shows that all of the ETH received by the **Centra Sale** (0xbdb45d02d8ef8dc5e59aa58b26b99a4af3806baa) smart contract was sent to the **Centra Token Owner Wallet** (0x387792f7d2aa6e7fa1312261cf36f5f6f6b97c00):



https://explorer.bitquery.io/ethereum/smart_contract/0xbdb45d02d8ef8dc5e59aa58b26b99a4af3806baa/graph.

41. Similarly, nearly all ETH received by the **Centra White List** (0x5d268508179db4da44de9057792758bff280e3ed) smart contract was also sent to the **Centra Token Wallet** (0x387792f7d2aa6e7fa1312261cf36f5f6f6b97c00):



https://explorer.bitquery.io/ethereum/smart_contract/0x5d268508179db4da44de9057792758bff2
80e3ed/graph

> **2.      Flow of Claimants' Contributions From Centra Routing Wallet 5 to the Seizure Wallet**

42.      After being transferred to the Centra Token Owner Wallet, the vast majority of ETH was subsequently transferred to **Centra Routing Wallet 6** (0x38874083663d11c952a7812acaf689bc3595588c), which in turn forwarded 90,000 Ether to **Centra Routing Wallet 5** (0x0e730c2731c875e4542c0da2425f5119175ff6d0) on September 27, 2020:



https://explorer.bitquery.io/ethereum/address/0x38874083663d11c952a7812acaf689bc3595588c/graph

43.      In addition to the 90,000 ETH which Centra Tech moved from the Centra Token Owner Wallet to **Centra Routing Wallet 6** (0x38874083663d11c952a7812acaf689bc3595588c), it also transferred 3,952 ETH to **Centra Routing Wallet 7** (0x332627ca1b5cfc9503c76910158a7b6aa1cac7da), 855 ETH to **Centra Routing Wallet 4**

(0x55107767b83a18b15258bfaf12ecb0dbe468dbe5), and approximately 1,456.9 ETH to other addresses.

44.     On     October     8,     2017,     **Routing     Wallet     5** (0x0e730c2731c875e4542c0da2425f5119175ff6d0) transferred 10,000 ETH to **Routing Wallet 4** (0x55107767b83a18b15258bfaf12ecb0dbe468dbe5), and 90,000 ETH to **Centra Routing Wallet 3** (0x71e5a90eda0834bd0aaaae51314929bfd1ea4294):



https://explorer.bitquery.io/ethereum/address/0x0e730c2731c875e4542c0da2425f5119175ff6d0/graph.

45.    On    October    10,    2017,    **Routing    Wallet    3**
(0x71e5a90eda0834bd0aaaae51314929bfd1ea4294) transferred 14,999 ETH to **Routing Wallet 4**
(0x55107767b83a18b15258bfaf12ecb0dbe468dbe5):



https://explorer.bitquery.io/ethereum/address/0x71e5a90eda0834bd0aaaae51314929bfd1ea4294/
graph.

46.    **Centra Routing Wallet 3** transferred the remaining 75,000 ETH to **Routing Wallet 2** (0x2fa49bd15512aa4a549b4ddb2181ca7edeab14b4):



https://explorer.bitquery.io/ethereum/address/0x71e5a90eda0834bd0aaaae51314929bfd1ea4294/graph.

47.   Shortly   thereafter,   **Centra   Routing   Wallet   4** (0x55107767b83a18b15258bfaf12ecb0dbe468dbe5) transferred 27,000 ETH also to **Centra Routing Wallet 2** (0x2fa49bd15512aa4a549b4ddb2181ca7edeab14b4):



https://explorer.bitquery.io/ethereum/address/0x2fa49bd15512aa4a549b4ddb2181ca7edeab14b4/
graph.

48.    The flow of the 100,000 ETH, including Claimants' ETH, is directly traceable from

**Centra Routing Wallet 2** (0x2fa49bd15512aa4a549b4ddb2181ca7edeab14b4) to the **Seizure**

**Wallet** (0xdA6F983076725cB2899205A16E16d1ed60a0067A):



https://explorer.bitquery.io/ethereum/address/0x2fa49bd15512aa4a549b4ddb2181ca7edeab14b4/
graph.

### 3. Claimant He's Bitcoin Investments

49.     Where investors contributed Bitcoin or other cryptocurrencies, Centra Tech "converted them into Ethereum, and sent the Ethereum to the smart contract. The result was that (1) the contributor received Centra Tokens, and (2) Centra Tech received Ethereum. All such Ethereum now resides in the ICO Wallet." Civil Action, ECF No. 63 at 3, n. 3 (Defendants' Response to Plaintiff's Renewed Motion for a Temporary Restraining Order). It thus does not matter whether a Claimants or other Centra Tech victim invested in the ICO using Ethereum, Bitcoin, or another cryptocurrency. Regardless of the method of contribution, those funds ultimately ended up in the Seizure Wallet.

50.     Claimant He invested 150 Bitcoin in the Centra Tech ICO, by sending 50 Bitcoin on September 26, 2017, 50 additional Bitcoin on September 28, 2017, and a final 50 Bitcoin transaction on October 1, 2017. On the very next day, Sharma texted Trapani saying "Moved over 2500 [Ether] from that dude [REDACTED]." **Exhibit 2**, 9,000 ETH Seizure Affidavit, at ¶ 22(e). And FBI Special Agent Brandon S. Racz stated that on or about that same date "approximately 2,500 Ether units were transferred from Centra Routing Wallet 4 to the Centra Routing Wallet 5." *Id.* at ¶ 22(h). Agent Racz continued, stating "there is evidence described below establishing probable cause to believe that the remaining 9,000 Ether units in the Seizure Wallet are traceable, in whole or substantial part, to transactions in which Centra Tech raised 7,500 Ether units from Bitsset and 2,500 Ether units from an investor referred to by Sharma as [REDACTED] in exchange for Centra tokens during the ICO Period, and both of these transactions are not included in the 91,000-Ether-unit-figure that Centra Tech has claimed represents the total of all the funds raised through its ICO." *Id.* at ¶ 18.

51.     As 150 Bitcoin were worth approximately 2,500 Ether in October 2017, it is overwhelmingly likely that the unnamed victim investor is Claimant He. In short, not only are the

funds in the Seizure Wallet directly traceable to Claimants, but the government has long known this to be so.

## II.   CLAIMANTS ARE ENTITLED TO THE RETURN OF THE THEIR ETHER IN THE SEIZURE WALLET

52.     Petitioners can prove superiority of their claims and entitlement to relief on the merits "by establishing, through a preponderance of the evidence, one of two superior claims to the property under § 853(n)(6)." *U.S. v. Watts*, 786 F.3d 152, 160 (2nd Cir. 2015).[8]  The Claimant must demonstrate that he has "a legal right, title, or interest in the property, … that was vested in the [Claimant] rather than the defendant or was superior to any right, title or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property." 21 U.S.C. § 853(n)(6)(A); *Watts*, 786 F.3d 152, 160 (2nd Cir. 2015).   Thus Claimants are entitled to relief if they can show either a superior vested interest or superiority in time under §853(n)(6).  *Watts*, 786 F.3d 152, 160 (2nd Cir. 2015).  Here, Claimants can show superiority in both.[9]

53.     Claimants can show that Claimants' right, title or interest was vested in the Claimants rather than the defendant because Defendant Sharma never had any legitimate

---

[8] Congress carved out this exception to 21 U.S.C. § 853(n) "to protect the rights of certain innocent third parties." *U.S. v. Huntington Nat. Bank*, 682 F.3d 429, 433 (6th Cir. 2012).

[9] Forfeiture laws are based strongly in policy that cuts sharply against the Government's attempted misallocation of Claimants' property. "The court understands that the purpose of 21 U.S.C. Section 853(c), vesting in the United States title to forfeited property, is not to divest innocent persons of their legitimate interests in property." *U.S. v. Tanner*,  853 F.Supp. 190, 197 (W.D. Va. 1994). Here, the Government's attempt to divest innocent Claimants of their legitimate interests in their own property does just that. Moreover, "[t]he government steps into the shoes of the defendant acquiring only the rights of the defendant at the time of the criminal acts, and nothing more." *Huntington Nat. Bank*, 682 F.3d 429 at 433.  The Government's attempt to forfeit Claimants' property that is not vested in Defendant Sharma, and that Defendant Sharma has no superior interest to, would afford Criminal Defendant Sharma rights far greater than what he actually possesses.

ownership interest in Centra Tech's Ether, and thus the interest in the Ether was vested solely in Claimants. Moreover, Claimants can show their right, title or interes was superior to any right, title, or interest of the defendant "at the time of the commission of the acts which gave rise to the forfeiture of the property," because if Defendant Sharma had any interest in Claimants' cryptocurrencies—and he does not—Sharma's interest would have vested *after* Claimants still maintained possession of their cryptocurrencies and thus Claimants' right, title, or interest was superior in time to Defendant's.

## III. Sharma Does Not Have Any Vested Interest in the Seized Ether Because The Victim Funds Were Seized From Centra Tech, Inc., Not Defendant Sharma

54.     The government has repeatedly referred to the 100,000 ETH seized from Centra Tech as the "Centra Tech victim investor funds." *See* **Exhibit 2**, 9,000 ETH Seizure Affidavit, at 6; 11 ("the Government reported that efforts by the FBI to access the Seizure Wallet containing 100,000 Ether units (including at least 91,000 Ether units of **victim-investor funds**, which was then worth approximately $55 million) using the purported passcode obtained from Centra Tech had failed . . ."). As demonstrated *supra*, a portion of the 100,000 Ether seized by the government can be directly traced to Claimants' contributions to the Centra Tech ICO.

55.     Claimants have standing to challenge the nexus of their forfeited Ether in a § 853 ancillary hearing and can show that the legal right, title, or interest in the property was vested in the [Claimant] rather than the defendant Sharma.

### A. Claimants Have Standing to Challenge the Nexus of Their Forfeited Property in a § 853 Ancillary Hearing Under the Due Process Clause

56.     As an initial matter, the Second Circuit recognizes Claimants' standing to assert that third parties are entitled to property they claim is theirs, and are not "bound by a determination that the property belonged to someone else, when that determination was made in a separate

24

proceeding in which [they were] not permitted to participate," because such a restriction violates the Due Process Clause. *United States v. Daugerdas*, 2020 WL 364601 at *2-3 (S.D.N.Y. Jan. 22, 2020) (abrogating *Daugerdas*, 2017 WL 1052592 (S.D.N.Y. Mar. 20, 2017) and denying the Government's motion to dismiss Petitioners' claims because "[u]nder 21 U.S.C. § 853(n), any third party 'asserting a legal interest in property which has been ordered forfeited to the United States' may 'petition the court for a hearing to adjudicate the validity of his alleged interest in the property.'").

57.    The Second Circuit also agrees with the Fourth Circuit's "broader view of legal interests" in finding that "the term 'legal interest in § 853(n)(2) encompasses all legally protected rights, claims, titles, or shares in real or personal property." *U.S. v. Schwimmer*, 968 F.2d 1570, 1582 (2nd Cir. 1992) (citing *Reckmeyer*, 836 F.2d 200 (4th Cir. 1987). Following this view, federal courts have thus recognized "the right of third party claimants to challenge the validity of a preliminary forfeiture order in a subsequent ancillary proceeding" under § 853(n). *U.S. v. Bailey*, 926 F.Supp.2d 739, 763 (W.D.N.C. 2013) (citing *Reckmeyer*, 836 F.2d at 206 ("Serious due process questions would be raised, however, if third parties asserting an interest in forfeited assets were barred from challenging the validity of the forfeiture. The determination made at the defendant's criminal trial that the property was subject to forfeiture cannot be considered binding on persons who were not only not parties to the criminal action but were specifically barred from intervening."); *see also U.S. v. Erpenbeck*, 682 F.3d 472,475 (6th Cir. 2012) ("To obtain title to property through criminal forfeiture, the government ***must give third parties a chance to assert competing interests in the property***… If anyone files a petition, the court must hold an ancillary hearing to determine the bona fides of his alleged interest.). "[T]he relation-back doctrine does not preclude the Petitioners from asserting a legal interest in the forfeited properties, and to find

otherwise would produce an absurd result." *Bailey*, 926 F.Supp.2d at 760.  Thus several federal courts, including the 2nd Circuit, permit third parties to challenge the nexus of forfeited funds in a § 853 ancillary proceeding.

> **B.** **The Government Has No Vested Interest in the Claimants' Ether Because the Ether's Nexus is to Centra Tech—Not to Defendant Sharma**

58.    Where "[t]he preliminary determination of nexus is made independently of any interests alleged by third parties, "such third-party interests become "appropriate for adjudication only in ancillary proceedings pursuant to Federal Rule of Criminal Procedure 32(c)."  *See* Fed.R.Crim.P. 32.2(b)(1)(A); *Bailey*, 926 F.Supp.2d at 761.  In order for the Government to forfeit a third party's funds, it must show "that the Defendant actually obtained ***or retained any beneficial interest in the funds as a result of such fraudulent conduct***." *Id*. at 765 (emphasis added). "While the Government may pursue forfeiture of a third party's assets, such forfeiture is still limited only to property in which the *defendant* truly retains an interest." *Id*. at 771.  Here, the Government cannot show it obtained any beneficial interest in the funds as a result of Defendant Sharma's criminal conduct, because Centra Tech—***not Sharma***—retained the funds, and thus Claimants retained their superior vested interest.

59.    Claimants' superior interest in the seized ETH is underscored by the fact that the Government is only seeking forfeiture of Defendant Sharma's "right, title and interest" in the 100,000 ETH.  That is, the government is not seeking forfeiture of the 100,000 ETH as "specific property," but only: (1) a "money judgment" in the amount of $36,088,960; and (2) "Defendant's right, title and interest in the Ether Sale Proceeds." ECF No. 411 at 4. Even the "USAO Official Notification" is explicit in stating that the government seeks forfeiture of: "***All right, title, and interest of the Defendant*** in 100,000 Ether units", and makes no reference whatsoever to the ETH having been seized from Sharma:

**USAO OFFICIAL NOTIFICATION POSTED ON DECEMBER 02, 2020**

UNITED STATES DISTRICT COURT  FOR THE SOUTHERN DISTRICT OF NEW YORK  COURT CASE NUMBER: S3 18 CR. 340 (LGS); NOTICE OF FORFEITURE

Notice is hereby given that on November 11, 2020, in the case of U.S. v. Sohrab Sharma, Court Case Number S3 18 CR. 340 (LGS), the United States District Court for the Southern District of New York entered an Order condemning and forfeiting the following property to the United States of America:

All right, title, and interest of the Defendant in 100,000 Ether units that the Federal Bureau of Investigation (the "FBI")seized in 2018 from the Defendant's digital Ether wallet with the public wallet address of "0xdA6F983076725cB2899205A16E16dled60a0067A" pursuant to judicially authorized seizure warrants, to wit;

91,000 Ether units, seized on or about May 2, 2018 (18-FBI-003561); and

9,000 Ether units , seized on or about October 22, 2018 (19-FBI-000184)

60.     If Sharma had actual ownership of the 100,000 ETH, the government would seek

forfeiture of the ETH itself, as is its practice. For instance:

**USAO OFFICIAL NOTIFICATION POSTED ON MARCH 12, 2021**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**
**COURT CASE NUMBER: 2:19-CR-20246; NOTICE OF FORFEITURE**

Notice is hereby given that on February 18, 2021, in the case of U.S. v. Colton Jurisic, Court Case Number 2:19-CR-20246, the United States District Court for the Eastern District of Michigan entered an Order condemning and forfeiting the following property to the United States of America:

One Hundred Fifty (150) Bitcoin (19-ICE-001213) which was seized from Colton Jurisic on May 09, 2019 at 2552 Washington St., located in Dubuque, IA

Nineteen thousand, sixty dollars ($19,060) U.S. Currency (19-ICE-001214) which was seized from Colton Jurisic on May 09, 2019 at 2552 Washington St., located in Dubuque, IA

0.5040000000 of Cardano virtual currency from Binance Account Acct# 10059392 (19-ICE-002476) which was seized from Colton Jurisic on May 09, 2019 at 2552 Washington St., located in Dubuque, IA

305094.1710000000 of Basic Attention Token virtual currency from Binance Account Acct# 10059392 (19-ICE-002477) which was seized from Colton Jurisic on May 09, 2019 at 2552 Washington St., located in Dubuque, IA

*See also*  https://www.forfeiture.gov/pdf/USAO/OfficialNotification.pdf (Official Notices of Forfeiture from the USAO, ***all 1,000+ of which seek forfeiture of actual specific property, not merely a defendant's "interest" in such property***).

61.    The reason for seeking a money judgment rather than the seizure of the 100,000 ETH itself (or the proceeds therefrom) is clear—because the 100,000 ETH does not belong to Sharma, it belongs to Centra Tech, Inc., a Delaware corporation. *See* ECF No 127-1 (Delaware state corporate records showing that Centra Tech was incorporated on July 27, 2017). "The only determination that must be made when the government seeks a money judgment is the amount that the defendant will be ordered to pay." *United States v. Kenner*, 443 F. Supp. 3d 354, 362 (E.D.N.Y. 2020). In other words, obtaining a money judgment against Sharma does not provide the government with the *right* to forfeit specific property belonging to Centra Tech, Inc. *See United States v. Farkas*, 2016 WL 10585041 at *2 (E.D. Va. Oct. 3, 2016) ("[T]he forfeiture authority extends only to *defendant's property* . . . It is a fundamental principle of corporate law that 'the corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its legal status.'"); *id.* (holding that the "Court's forfeiture order authorizing the government to seize *defendant's property* cannot be satisfied by the assets" of the company."). As the Second Circuit has long held, criminal forfeiture is an *in personam* proceeding:

> The Senate Report explains why ***some third-party interests might invalidate an order of forfeiture***. If the Order requires that property be forfeited to the Government, and that property actually belongs to a third party, then, the Report contends, the Court is ordering the forfeiture of property over which it lacks jurisdiction and the order is therefore invalid:
>
>> **Criminal forfeiture is an *in personam* proceeding. Thus, an order of forfeiture may reach only property of the defendant,** save in those instances where a transfer to a third party is voidable. Thus, **if a third party can demonstrate that his interest in the forfeited property is exclusive of or superior to the interest of the defendant, the third party's claim renders that portion of the order of forfeiture reaching his interests invalid**. The Committee strongly agrees with the Department of Justice that such third parties are entitled to judicial resolution of their claims.

S.Rep. No. 225, 98th Cong., 2nd Sess., *reprinted in* 1984 U.S.Code Cong., & Admin.News 3182, 3391. *See also,* Hearings Before the Subcommittee on Crime of Committee on the Judiciary, House of Representatives, 98th Cong., 1st Sess. On H.R. 3272, H.R. 3299, and H.R. 3725, Comprehensive Drug Penalty Act, 4–16, 15 (1983) (testimony of James Knapp, Deputy Assistant Attorney General, Criminal Division, suggesting judicial resolution appropriate for third parties whose interests are "by their very nature inconsistent with the order of forfeiture"). **An order of forfeiture pursuant to a settlement agreement is equally vulnerable to invalidation by third-party interests, because a defendant's consent to forfeit property does not expand the Court's power over that property, if the property is not the defendant's own**.

*United States v. Schwimmer*, 968 F.2d 1570, 1580–81 (2d Cir. 1992) (emphasis added).

62.     Here, it is indisputable that Centra Tech, Inc, not Sharma owned the 100,000 ETH at all relevant times. As FBI Agent Kristin Allain's affidavit in support of the government's request for a warrant of seizure as to 91,000 of that ETH (**Exhibit 1**) explained:

(i)     "During **Centra Tech's offering of Centra Tech tokens to members** of the public during the period from approximately July 2017 through October 2017, **purchasers of Centra Tech tokens provided funds in the form of digital currency** (specifically, approximately 91,000 units in exchange a digital currency known as 'Ether') in exchange for Centra Tech tokens (namely, the Subject Property)."

(ii)    on November 29, 2017, after being informed of the SEC's investigation, "***Centra Tech transferred all of the digital assets*** in that digital wallet, including the [91,000 ETH], to a different digital wallet with its own unique passcode [the Seizure Wallet]." *Id.* ¶8.b.ii (emphasis added); and

(iii)   the FBI's goal as: "to transfer the Subject Property [91,000 ETH] **from the Digital Wallet set up by Centra Tech** to a secure digital wallet maintained by the FBI." *Id.* ¶9.

63.     Similarly, in seeking seizure of the 9,000 ETH, Special Agent Racz asserted (**Exhibit 2,** 9,000 ETH Seizure Affidavit, ¶ 9): "For the reasons described below, there is probable cause to believe that: (a) millions of dollars' worth of funds raised from victims based on the fraudulent scheme charged in the Criminal Complaint ***have been placed by Centra Tech in a digital wallet*** that can only be accessed with a unique passcode; . . ."). This reality is further evidenced by the following:

- After obtaining the 91,000 ETH Seizure Warrant, on April 13, 2018, the DOJ served the warrant ***on Centra Tech.*** *See* **Exhibit 4**, Civil Action, ECF No. 63-1 (declaration of Centra

Tech's outside counsel in support of the Centra Defendants' response to the TRO Application), at ¶6.

- During Sharma's May 11, 2018 bail hearing, the following exchange took place between the Court and Sharma's counsel:

> THE COURT: I'm going to require that defendant's assets in the digital wallet, you'll know what I mean by that? That were in the digital wallet containing the Centra Tech Fund –
>
> McCARTHY: Containing his personal funds at this point, Judge
>
> THE COURT: Containing – *so the digital wallet that had Centra Tech funds and personal funds*? *Or it had Centra Tech funds*, some of which he said he had a personal right to?
>
> McCARTHY: So there was 100 –
>
> THE COURT: *Was it in the name of Centra Tech?*
>
> McCARTHY: It was 100,000 that was held in a virtual wallet that –
>
> THE COURT: *Did it indicate whose name it was in?*
>
> McCARTHY: I think there were designations that **the company did[.]**

ECF No. 121-7, Exhibit H, at 411.

- Farkas's sentencing memorandum (ECF No. 403 at 33) argues: "On October 15, 2020, the defense learned from the government that *the Ether (ETH), a cryptocurrency, that it seized from Centra Tech* was sold for approximately $33.4 million (although it is awaiting confirmation of that figure from the U.S. Marshals)."

- Farkas' plea agreement has not been publicly filed, however, the description of that agreement contained in the government and Defendants' stipulation to sell the 100,000 ETH (a discussion which Claimants should have been a part of) describes "part of FARKAS' plea agreement" as "to take all necessary steps to pass clear title" to the 100,000 ETH –steps which would be unnecessary if Sharma, rather than Centra Tech, owned the 100,000 ETH.

- During Farkas' plea hearing (347-1 at 8), the government argued:  "The government's proof would also include the testimony of victim investors  and supporting documents that would establish, among other things, (A) *facts showing various victim investors provided funds to Centra Tech to buy digital tokens issued by Centra Tech* based on the fraudulent misrepresentations that Mr. Farkas and his coconspirators disseminated"

- Sharma's plea agreement (ECF No. 367) describes the 100,000 ETH as having been in *Centra Tech's possession*. *See id.* at 4 (discussing how Sharma caused Centra Tech to respond to the SEC's inquiries with false representations "concerning alleged measures that Centra Tech had supposedly taken to prevent the dissipation of **investor assets in *Centra Tech's possession that Centra Tech had raised from investors through fraud***").

- During Sharma's plea hearing (ECF No. 367 at 60), AUSA Samzer stated:

The ***government's proof would also include*** witness testimony, documents, and other evidence demonstrating that Mr. Sharma engaged in obstructive conduct with respect to an investigation being conducted by the United States Securities and Exchange Commission ***relating to Centra Tech and its efforts to raise funds from investors through fraud, including by causing Centra Tech*** to relay false representations to the SEC concerning alleged measures that Centra Tech had supposedly taken to prevent the dissipation of ***investor assets in Centra Tech's possession***, that ***Centra Tech***, through the efforts of Mr. Sharma and his co-conspirators, had ***raised from its investors through fraud***.

64.     While Sharma may have an ownership interest in Centra Tech that in itself does not

vest in him direct ownership rights to Centra Tech's assets. As the government itself has argued in

this proceeding, Centra Tech is a corporate entity separate and apart from any of the individual

Defendants. *See, e.g.*, ECF No. 122 ("The Court should deny the defendants' motion in its entirety.

As an initial matter, it appears that the claims on which the defendants have based their motion to

dismiss depend on the alleged mishandling of communications involving internal and external

counsel ***for the corporate entity Centra Tech*** . . . . ***No lawyers have entered an appearance in this

case on behalf of Centra Tech*** or otherwise moved to intervene.").

65.     As a Delaware general corporation, Centra Tech, Inc.'s assets are governed by its

board, not Sharma. Since October 27, 2017, Centra Tech's Board of Directors has been comprised

of Defendant Farkas and Defendant Trapani's now deceased grandfather, Hagner. *See* ECF No.

81-1 (October 27, 2017 Action of the Board of Directors of Centra Techsigned by Defendant

Sharma which removed Sharma as a Director and appointed Hagner and Defendant Farkas the sole

Directors of Centra Tech), and ECF No. 81-3 (October 27, 2017 Action of the Board of Directors

of Centra Tech signed by Defendant Sharma which removed Sharma as an Officer of the company,

and appointed Hagner as Centra Tech's President and Farkas as its "Secretary and Treasurer; with

full authority to control the Company bank accounts"); *see also* ECF No. 405 (Government's

Sentencing Memorandum as to Defendant Farkas), at 20 ("On October 27, 2017, Sharma signed

corporate resolutions: (a) removing himself from his positions as a Director and President of

Centra Tech; (b) appointing Trapani's grandfather, William Hagner, as a Director and President of Centra Tech; and (c) appointing Farkas as a director of Centra Tech with full authority to control the company bank accounts."). As argued by Defendant Sharma himself, at present, Defendant "***Farkas is the only living director of Centra Tech***," and thus "***the only individual with the ability to make corporate decisions on behalf of Centra Tech, Inc.***" ECF No. 81 (Defendant Sharma's opposition to the Government's motion to revoke bail), at 2 ("On October 27, 2017, ***Sam Sharma was removed as a director and President of Centra Tech, Inc.. so he has no legal authority to act on behalf of Centra Tech, Inc.*** as that power vests in the Board

66.     "[T]he primary remedial purposes underlying criminal forfeiture [] is to punish the defendant and to disgorge him of his ill-gotten gains." *Id*. at 764. "Section 853(o) expressly states that the statute should be construed liberally to effectuate the purpose of the statute.  Because that purpose is the punishment of the wrong-doer, it therefore follows that the statute should be construed *narrowly* when it is being interpreted in any manner that does not serve to punish the Defendant." *Id*.  "Thus, in a criminal forfeiture proceeding, the Government acquires only the *defendant's* interest in the property."  *Id*. at 765; *See also United States v. Farkas*, 2016 WL 10585041 at *2 (E.D. Va. Oct. 3, 2016) ("[T]he forfeiture authority extends only to *defendant's property*.").

67.     "It is a fundamental principle of corporate law that 'the corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its legal status.'"  *Id*. (quoting *Cedric Kushner Promotions Ltd. V. King*, 533 U.S. 158, 163 (2001).  "As a result, [a company's] assets are distinct from those of the defendant, irrespective of his ownership share." *Farkas*, 2016 WL 10585041 at *2 (holding that the "Court's forfeiture order authorizing the government to seize *defendant's property* cannot

be satisfied by the assets" of the company.).  Similarly, the Second Circuit has ruled that "[o]utside of a bankruptcy proceeding, it is generally not permissible to satisfy an *in personam* judgment against one person by seizing property owned by another."  *United States v. Daugerdas*, 892 F.3d 545, 554 (2nd Cir. 2018).

68.     Here, Claimants' superior vested interest in the seized Ether is underscored by the fact that ***Sharma does not have any interest in the ETH held in the Seizure Wallet***.  Rather, as the government has repeatedly acknowledged, the "Centra Tech victim investor funds" were held by Centra Tech, rather than any individual.  The government has previously noted that "Centra Tech raised at least 100,000 Ether units during it[s] ICO from investors who purchased Centra tokens," and that "Centra Tech transferred approximately 100,000 Ether units into the Seizure Wallet on or about November 29, 2017." **Exhibit 2**, 9,000 ETH Seizure Affidavit, ¶¶ 18, 21. While Sharma undoubtedly played a role in the Centra Tech fraud, it was ultimately to Centra Tech that Claimants sent their cryptocurrency, Centra Tech that issued the CTR tokens, Centra Tech that retained the funds of Claimants, and Centra Tech that ultimately transferred Claimants' Ether to the Seizure Wallet.

69.     The government is thus stretching the criminal forfeiture statute beyond its limits by seeking to forfeit Centra Tech's funds in this proceeding, even though the Government has not charged Centra Tech with any crime.  Since the "Centra Tech victim investor funds" were held by Centra Tech, they cannot be forfeited from Sharma.  Accordingly, the Claimants have a superior interest in this property.

## IV.     THE CLAIMANTS' INTEREST IN THE SEIZED ETHER IS SUPERIOR IN TIME TO SHARMA'S INTEREST

70.     In determining the superiority of Claimants' interests, "the Court is mindful that such an inquiry is not a precise one, but instead involves equitable considerations and is necessarily fact-bound and value laden." *Bailey*, 926 F.Supp.2d at 768.

71.     Claimants here are not merely general creditors of Centra Tech. Rather, they have a specific interest in their portion of the 100,000 Ether in the Seizure Wallet by virtue of: (i) the New York Writs of Execution which established judgment liens against the Seized ETH on September 2, 2020; (ii) the fact that the Seized ETH is directly traceable to Claimants' investments in the Centra Tech ICO [*supra* at ¶¶ 26-50 ]; or (iii) by recognition of a constructive trust (*see Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005) ("[A] constructive trust or equitable lien is imposed when, 'in the eyes of equity,' a plaintiff is 'the true owner' of funds or property, and the 'money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced back to particular funds or property in the defendant's possession'") (*quoting Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)).[10]

72.     Claimants thus have "a legal right, title, or interest in the property, and such right, title, or interest . . . was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section." 21 U.S.C. § 853.

---

[10] *See also United States v. Lesak*, No. 07 CR. 0396 (GEL), 2009 WL 1788411, at *5–6 (S.D.N.Y. June 23, 2009) ("As to whether a constructive trust can constitute a 'legal right' for purposes of § 853(n)(6)(A), the Second Circuit has determined that, despite the fact that a constructive trust is an equitable remedy, it nonetheless qualifies as a 'legal right' in property under § 853(n)(6)(A) and warrants an amendment of an order of forfeiture if the property ordered forfeited is traceable to property held in constructive trust.") (citing *United States v. Schwimmer,* 968 F.2d 1570, 1582 (2d Cir.1992)).

73.     The Government has repeatedly and correctly observed that from "at least on or about July 30, 2017 through at least in or about April 2018, Sharma, Trapani, Farkas, and Centra Tech "engaged in a scheme to induce victims to invest digital funds worth millions of dollars for the purchase of unregistered securities, in the form of digital tokens issued by Centra Tech in connection with the company's 'initial coin offering' or 'ICO,' through a series of material misrepresentations and omissions." **Exhibit 2**, 9,000 ETH Seizure Affidavit, ¶ 10-b. And Claimants were in fact induced into investing millions of dollars' worth of digital currency by those material misrepresentations and omissions. The Government has acknowledged as much, repeatedly referring to the 100,000 Ether seized from Centra Tech as the "Centra Tech victim investor funds." ECF No. 77 at 6; 11.

74.     Claimants' particular and specific interest in the Seized Ether Units is indelibly recorded on the Ethereum blockchain and verified by the Government's own repeated representations regarding the source of the funds in the Seizure Wallet.  *See supra* ¶¶ 54-69 Claimants thus have "superior title to the defendant at the time of the act giving rise to the forfeiture," Defendants' misrepresentations and omissions regarding the CTR token and the Centra Tech ICO beginning in July 2017. *United States v. Chowaiki*, 369 F.Supp. 3d 565 (S.D.N.Y. 2019). At that time, Claimants retained all the Ether and other cryptocurrencies that they would eventually contribute the Centra Tech ICO in September and October 2017, and which Centra Tech would ultimately forward to the Seizure Wallet on November 29, 2017.

75.     Claimants are thus third parties who had an interest in property before the subject crime was committed (and before the Defendant's interest vested). *United States v. Egan*, 811 F. Supp. 2d 829 (S.D.N.Y. 2011) (finding standing for petitioners where the Government seized funds from an entity which committed the crimes from which the victim suffered, where the

"petitions plausibly assert legal interests in portions of the seized funds."); *United States v.*
*Southland*, No. 5:04-CR-345 (NAM), 2006 U.S. Dist. LEXIS 20755, at *12-13 (N.D.N.Y. Apr.
18, 2006) (forfeiture petitioner was not a general creditor and had standing to bring their petition
where the asset held by the Government was the only asset which could be linked to the petitioner).

76.     Claimants are thus entitled to the return of the 3,357.45 Ether units of theirs held in
the Seizure Wallet or the functional equivalent thereof.  As of the date of this filing, the last closing
price of ETH was $1,854.56.  A payment of $6,226,592.47 would thus be necessary to effectuate
the equivalent of the return of Claimants' Ether.

| Claimant | Ether | Present Value ($1,854.56 per ETH) |
|---|---|---|
| He | 511.35 | $948,329.26 |
|  | 2,500[11] | $4,636,400 |
| Rensel | 16.1 | $29,858.42 |
| Ganczarek | 40 | $74,182.40 |
| Lee | 30 | $55,636.80 |
| Hao Poon | 160 | $296,729.60 |
| Fung Poon | 100 | $185,456 |
| Total | 3,357.45 | $6,226,592.48 |

---

[11] As noted above, Claimant He's Bitcoin investment was converted to 2,500 ETH and then
placed in the Seizure Wallet.

Dated: March 30, 2021

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Donald J. Enright*

Donald J. Enright (admitted
*pro hac vice*)
Elizabeth K. Tripodi *
**LEVI & KORSINSKY, LLP**
1101 30th Street, N.W., Suite
115
Washington, DC 20007
Telephone: (202) 524-4290
Fax: (202) 333-2121
-and-

James Taylor-Copeland *
**TAYLOR-COPELAND LAW**
james@taylorcopelandlaw.com
501 W. Broadway Suite 800
San Diego, CA 92101
(619) 400-4944

-and-

**KOMLOSSY LAW P.A.**
Emily Komlossy *
eck@komlossylaw.com
4700 Sheridan St., Suite J
Hollywood, FL 33021
Phone: (954) 842-2021
Fax: (954) 416-6223

-and-

John A. Carriel *
**ZELLE LLP**
1775 Pennsylvania Ave, NW, Suite 375
Telephone: (202) 899-4111
Facsimile: (612) 336-9100
Email: jcarriel@zelle.com

Adam M. Apton (AS-8383)
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor
New York, New York 10006
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

* to be admitted *pro hac vice*

*Attorneys for Plaintiffs-Claimants Jacob Zowie Thomas Rensel, Wang Yun He, Chi Hao Poon, King Fung Poon, Jae J. Lee, Mateusz Ganczarek, and Rodney Warren*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2021, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, along with all counsel so registered.

*/s/ Donald J. Enright*

Donald J. Enright

## <u>CLIENT-CLAIMANT SIGNATURES</u>

I hereby attest under penalty of perjury that the contents of this petition are true and accurate to the best of my knowledge, and that I have authorized the filing of this document.

<u>Jacob Zowie Thomas Rensel:</u>

DATE: 3/30/2021

SIGNATURE: _____

<u>Wang Yun He:</u>

DATE: _____

SIGNATURE: _____

<u>Chi Hao Poon</u>

DATE: _____

SIGNATURE: _____

<u>King Fung Poon:</u>

DATE: _____

SIGNATURE: _____

<u>Jae J. Lee:</u>

DATE: _____

SIGNATURE: _____

<u>Mateusz Ganczarek:</u>

DATE: _____

SIGNATURE: _____

<u>Rodney Warren:</u>

DATE: _____

SIGNATURE: _____

## CLIENT-CLAIMANT SIGNATURES

I hereby attest under penalty of perjury that the contents of this petition are true and accurate to the best of my knowledge, and that I have authorized the filing of this document.


Jacob Zowie Thomas Rensel:

DATE: _____

SIGNATURE: _____


Wang Yun He:

DATE: March 30, 2021

SIGNATURE: _Wang Yun He_


Chi Hao Poon

DATE: _____

SIGNATURE: _____


King Fung Poon:

DATE: _____

SIGNATURE: _____


Jae J. Lee:

DATE: _____

SIGNATURE: _____


Mateusz Ganczarek:

DATE: _____

SIGNATURE: _____


Rodney Warren:

DATE: _____

SIGNATURE: _____

## CLIENT-CLAIMANT SIGNATURES

I hereby attest under penalty of perjury that the contents of this petition are true and accurate to the best of my knowledge, and that I have authorized the filing of this document.

Jacob Zowie Thomas Rensel:

DATE: _____

SIGNATURE: _____

Wang Yun He:

DATE: _____

SIGNATURE: _____

Chi Hao Poon:

DATE: _2021-03-30_____

SIGNATURE: _____

King Fung Poon:

DATE: _____

SIGNATURE: _____

Jae J. Lee:

DATE: _____

SIGNATURE: _____

Mateusz Ganczarek:

DATE: _____

SIGNATURE: _____

Rodney Warren:

DATE: _____

SIGNATURE: _____

## **CLIENT-CLAIMANT SIGNATURES**

I hereby attest under penalty of perjury that the contents of this petition are true and accurate to the best of my knowledge, and that I have authorized the filing of this document.

Jacob Zowie Thomas Rensel:

DATE: _____

SIGNATURE: _____

Wang Yun He:

DATE: _____

SIGNATURE: _____

Chi Hao Poon

DATE: _____

SIGNATURE: _____

King Fung Poon:

DATE: 2021 - 03 - 30

SIGNATURE: 

Jae J. Lee:

DATE: _____

SIGNATURE: _____

Mateusz Ganczarek:

DATE: _____

SIGNATURE: _____

Rodney Warren:

DATE: _____

SIGNATURE: _____

## CLIENT-CLAIMANT SIGNATURES

I hereby attest under penalty of perjury that the contents of this petition are true and accurate to the best of my knowledge, and that I have authorized the filing of this document.


Jacob Zowie Thomas Rensel:

DATE: _____

SIGNATURE: _____


Wang Yun He:

DATE: _____

SIGNATURE: _____


Chi Hao Poon:

DATE: _____

SIGNATURE: _____


King Fung Poon:

DATE: _____

SIGNATURE: _____


Jae J. Lee:

DATE: ____3 : 30 : 21____

SIGNATURE: _____


Mateusz Ganczarek:

DATE: _____

SIGNATURE: _____


Rodney Warren:

DATE: _____

SIGNATURE: _____

## CLIENT-CLAIMANT SIGNATURES

I hereby attest under penalty of perjury that the contents of this petition are true and accurate to the best of my knowledge, and that I have authorized the filing of this document.

Jacob Zowie Thomas Rensel:

DATE: _____

SIGNATURE: _____

Wang Yun He:

DATE: _____

SIGNATURE: _____

Chi Hao Poon

DATE: _____

SIGNATURE: _____

King Fung Poon:

DATE: _____

SIGNATURE: _____

Jae J. Lee:

DATE: _____

SIGNATURE: _____

Mateusz Ganczarek:

DATE: 30/03/2021

SIGNATURE: Ganczarek

Rodney Warren:

DATE: _____

SIGNATURE: _____

## CLIENT-CLAIMANT SIGNATURES

I hereby attest under penalty of perjury that the contents of this petition are true and accurate to the best of my knowledge, and that I have authorized the filing of this document.

Jacob Zowie Thomas Rensel:

DATE: _____

SIGNATURE: _____

Wang Yun He:

DATE: _____

SIGNATURE: _____

Chi Hao Poon:

DATE: _____

SIGNATURE: _____

King Fung Poon:

DATE: _____

SIGNATURE: _____

Jae J. Lee:

DATE: _____

SIGNATURE: _____

Mateusz Ganczarek:

DATE: _____

SIGNATURE: _____

Rodney Warren:

DATE: _March 30, 2021_

SIGNATURE: _____

Scanned with CamScanner

# EXHIBIT 1

# 18 MAG 3177

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x
91,000 ETHER CURRENTLY ON DEPOSIT :
IN       ETHER    WALLET    ADDRESS :
0xdA6F983076725cB2899205A16E16d1e :
d60a0067A                           :
- - - - - - - - - - - - - - - - - - - X

## WARRANT OF SEIZURE
## PURSUANT TO 18 U.S.C. § 981

TO:  ANY LAW ENFORCEMENT OFFICER AUTHORIZED BY LAW

An Affidavit having been made before me by Kristin Allain, a Special Agent with the Federal Bureau of Investigation, that she has reason to believe that the above-captioned property is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), and as I am satisfied that there is probable cause to believe that the property so described is subject to seizure and forfeiture pursuant to said statute,

YOU ARE HEREBY COMMANDED AND AUTHORIZED to seize the property described below by effectuating an electronic or digital transfer over the internet, or by serving a copy of this warrant of seizure upon any person or entity presently in possession or control of the property and directing them to effectuate such a transfer:

91,000 ETHER CURRENTLY ON DEPOSIT IN ETHER WALLET ADDRESS 0xdA6F983076725cB2899205A16E16d1ed60a0067A

YOU ARE FURTHER COMMANDED AND AUTHORIZED to prepare a written inventory of the property seized and promptly return this warrant and inventory before this Court as required by law.

Dated:    New York, New York
          April 13, 2018

SO ORDERED:

THE HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

USAO_SDNY_00009193

# 18 MAG 3177

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x
                       :

   UNITED STATES OF AMERICA      :   **TO BE FILED UNDER SEAL**
                       :

       - v. -        :   AFFIDAVIT IN SUPPORT
                       :   OF SEIZURE WARRANT
   91,000 ETHER CURRENTLY ON DEPOSIT :   PURSUANT TO
   IN    ETHER    WALLET    ADDRESS :   18 U.S.C. § 981
   0xdA6F983076725cB2899205A16E16d1e :
   d60a0067A,                 :
                       :
        Defendant-In-Rem.    :
                       :
- - - - - - - - - - - - - - - - - x

STATE OF NEW YORK       )
COUNTY OF NEW YORK     ) ss.:
SOUTHERN DISTRICT OF NEW YORK )

      KRISTIN ALLAIN, being duly sworn, deposes and says:

    1.   I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been employed by the FBI since July 2017. Prior to joining the FBI, I earned a bachelor's of science degree in chemistry, a master's degree in business administration, and a juris doctorate, as well as a license to practice law in Florida. I am currently assigned to a squad within the FBI responsible for investigating complex financial crimes, including crimes involving wire fraud, bank fraud, securities fraud, money laundering, and other white-collar crimes. At the FBI, I have participated in several investigations of such offenses.

USAO_SDNY_00009194

2. This affidavit is submitted in support of the Government's application for the issuance of a warrant to seize and forfeit:

> 91,000 ETHER CURRENTLY ON DEPOSIT IN AN ETHER WALLET THAT HAS BEEN ASSIGNED THE ADDRESS 0xdA6F983076725cB2899205A16E16d1ed60a0067A (the "Subject Property").

3. As more fully described below, "Ether" is a digital currency that is stored on the internet in applications referred to as digital wallets. Each digital wallet is assigned a unique alphanumerical identifier known as an address, and each digital wallet can only be accessed using a unique alphanumerical string known as a private key or passcode. The Subject Property is subject to forfeiture to the United States of America as the proceeds of unlawful activity, namely a conspiracy to commit, and the commission of, securities fraud and wire fraud.

4. The information contained in this Affidavit is based upon my personal knowledge and involvement in the investigation of this matter, as well as information obtained from other sources, including conversations with others, as well as my review of documents gathered during the course of this investigation. Because this Affidavit is being submitted for the limited purpose of seizing criminal proceeds, it does not include every fact that I have learned during the course of the investigation. Where the

2

USAO_SDNY_00009195

contents of documents and actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## PROBABLE CAUSE

### A. Probable Cause as to the Commission of the Subject Offenses

5. On or about March 31, 2018, United States Magistrate Judge James L. Cott of the Southern District of New York signed a criminal complaint (the "Criminal Complaint") charging SOHRAB SHARMA and ROBERT FARKAS with the crimes of conspiracy to commit securities fraud, securities fraud, conspiracy to commit wire fraud, and wire fraud (the "Subject Offenses"); arrest warrants authorizing their arrests based on the charges set forth in the Criminal Complaint; and also warrants and orders directing the service providers for a cellphone associated with SHARMA and a cellphone associated with FARKAS to provide cellphone location information to the FBI that were issued based on the facts set forth in a supporting warrant affidavit (the "Warrant Affidavit"). Copies of the Criminal Complaint and Warrant Affidavit are attached hereto as Exhibits A and B and are incorporated by reference as though fully set forth herein.

6. Based on the facts detailed in the Criminal Complaint and the Warrant Affidavit, I respectfully submit that there is probable cause to believe the following, in substance and in part:

3

USAO_SDNY_00009196

a. From at least in or about July 2017 through in or about March 2018, SOHRAB SHARMA and ROBERT FARKAS, two co-founders of Centra Tech, Inc. ("Centra Tech"), began soliciting investors to purchase Centra Tech tokens, a cryptocurrency that functions as an unregistered security in Centra Tech, through a so-called "initial coin offering" or "ICO." As part of this effort, SHARMA and FARKAS, in oral and written offering materials that were disseminated via the internet, represented that Centra Tech had developed a debit card, namely the so-called "Centra Card," that allowed users to spend the cryptocurrency of their choice to make purchases at any establishment that accepts Visa or Mastercard.

b. In soliciting investors to purchase unregistered securities in the form of Centra Tech tokens, SHARMA and FARKAS represented that Centra Tech had formed a partnership with Bancorp to have Bancorp issue Centra Cards licensed by Visa or Mastercard, and that Centra Tech held financial servicing licenses in 38 states, among other claims. Based in part on these claims, victims provided funds worth more than $25 million in investments for the purchase of Centra Tech tokens.

c. The claims that SHARMA and FARKAS made to help secure these investments, however, were false. In fact, Centra Tech had no such relationships with Bancorp, Visa, or Mastercard, and at least seven of those 38 states have no record of any such licenses being issued to Centra Tech.

7. Following the issuance of the Criminal Complaint, SHARMA and FARKAS were arrested on or about April 1, 2018, in the Southern District of Florida, and both were presented on the Criminal Complaint before United States Magistrate Judge Lurana S. Snow in the Southern District of Florida on or about April 2, 2018. SHARMA and FARKAS subsequently consented to their detention and removal to the Southern District of New York for further proceedings on

4

USAO_SDNY_00009197

the Criminal Complaint, without prejudice to their ability to apply
for their releases on bail upon their arrival in the Southern
District of New York.

**B. Probable Cause as to the Subject Property**

8.    There is probable cause to believe that the Subject
Property constitutes proceeds of the Subject Offenses and is
subject to forfeiture to the United States of America.  Based on
the facts set forth in the Criminal Complaint and Warrant
Affidavit, as well as other information I have learned as part of
this investigation, including my conversations with my fellow case
agent from the FBI and other law enforcement officials familiar
with this matter, my conversations with my fellow FBI case agent
about his conversations with representatives of the United States
Securities and Exchange Commission ("SEC") concerning information
and evidence gathered by the SEC as part of the SEC's parallel
investigation of Centra Tech, and information that I have received
from SEC, I have learned the following, in substance and in part:

  a. In or about the fourth quarter of 2017, the SEC
     initiated an investigation of Centra Tech.  As part
     of that investigation, the SEC issued a subpoena on
     or about November 29, 2017 to Centra Tech, care of
     Centra Tech's outside counsel at a law firm that was
     retained to represent Centra Tech.  The subpoena
     compelled Centra Tech to produce a variety of
     documents, including various documents relating to
     two of Centra Tech's co-founders, SOHRAB SHARMA and
     ROBERT FARKAS.

USAO_SDNY_00009198

b. During Centra Tech's outside counsel's representation of Centra Tech, the outside counsel engaged in several conversations with representatives of the SEC working on the SEC's investigation.   Centra Tech's outside counsel also had separate conversations with representatives of the United States Attorney's Office for the Southern District of New York and the FBI with respect to the parallel criminal investigation relating to Centra Tech.   During these conversations, Centra Tech's outside counsel represented the following, in substance and in part, on behalf of Centra Tech:

i. During Centra Tech's offering of Centra Tech tokens to members of the public during the period from approximately July 2017 through October 2017, purchasers of Centra Tech tokens provided funds in the form of digital currency (specifically, approximately 91,000 units in a digital currency known as "Ether") in exchange for Centra Tech tokens (namely, the Subject Property).   The Subject Property, consisting of funds totaling approximately 91,000 Ether units, and other digital assets, were placed in a particular digital wallet, which was only accessible via a passcode possessed by SOHRAB SHARMA, one of the co-cofounders of Centra Tech. (Based on the facts set forth in the Criminal Complaint, there is probable cause to believe that the 91,000 Ether units comprising the Subject Property were solicited through fraudulent misrepresentations and omissions by SOHRAB SHARMA and ROBERT FARKAS, two co-founders of Centra Tech, as part of their commission of the Subject Offenses, and thus that those funds represent proceeds and fruits of the Subject Offenses.)

ii. After the SEC made Centra Tech aware of the SEC's investigation of Centra Tech by serving a subpoena on Centra Tech, Centra Tech transferred all of the digital assets in that digital wallet, including the Subject Property, to a different digital wallet with its own unique passcode (the "Digital Wallet").   According to representations

6

USAO_SDNY_00009199

of Centra Tech through its outside counsel, the
purported passcode to access this Digital Wallet
was written on a piece of paper that was divided
into halves that were given to Centra Tech's
Chief Operating Officer, ROBERT FARKAS, and
Centra Tech's General Counsel and Chief
Compliance Officer, Allan Shutt, respectively.
According to representations by Centra Tech
through its outside counsel, the combination of
those halves of the paper supposedly represents
the only copy of the passcode to the Digital
Wallet. The half of the paper given to FARKAS,
containing part of the purported passcode, was
placed in a safe deposit box in FARKAS' name at
a bank; and the other half of the paper given to
Shutt, containing the remainder of the purported
passcode, was placed in a safe deposit box in
Shutt's name in a different bank.

c. On or about April 10, 2018, Centra Tech's General
Counsel and Chief Compliance Officer, Allan Shutt,
provided his half of what was purported to be the
passcode to the Digital Wallet to FBI agents in the
Southern District of Florida in response to grand jury
subpoenas that were previously served on Centra Tech.

d. On or about April 11, 2018, FBI agents in the Southern
District of Florida retrieved FARKAS' half of what
was purported to be the passcode to the Digital Wallet
pursuant to a judicially authorized search warrant
issued by United States Magistrate Judge Barry S.
Seltzer of that District that was issued based on the
facts set forth in a supporting warrant affidavit (the
"Search Warrant Affidavit"). The Search Warrant
Affidavit is attached as Exhibit C and incorporated
by reference as though fully set forth herein.

e. Last week, during the period between the arrest of
FARKAS on or about April 1, 2018 on the charges set
forth in the Criminal Complaint and the FBI's recovery
of FARKAS' half of the purported passcode to the
Digital Wallet on or about April 11, 2018, an
unidentified female called the bank branch in which
FARKAS kept his portion of what was purported to be
the passcode in a safe deposit box and demanded access

7

USAO_SDNY_00009200

to the safe deposit box, claiming that she had a power of attorney signed by FARKAS giving her authorization to access and retrieve the contents of the safe deposit box. This demand was denied by the bank.

9.   After FBI agents in the Southern District of Florida gained possession of both Schutt's and FARKAS' halves of paper containing what was purported to be the passcode to the Digital Wallet containing the Subject Property, the agents sent images of that purported passcode to other FBI agents in the Southern District of New York who have been working on this investigation, including an FBI agent who has significant training and experience in investigations of crimes involved digital currencies. Based on the presence of exigent circumstances as long as the Subject Property is contained in the Digital Wallet set up by Centra Tech, including the significant danger that the Subject Property could easily and swiftly be dissipated if any of the Centra Tech co-founders charged in the Criminal Complaint has a copy of the actual passcode to retrieve the Subject Property, the FBI attempted to use the purported passcode (documented on the paper fragments that had been possessed by Shutt and FARKAS) to transfer the Subject Property from the Digital Wallet set up by Centra Tech to a secure digital wallet maintained by the FBI, pursuant to Title 18, United States Code, Section 981(b)(2)(B)(ii). After attempting to use the purported passcode to access the Digital Wallet containing the

8

USAO_SDNY_00009201

Subject Property, I learned that the passcode formed by combining both Schutt's and FARKAS' halves of paper did not work and was unable to provide access to the Subject Property.

10.  Although that purported passcode to the Digital Wallet did not work, by viewing publicly available Ether software earlier today, I have been able to confirm that the Subject Property consisting of approximately 91,000 Ether units, and other digital assets, are presently in the Digital Wallet, and that the estimated value of the Subject Property is approximately $46 million (and the estimated value of all of the digital assets in the Digital Wallet is approximately $51 million).

11.  Based on the facts set forth above, my participation in this investigation, and my consultations with other FBI agents, including one with significant training and experience in investigations of crimes involved digital currencies, I believe and respectfully submit that as long as the Subject Property is retrievable via a passcode that is unknown to the FBI, there exists a significant danger that the Subject Property could be dissipated. For example, Centra Tech's representations that the passcode in the possession of Schutt and FARKAS provided access to the Subject Property in the Digital Wallet have turned out to be inaccurate, and there is no way to confirm with certainty whether anyone else has access to the actual passcode to the Digital Wallet either

9

USAO_SDNY_00009202

directly or indirectly. If one of the Centra Tech co-founders charged in the Criminal Complaint secretly maintained a copy of the actual passcode to the Digital Wallet, he or an associate could use that copy of the passcode to dissipate the Subject Property via any computer with internet access.

12. Accordingly, I respectfully request that the instant warrant be granted to allow the FBI and other authorized law enforcement agents to effectuate an electronic or digital transfer over the internet to move the Subject Property into an FBI-maintained digital wallet until further order of the Court in order to preserve the Subject Property for forfeiture to the United States. Because without a passcode, the FBI will be unable to effectuate such a transfer, and because the passcode obtained from Schutt's and FARKAS' halves of paper did not work to provide access to the Subject Property, I further request that the instant warrant command any person or entity presently in possession or control of the Subject Property to effectuate such a transfer to the FBI or other authorized law enforcement agents.

## SEIZURE AND FORFEITURE AUTHORITY

13. The statutory provisions pursuant to which the Subject Property is subject to seizure and forfeiture are as follows:

14. Title 18, United States Code, Section 981(a)(1)(C) subjects to civil forfeiture:

10

USAO_SDNY_00009203

[a]ny property, real or personal, which constitutes or
is derived from proceeds traceable to . . . any offense
constituting 'specified unlawful activity' (as defined
in section 1956(c)(7) of this title), or a conspiracy to
commit such offense.

18 U.S.C. § 1956(c)(7)(A) provides that the term "specified

unlawful activity" includes "any act or activity constituting an

offense listed in section 1961(1) of this title". Section 1961(1),

in turn, includes "section 1343 (relating to wire fraud)," and

"fraud in the sale of securities." In the case of "illegal goods,

illegal services, and unlawful activities," 18 U.S.C. §

981(a)(2)(A) defines the term "proceeds" as "property of any kind

obtained directly or indirectly, as the result of the commission

of the offense giving rise to forfeiture, and any property

traceable thereto." Accordingly, the Subject Property is subject

to civil forfeiture to the United States of America pursuant to 18

U.S.C. §§ 981(a)(1)(C) as proceeds of the crimes of conspiracy to

commit, and the commission of, securities fraud and wire fraud.

15.  Section 981(b)(1) of Title 18 provides that any property

subject to civil forfeiture to the United States under 18 U.S.C.

§ 981(a) may be seized by the Attorney General. Section 981(b)(2)

provides that such a seizure may be made "pursuant to a warrant

obtained in the same manner as provided for a search warrant under

the Federal Rules of Criminal Procedure."

11

USAO_SDNY_00009204

16.  In addition, Section 981(b)(3) of Title 18 provides that, notwithstanding the provisions of Federal Rule of Criminal Procedure 41(a), a seizure warrant may be issued pursuant to Section 981(b) by a judicial officer in any district in which a forfeiture action against the property may be filed under Title 28, United States Code, Section 1355(b).  Under Section 1355(b)(1)(A), a forfeiture action or proceeding may be brought in the district in which any of the acts or omissions giving rise to the forfeiture occurred.  Section 981(b)(3) further provides a seizure warrant "may be executed in any district in which the property is found."

17.  For the foregoing reasons, the Subject Property is subject to both seizure and forfeiture, and a warrant for its seizure may be issued in the Southern District of New York, the district where some of the acts and omissions giving rise to the forfeiture occurred.

12

USAO_SDNY_00009205

**CONCLUSION**

18.   For the reasons set forth above, I respectfully request
that the Court issue a seizure warrant pursuant to 18 U.S.C. § 981
for the Subject Property.

19.   Although the Criminal Complaint against two of Centra
Tech's co-founders has been unsealed, the full scope of the ongoing
criminal investigation in this matter has not been made public,
including law enforcement efforts to determine whether any co-
conspirators in the Subject Offenses should also be charged with
criminal offenses and law enforcement efforts to identify any
proceeds of the Subject Offenses, separate and apart from the
Subject Property, subject to forfeiture to the United States.

13

USAO_SDNY_00009206

20.  Accordingly, I also respectfully request that this Affidavit be sealed until further order of the Court so as not to jeopardize the ongoing investigation of this matter, except that the Government may without further order from this Court produce this Affidavit in any criminal or forfeiture proceedings as necessary to comply with any discovery and disclosure obligations.

Dated:  New York, New York
         April 13, 2018

KRISTIN ALLAIN
Special Agent
Federal Bureau of Investigation

Sworn to before me this
13th day of April, 2018:

HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

It is hereby ORDERED that this Affidavit shall remain under seal until further Order of the Court (subject to the exceptions set forth above in paragraph 20).

SO ORDERED

HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

14

USAO_SDNY_00009207

# EXHIBIT 2

# 18 MAG 8989

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x
                   :

UNITED STATES OF AMERICA      :

           - v. -          :

9,000 ETHER FROM ETHER WALLET :
ADDRESS "0xdA6F983076725cB2899205 :
A16E16d1ed60a0067A,"          :

          Defendant-In-Rem.     :

                   :

- - - - - - - - - - - - - - - - - - x

**TO BE FILED UNDER SEAL**

AFFIDAVIT IN SUPPORT
OF SEIZURE WARRANT
PURSUANT TO
18 U.S.C. § 981

STATE OF NEW YORK        )
COUNTY OF NEW YORK      ) ss.:
SOUTHERN DISTRICT OF NEW YORK )

BRANDON S. RACZ, being duly sworn, deposes and says:

## INTRODUCTION

1.    I have been a Special Agent with the Federal Bureau of Investigation ("FBI") for approximately three years. I am currently assigned to a squad within the FBI responsible for investigating complex financial crimes, including crimes involving wire fraud, bank fraud, securities fraud, money laundering, and other white-collar crimes. During my tenure with the FBI, I have participated in investigations of numerous frauds, and have conducted physical and electronic surveillance, the execution of search warrants (including warrants to search electronic devices such as cellphones and computers), debriefings of informants, reviews of taped conversations and electronic communications such

as emails and text messages, and arrests.  I have also participated in efforts to seize and recover funds raised from victims of fraud, including analyses to determine whether funds constitute proceeds of fraud subject to seizure and the judicially authorized seizure of proceeds of fraud.   Through my training, education, and experience, I have become familiar with the manner in which securities and wire frauds are perpetrated.

2.   I am one of the FBI case agents from the FBI's New York Field Office with primary responsibility for an investigation of a startup company called Centra Tech, Inc. ("Centra Tech") and its co-founders, SOHRAB SHARMA ("SHARMA"), RAYMOND TRAPANI ("TRAPANI") and ROBERT FARKAS ("FARKAS") for soliciting investment funds for Centra Tech through fraudulent representations and omissions.  As explained below, based upon such conduct, Centra Tech co-founders SHARMA, TRAPANI and FARKAS have been charged in an Indictment, captioned *United States* v. *Sohrab Sharma et al.*, 18 Cr. 340 (LGS) pending before United States District Judge Lorna G. Schofield in the Southern District of New York (the "Criminal Case"), with conspiracy to commit securities fraud (in violation of 18 U.S.C. § 371), securities fraud (in violation of 15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. § 240.10b-5; and 18 U.S.C. § 2), conspiracy to commit wire fraud (in violation of 18 U.S.C. § 1349), and wire

fraud (in violation of 18 U.S.C. §§ 1343 and 2) (collectively, the "Subject Offenses").

3.     As explained below, on or about May 2, 2018, the FBI seized approximately 91,000 units of a digital currency called "Ether" or "ETH" (the "Original Subject Property") that was on deposit in a digital wallet assigned a unique address that is accessible via the internet, namely the digital wallet with an address of "0xdA6F983076725cB2899205A16E16d1ed60a0067A" (the "Seizure Wallet"), pursuant to a seizure warrant signed by United States Magistrate Judge Robert W. Lehrburger of the Southern District of New York (the "Prior Seizure Warrant").     Judge Lehrburger issued the Prior Seizure Warrant based upon a supporting warrant affidavit citing representations made by Centra Tech through its outside counsel and other facts that furnished probable cause to believe that the 91,000 Ether units represent proceeds of the Subject Offenses. At the time of the seizure, the 91,000 Ether units were worth more than $60 million in U.S. dollars.  The Prior Seizure Warrant and supporting warrant affidavit are attached as Exhibit A and incorporated by reference as though fully set forth herein.

4.     As shown in Exhibit A, "Ether" or "ETH" is a digital currency that is stored on the internet in applications referred to as digital wallets.  Each digital wallet is assigned a unique

3

alphanumerical identifier known as an address, and each digital wallet can only be accessed using a unique alphanumerical string known as a private key or passcode.

5. This Affidavit is submitted in support of the Government's application for the issuance of a warrant to seize and forfeit approximately 9,000 Ether units that were left to remain in the Seizure Wallet when the Prior Seizure Warrant was executed (the "Remaining Subject Property").[1] At the current Ether-to-dollar exchange rate, the 9,000 Ether units are worth more than $1,850,000 in U.S. dollars. Based on the facts set forth below, I respectfully submit that there is probable cause to believe that the Remaining Subject Property is subject to forfeiture to the United States of America as the proceeds of the Subject Offenses.

6. The information contained in this Affidavit is based upon my personal knowledge and involvement in the investigation of this matter, as well as information obtained from other sources, including conversations with others, as well as my review of documents gathered during the course of this investigation. Because this Affidavit is being submitted for the limited purpose

---

[1] As a result of transaction fees incurred when the Prior Seizure Warrant was executed on the Seizure Wallet, the precise amount of Ether left in the Seizure Wallet comprising the Remaining Subject Property was 8,999.996566 Ether units. For ease of reference, this sum is referred to as 9,000 Ether units throughout this Affidavit.

of establishing probable cause to seize criminal proceeds, it does not include every fact that I have learned during the course of the investigation. Where the contents of documents and actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## PROBABLE CAUSE

### A. Probable Cause Regarding the Subject Offenses

7.   On or about March 31, 2018, United States Magistrate Judge James L. Cott of the Southern District of New York approved a criminal complaint, numbered 18 Mag. 2695, charging SOHRAB SHARMA and ROBERT FARKAS, two of Centra Tech's co-founders, with the Subject Offenses of conspiring to commit, and the commission of, securities and wire fraud in connection with a scheme to induce victims to invest digital funds worth millions of dollars for the purchase of unregistered securities, in the form of digital tokens issued by Centra Tech, through fraudulent misrepresentations and omissions (the "Complaint-1"). The Complaint-1 is attached as Exhibit B and incorporated by reference as though fully set forth herein.

8.   On or about April 18, 2018, United States Magistrate Judge Stewart D. Aaron of the Southern District of New York approved a criminal complaint, numbered 18 Mag. 3271, charging

5

RAYMOND TRAPANI, a third co-founder of Centra Tech, with the same Subject Offenses (the "Complaint-2"). The Complaint-2 is attached as Exhibit C and incorporated by reference as though fully set forth herein.

9. On or about May 14, 2018, a Grand Jury in the Southern District of New York returned an Indictment, numbered 18 Cr. 340 (LGS), charging SHARMA, FARKAS and TRAPANI with the same Subject Offenses (the "Indictment") in the Criminal Case. The Indictment is attached as Exhibit D and incorporated by reference as through fully set forth herein.

10. Based on the facts set forth in the Complaint-1, the Complaint-2, and the Indictment (collectively, the "Criminal Charging Documents"), there is probable cause to believe the following, in substance and in part:

a. In or about July 2017, SHARMA, TRAPANI and FARKAS co-founded a startup company called Centra Tech that purported to offer cryptocurrency-related financial products. For example, Centra Tech claimed to have a Centra Tech debit card that allowed users to spend cryptocurrencies such as "Bitcoin" and "Ether" to make purchases in real-time at various stores and other establishments that were part of the networks of merchant locations that accept payment cards from Mastercard and Visa as a result of

6

purported partnerships between Centra Tech and Bancorp, Mastercard and Visa.[2]  Centra Tech was headquartered in Miami Beach, Florida.

b.    From at least on or about July 30, 2017 through at least in or about April 2018, SHARMA, TRAPANI and FARKAS engaged in a scheme to induce victims to invest digital funds worth millions of dollars for the purchase of unregistered securities, in the form of digital tokens issued by Centra Tech in connection with the company's so-called "initial coin offering" ("ICO"), through a series of material misrepresentations and omissions.[3]

---

[2]    As set forth in the Criminal Charging Documents, "Visa" refers to Visa Inc., a multinational financial services corporation headquartered in California that (among other things) facilitates electronic funds transfers throughout the world through "Visa"-branded credit cards and debit cards; "Mastercard" refers to Mastercard Incorporated, a multinational services corporation headquartered in New York that (among other things) processes payments between the banks of merchants and the card issuing banks or credit unions of the purchasers who use "Mastercard"-branded debit and credit cards; and "Bancorp" refers to The Bancorp, Inc., a Delaware-based financial services company that (among other things) issues debit and prepaid card by virtue of contractual partnerships with other financial services companies such as Visa and Mastercard, among others.

[3]    As set forth in the Criminal Charging Documents, an "initial coin offering" or "ICO" is a type of fundraising event in which an entity offers participants a unique digital "coin" or "token" in exchange for consideration.  The consideration often comes in the form of "digital currency" or "cryptocurrency," but can also be "fiat currency," which is a term used to describe currency that a government has declared to be legal tender, such as the U.S. dollar or the Euro, but is not backed by a physical commodity.  "Digital currency" or "cryptocurrency" is a digital representation of value that can be digitally traded and functions as (1) a medium of exchange, (2) a unit of account, or (3) a store of value, but does

Through this fraudulent scheme, SHARMA, TRAPANI and FARKAS solicited digital funds that included thousands of units of a cryptocurrency called "Ether" worth more than $25 million from investors who purchased digital tokens issued by Centra Tech.

      c.   As part of the scheme, SHARMA, TRAPANI and FARKAS made or caused Centra Tech to make the following misstatements in soliciting investments in Centra Tech, among others:

> i.   SHARMA, TRAPANI and FARKAS claimed to investors that Centra Tech had developed a debit card that enabled users to spend various cryptocurrencies to make purchases at any stores that accept Visa or Mastercard payment cards, and that Centra Tech had partnerships with Bancorp, Visa, and Mastercard to issue Centra Tech debit cards. In fact, Centra Tech had no such partnerships with Bancorp, Visa or Mastercard.

> ii.   SHARMA, TRAPANI and FARKAS claimed to investors that Centra Tech's executive team included a purported Chief Executive Officer named "Michael Edwards" and a purported Chief Financial Officer named "Jessica Robinson" who had impressive work histories and academic credentials. In fact, neither "Michael Edwards" nor "Jessica Robinson" was a real person.

not have legal tender status.   Unlike fiat currency, digital currency is not issued by any jurisdiction and functions only by agreement within the community of users of that particular currency.   Examples of digital currencies are "Bitcoin" and "Ether," both of which are issued and distributed on their own "blockchains."   A "blockchain" is a digitalized, decentralized, cryptographically-secured ledger that allows market participants to keep track of digital currency transactions without central recordkeeping.   The digital tokens or coins issued in an ICO are issued and distributed on a blockchain.   Tokens often are also listed and traded on online platforms, typically called digital currency exchanges, and they usually trade for other assets.

   iii.    SHARMA, TRAPANI and FARKAS claimed to investors
that Centra Tech held money transmitter and other relevant
licenses in 38 states.   In fact, Centra Tech did not have
such licenses in a number of those states.

   iv.    SHARMA, TRAPANI and FARKAS caused Centra Tech to
make several of those false claims through (among other
things) various promotional videos that were posted on the
YouTube website; various white papers that were disseminated
to investors via the internet; and various LinkedIn profiles
that were posted on the LinkedIn social networking website.
SHARMA also reiterated several of those false claims during
(among other things) an interview on an internet podcast
relating to the cryptocurrency industry.

   d.    Cellphone  text  message  conversations  between
SHARMA, TRAPANI and FARKAS, found in a cellphone recovered from
TRAPANI (the "TRAPANI Cellphone"),[4] show that they were well aware
of the falsity of the above-described claims:

   i.    For  example,  with  respect  to  the  purported
partnerships that Centra Tech claimed to have with Bancorp,
Visa,  and Mastercard, SHARMA engaged in a text message
conversation with TRAPANI on or about July 31, 2017 in which

---

[4]    As set forth in the Complaint-2, the TRAPANI Cellphone was
recovered from TRAPANI following his surrender on or about October
5, 2017 on a perjury indictment obtained by the District Attorney's
Office for New York County.  On the date of this surrender, TRAPANI
signed a consent form giving that District Attorney's Office and
the New York City Police Department his "voluntary consent to a
complete search" of the TRAPANI Cellphone, and he also wrote the
password to access the TRAPANI Cellphone on the consent form.
Pursuant to that consent form, the TRAPANI Cellphone was searched
on or about October 17, 2017, the TRAPANI's Cellphone's contents
were copied into an extraction report containing more than 14,000
pages of materials, and the TRAPANI Cellphone was returned to
TRAPANI.  I have reviewed the extraction report and documentation
generated as result of this consensual search.  The dates and times
of particular text messages reported in the Criminal Charging
Documents and herein are as they appear in the extraction report,
without conversion to Eastern Standard Time.

they discussed Centra Tech's lack of actual partnerships with banks or credit card companies. During that exchange, SHARMA (via a cellphone assigned a call number ending with "3138" that is referred to as the "SHARMA Cellphone-1" in the Complaint-2) wrote: "Should write down a list of places to call tomorrow," "For the conbranded [sic] card." Later in the exchange, SHARMA wrote: "Gotta get it going on the banks today plz." SHARMA also subsequently wrote: "We just need to get s [sic] banking license," "Need our direct agreement with visa," "Or MasterCard," "That's the move," "Cut out the middle man," "I wish we just knew someone."

ii.      With  respect  to  Centra  Tech's  purported  CEO "Michael  Edwards"  and  purported  CFO  "Jessica  Robinson," SHARMA (via the SHARMA Cellphone-1) text-messaged TRAPANI on or about July 29, 2017, that they "Need to find someone who looks like Michael," "Team photos," "He's real lol," "Everyone real," "Except Jessica," "And Mike."  Later that day, SHARMA (via the SHARMA Cellphone-1) text messaged TRAPANI: "Gonna kill both Ceo and her," "Gonna say they were married and got into an accident."

iii.     With  respect  to  Centra  Tech's  purported  money transmitter and other licenses in 38 states, SHARMA had a text message conversation with TRAPANI and FARKAS on or about August 30, 2017 about applying for state licenses that Centra Tech  had  previously  represented  it  already  held  in  38 states.  For example, SHARMA wrote in one message on or about August 30, 2017 to TRAPANI and FARKAS:  "Gotta apply for all licenses," "Should I even say this."

iv.      With respect to false claims in a white paper that Centra Tech published to investors on the company's website, SHARMA had a text message conversation with TRAPANI and FARKAS on or about September 29, 2017 about taking down (among other things) the version of the white paper that was on the company's website at the time.  During this conversation, SHARMA (via a cellphone assigned a call number ending with "6091" that is referred to as the "SHARMA Cellphone-2" in the Complaint-2) sent text messages to TRAPANI and FARKAS in which SHARMA wrote (among other things):  "I rather cut any fufu," "Off right own," "Now," "Then worry," "Anything that doesn't exist current," "We need to remove," "Have them do it asap." Later in the same conversation, SHARMA (via the SHARMA Cellphone-2) wrote:  "I want a product page like [another

company]," "Theirs is so nice." TRAPANI wrote "Lol yeah no
real product." SHARMA wrote: "Yea but it doesn't say much,"
"And looks good," "We don't have a real product either right
now," "So I wanna tighten up ship asap."

    e.   As detailed in the Criminal Charging Documents,
SHARMA also sent and received email communications showing that he
was well aware of the falsity of the aforementioned claims by
Centra Tech in soliciting investments in Centra Tech:

    i.   For example, with respect to Centra Tech's claimed
partnership with Bancorp for the issuance of Centra Tech debit
cards licensed by Visa and Mastercard, SHARMA on or about
August 30, 2017 forwarded to FARKAS, among others, an email
that SHARMA had received from Bancorp directing Centra Tech
to "CEASE AND DESIST FROM REPRESENTING THAT THE BANCORP BANK
HAS ANY CONNECTION WITH, OR IS THE ISSUER OF ANY CARD PRODUCTS
RELATED TO CENTRA TECH."

    ii.   On or about the same day, SHARMA (via the SHARMA
Cellphone-1) engaged in a text message conversation with
TRAPANI and FARKAS concerning the cease-and-desist notice
from Bancorp. During this exchange, SHARMA wrote: "Google
Bitsset and Centra," "And contact anyone that has that image,"
"And ask them to remove it . . . . Or that language," "Saying
we work Bancorp," "Od bad," "Their lawyer reached out." Later
that day, FARKAS text messaged SHARMA and TRAPANI: "No Bancorp
on it." SHARMA responded: "In the bottom? . . . . U sure,"
"I thought I saw," "On press releases." FARKAS wrote: "Just
checked them all," "No Bancorp." SHARMA responded: "Okay,"
"We gotta get that shit removed everywhere and blame
freelancers lol . . . ."

    iii.   In addition, on or about October 13, 2017, FARKAS,
via one of his personal email accounts
("rjfarkas6@gmail.com") sent an email to SHARMA, via one his
work email accounts ("sam@centra.tech") and one of his
personal email accounts ("ssharma491@gmail.com") attaching
FARKAS' edits to an investor pitch deck dated August 15, 2017,
promoting Centra Tech and its ICO. The pitch deck contained
several misleading claims, including, among other things,
that: (i) the Centra Card gives users "[a]ccess to more than

11

36 Million Points of Sale wherever Visa and/or Mastercard is accepted"; (ii) the Centra Card was "issued" by "Mastercard and Visa;" and (iii) Centra in January 2017 had a "Major Banking Partnership and license agreement signed with VISA USA Inc."

11.  I have reviewed documents and other evidence provided by the United States Securities and Exchange Commission (the "SEC") that were gathered by the SEC during a parallel SEC investigation of Centra Tech and its co-founders, and I have reviewed an amended complaint filed on or about April 20, 2018 by the SEC against SHARMA, TRAPANI and FARKAS in the Southern District of New York charging the three of them with civil federal securities law violations arising from Centra Tech's ICO (the "SEC Complaint") based upon evidence gathered by the SEC during its parallel investigation.  The SEC Complaint against SHARMA, TRAPANI and FARKAS (who are referred to as the "Defendants" in the SEC Complaint) is attached as Exhibit E and incorporated by reference as though fully set forth herein.  According to the SEC Complaint (at ¶¶ 65-68), in addition to making fraudulent misrepresentations and omissions to solicit investors to purchase digital tokens (called "Centra Tokens" or "CTRs") issued by Centra Tech during its ICO, SHARMA, TRAPANI and FARKAS also engaged in a scheme to manipulate the market price of Centra tokens on various digital asset trading exchanges.  Paragraphs 65 through 68 of the SEC Complaint state the following:

12

65.   Defendants also manipulated the price of the Centra
Token in the weeks leading up to the ICO.  Defendants'
manipulative trading was intended to generate interest
in the company and to ensure that prospective investors
were not discouraged by the Centra Token price — which
was   then   trading   on   public   exchanges   between
approximately $.15 and $.50 per token on limited trading
volume — or by public comments that were negative of
Centra and its purported products.  As Sharma explained
to Trapani in late August 2017, "[c]an't have more FUD
[fear, uncertainty and doubt] . . . There's FUD around[.]
Mainly   about   price."     Defendants   undertook   this
manipulative   trading   knowingly,   recklessly,   or
negligently.

66.   As one example of Defendants' manipulations, over
August 26 and 27 Sharma and Trapani engaged in a
concerted effort to manipulate the CTR Token price
higher.    On August 27, 2017, for example, Sharma
instructed Trapani to artificially increase the Centra
Token price:  "Ray keep bumping the price. Do [larger]
buys."  Trapani responded "what size," to which Sharma
explained "10 ETH plus" and Trapani agreed.  Later that
same day, Sharma again instructed Trapani to make
additional large purchases, to which Trapani responded
"yeah I am doing big buys."  That evening, Sharma noted
with approval that "we already pushed the price higher
By doing that pump[.]   Naturally We gotta keep doing
that[.]  Price is rising."   The next day when Sharma
noticed that Trapani was making additional large
purchases, he directed Trapani to make the purchases at
higher prices:    "Gotta do higher than 60," Sharma
instructed, and then made clear that he should make the
buys at $0.80 per token. Trapani agreed, after which
Sharma responded that they should "[g]et . . . [r]eady
for the pump Lol."

67.  When the pump was completed, Sharma messaged Trapani
that they had "[b]urned through like 250 ETH" — or
approximately $75,000 — and moved "the price higher by
30%."

68.   Based on publicly available market data, Trapani
and Sharma's efforts to manipulate the Centra Token
price were successful.  During August 26 – 28, 2017, the

13

price of the Centra Token went from approximately $0.50
per token to over $1, and on August 27 the closing price
was $6.91 — which represents the highest closing price
ever recorded for Centra Tokens.   In addition, while
trade volume in early August ranged anywhere from 2,000
to 50,000 transactions per day, on August 26, 2017 the
trade volume increased to well over one million tokens
traded.

(Exhibit E at ¶¶ 65-68 (SEC's brackets and alterations).)

12.   From my review of transcripts of various proceedings in
the Criminal Case, my participation in this investigation, and my
conversations with other law enforcement officials working on this
investigation, I have learned the following, in substance and in
part:

a.   In April 2018, SHARMA and FARKAS were arrested on
the Complaint-1 and TRAPANI was arrested on the Complaint-2, and
all three of them were charged in May 2018 in the Indictment in
the Criminal Case against them before United States District Judge
Lorna G. Schofield in the Southern District of New York.

b.   As relevant for present purposes, SHARMA and FARKAS
were arrested on or about April 1, 2018 in the Southern District
of Florida on the Complaint-1 in connection with the Criminal Case.
Both of them were presented on the Complaint-1 before United States
Magistrate Judge Lurana S. Snow in the Southern District of Florida
on or about April 2, 2018.   SHARMA and FARKAS subsequently
consented to their detention and removal to the Southern District

14

of New York for further proceedings on the Complaint-1, without prejudice to their ability to apply for their releases on bail upon their arrival in the Southern District of New York. After SHARMA and FARKAS were removed to the Southern District of New York, each of them had separate contested bail hearings in May 2018 at which the Office of the United States Attorney for the Southern District of New York (the "Government") sought to have both of them detained pending trial. Transcripts of these bail hearings are attached as Exhibits F, G and H, respectively, and incorporated by reference as though fully set forth herein. SHARMA and FARKAS were ultimately ordered to be released on specified bail conditions but only upon satisfaction of those bail conditions. SHARMA and FARKAS were both eventually released from custody on bail.

c.   TRAPANI has also been released from custody on judicially approved bail conditions that were agreed upon between him and the Government.

**B. Probable Cause as to the Remaining Subject Property**

13.   Based on the facts set forth herein, I respectfully submit that there is probable cause to believe that the Remaining Subject Property constitutes proceeds of the Subject Offenses and is subject to forfeiture to the United States of America.

15

## Overview

14.  Based on the facts set forth below, there is probable cause to believe:

a.    During Centra Tech's ICO, which took place from approximately on or about July 30, 2017 through on or about October 5, 2017 (the "ICO Period"), purchasers of Centra Tech tokens provided funds in the form of digital currency (including thousands of units in a digital currency known as "Ether" or "ETH") in exchange for Centra Tech tokens.  Based on the facts set forth in the Criminal Charging Documents, there is probable cause to believe that all such Ether units were solicited from Centra Tech token purchasers through fraudulent misrepresentations and omissions by Centra Tech and its co-founders SHARMA, TRAPANI and FARKAS as part of their commission of the Subject Offenses, and thus that all such Ether units represent proceeds of the Subject Offenses.

b.    After the SEC made Centra Tech aware of the SEC's investigation of Centra Tech by serving a subpoena on Centra Tech in late November 2017, Centra Tech transferred approximately 100,000 Ether units to the Seizure Wallet, a digital wallet with a unique passcode that was possessed only by Centra Tech co-founder SHARMA.

c.    According to representations of Centra Tech through its outside counsel and representations of SHARMA through his

16

individual counsel, 91,000 of the 100,000 Ether units in the Seizure Wallet (*i.e.*, the Original Subject Property) were raised from purchasers of Centra tokens during the ICO Period in connection with Centra Tech's ICO. Through his own counsel and through Centra Tech's outside counsel, SHARMA claimed that the remaining 9,000 Ether units in the Seizure Wallet (*i.e.*, the Remaining Subject Property), were proceeds of SHARMA's own cryptocurrency trading activities.

d. Based in large part on such representations, which were memorialized in the warrant affidavit submitted in support of the Government's application for the Prior Seizure Warrant to seize 91,000 of the Ether units in the Seizure Wallet, the FBI obtained the Prior Seizure Warrant and in May 2018 transferred those funds into a secure digital wallet maintained by the FBI pursuant to the Prior Seizure Warrant.

e. As shown below, as a result of the continuing investigation in this matter, I and others at the FBI have become aware of facts, which are described below, that I respectfully submit furnish probable cause to believe that the remaining 9,000 Ether units in the Seizure Wallet also represent ICO proceeds of the Subject Offenses and that the representations by Centra Tech and SHARMA to the contrary were false and misleading.

17

**The Seizure of 91,000 Ether Units from the Seizure Wallet**

15.   I have reviewed materials available to the public via
the internet concerning Centra Tech, documents gathered by law
enforcement as part of this investigation (including text messages
recovered from the TRAPANI Cellphone), documents provided by the
SEC that the SEC gathered as part of its parallel investigation,
and transcripts of proceedings in the Criminal Case against Centra
Tech's co-founders in the Southern District of New York.   I have
also gathered information through conversations with other law
enforcement officials familiar with this matter, conversations
with representatives of the Government concerning representations
by Centra Tech and its co-founders through their respective
counsel, and conversations with representatives of the SEC
concerning information and evidence gathered by the SEC's parallel
investigation.   Based on the foregoing sources, I have learned the
following, in substance and in part:

    a.   From on or about July 30, 2017 through on or about
October 5, 2017, Centra Tech raised funds from investors, primarily
in the form of units of the digital currency called "Ether" or
"ETH," via the company's ICO.   During this ICO, Centra Tech
accepted digital funds from investors, including Ether units, in
exchange for digital tokens issued by Centra Tech, known as "Centra

18

tokens" or "CTR tokens" or "CTRs" that could be traded, or
exchanged, on various digital currency exchanges. The Ether units
that Centra Tech raised from investors can be grouped into two
broad categories: thousands of Ether units provided by a company
in South Korea called Bitsett in exchange for Centra tokens, and
thousands of Ether units raised from a wide variety of other
investors in exchange for Centra tokens.

b.   In or about the fourth quarter of 2017, the SEC
initiated an investigation of Centra Tech. As part of that
investigation, the SEC issued a subpoena on or about November 29,
2017 to Centra Tech, care of Centra Tech's outside counsel at the
law firm of Ballard Spahr LLP, which has been retained to represent
Centra Tech. The subpoena compelled Centra Tech to produce a
variety of documents, including various documents relating to
Centra Tech co-founders SOHRAB SHARMA, RAYMOND TRAPANI and ROBERT
FARKAS, documents sufficient to identify all digital and other
assets held by or on behalf of Centra Tech, and documents
sufficient to identify all investors who purchased any tokens
offered by Centra Tech, among other categories of documents and
information.

c.   During Centra Tech's outside counsel's
representation of Centra Tech, the outside counsel engaged in
several conversations with representatives of the SEC working on

the SEC's investigation.   Centra Tech's outside counsel also had
separate conversations with representatives of the Government and
the FBI with respect to the parallel criminal investigation
relating to Centra Tech.   During these conversations, the following
occurred, in substance and in part:

     i.     On or about November 29, 2017, during a telephone
call between representatives of the SEC and Centra Tech's
outside counsel, the following occurred, in substance and in
part.   The SEC inquired about the location and status of funds
raised by Centra Tech from its investors during the company's
ICO and about whether the company had taken any measures to
ensure that such funds were not at risk of being dissipated.
Centra Tech represented through its outside counsel that
those funds were intact but undertook to confirm as much.

     ii.     On or about November 30, 2017, during a telephone
call between representatives of the SEC and Centra Tech's
outside counsel, Centra Tech represented the following, in
substance and in part, through its outside counsel.   In
response to the concerns raised by the SEC the day before,
all of the Ether units raised by Centra Tech through its ICO
had been transferred to a digital wallet (namely, the digital
wallet referred to herein as the Seizure Wallet) with a unique
passcode.   As a result, the Seizure Wallet contained a total
of approximately 100,000 Ether units (then worth more than
$40 million in U.S. dollars).   The passcode to the Seizure
Wallet had been in the possession of Centra Tech co-founder
SHARMA, but had been reduced to a piece of paper that was
divided into halves that were given to Centra Tech executive
FARKAS and Centra Tech's General Counsel Allan Shutt,
respectively.   The combination of those halves of the paper
supposedly represented the only copy of the passcode to the
Seizure Wallet.   The half of the paper given to FARKAS,
containing part of the purported passcode, was placed in a
safe deposit box in FARKAS' name; and the other half of the
paper given to Shutt, containing the remainder of the
purported passcode, was placed in a safe deposit box in
Shutt's name.

20

iii.    On or about January 18, 2018, Centra Tech through
its outside counsel provided a letter to the SEC (the "January
18 Letter") enclosing a summary spreadsheet ("Summary
Spreadsheet") in response to specified document requests in
the SEC's November 29, 2017 subpoena to Centra Tech.
According to the subpoena, the document requests at issue
(namely, document requests numbered 6, 7 and 9 in the
subpoena) sought (among other things) documents sufficient to
identify all investors who purchased any digital token issued
by Centra Tech, documents sufficient to disclose the amounts
and dates of payments for each investor, and documents
sufficient to identify all cryptocurrency digital wallet
addresses that were used to send assets to Centra Tech in
connection with any digital token sold by Centra Tech.
According to the January 18 Letter, the Summary Spreadsheet
was created to respond to those document requests in that SEC
subpoena, the Summary Spreadsheet was "not a pre-existing
document," and "[s]hould it be determined that there are any
errors in the compilation of information, we will provide a
revised spreadsheet."

iv.    Based on my review of the January 18 Letter and the
Summary Spreadsheet, I have learned that the Summary
Spreadsheet purports to show, in substance and in part, that
Centra Tech received a total of approximately 91,000 Ether
units in exchange for Centra tokens issued by Centra Tech
during the ICO Period as part of the company's ICO: a total
of approximately 40,000 Ether units from so-called "Korea
Partners," a reference to Bitsset,[5] and a total of
approximately 51,000 Ether units from hundreds of individual
Centra token purchasers named in the Summary Spreadsheet.

v.    On or about January 30, 2018, during a telephone
call between representatives of the SEC and Centra Tech's

---

[5]    The Summary Spreadsheet refers to Bitsset as "Korea
Partners," rather than mentioning Bitsset by name. However, as
detailed herein, Centra Tech has made representations through its
outside counsel showing that it was the Korea-based company Bitsset
that provided the 40,000 Ether units attributed to "Korea Partners"
in the Summary Spreadsheet. Accordingly, based on such
representations and other facts set forth in this Affidavit, I
believe that "Korea Partners" is synonymous with Bitsset.

outside counsel, Centra Tech represented through its outside
counsel, in substance and in part, the following.   Centra
Tech represented that of the 100,000 Ether units that Centra
Tech had transferred into the Seizure Wallet, approximately
40,000 of those Ether units had been raised from Bitset and
approximately 51,000 of those Ether units had been raised
from other Centra token purchasers during Centra Tech's ICO
(for a total of 91,000 Ether units that are collectively
referred to herein as the Original Subject Property).  Centra
Tech further claimed that the remaining 9,000 Ether units
(referred to herein as the Remaining Subject Property)
belonged to SHARMA and were proceeds and profits of his
personal cryptocurrency trading unrelated to Centra Tech, and
were not funds raised during Centra Tech's ICO from purchasers
of Centra tokens.

      d.   Centra Tech co-founders SHARMA and FARKAS were
arrested in the Southern District of Florida on or about April 1,
2018 based on the Complaint-1 charging them with the Subject
Offenses of conspiring to commit, and the commission of, securities
and wire fraud, in connection with their solicitation of millions
of dollars worth of digital assets (including Ether units) raised
from investors in exchange for Centra tokens issued by Centra Tech
based on fraudulent misrepresentations and omissions.  SHARMA and
FARKAS were presented on the Complaint-1 in the Southern District
of Florida on or about April 2, 2018 and subsequently consented to
their detention and removal to the Southern District of New York
for further proceedings on the Complaint-1, without prejudice to
their ability to apply for their releases on bail upon their
arrival in the Southern District of New York.

e.   On or about April 10, 2018, Centra Tech's General Counsel, Allan Shutt, provided his half of what was purported to be the passcode to the Seizure Wallet to FBI agents in the Southern District of Florida in response to grand jury subpoenas that were previously served on Centra Tech.

f.   On or about April 11, 2018, FBI agents in the Southern District of Florida retrieved FARKAS' half of what was purported to be the passcode to the Seizure Wallet pursuant to a judicially authorized search warrant issued by United States Magistrate Judge Barry S. Seltzer of that District.

g.   After FBI agents in the Southern District of Florida gained possession of both Schutt's and FARKAS' halves of paper containing what was purported to be the passcode to the Seizure Wallet containing 100,000 Ether units (namely, the 91,000 Ether units that Centra Tech represented had been raised from Bitset and other Centra token purchasers and the remaining 9,000 Ether units that Centra Tech represented belonged to SHARMA), those agents in the Southern District of Florida sent images of that purported passcode to myself and another FBI agent in the Southern District of New York who has significant training and experience in investigations of crimes involving digital currencies.

h.   On or about April 11, 2018, based on the presence of exigent circumstances described in Exhibit A, I and another FBI

23

agent attempted to use the purported passcode (documented on the paper fragments that had been possessed by Shutt and FARKAS) to transfer the 91,000 Ether units that indisputably represented proceeds of the Subject Offenses from the Seizure Wallet set up by Centra Tech to a secure digital wallet maintained by the FBI, pursuant to Title 18, United States Code, Section 981(b)(2)(B)(ii).

i.   After attempting to use the purported passcode to access the Seizure Wallet, I learned that the passcode formed by combining both Schutt's and FARKAS' halves of paper did not work and was unable to provide access to the funds contained in the Seizure Wallet.

j.   On or about April 13, 2018, United States Magistrate Judge Robert W. Lehrburger of the Southern District of New York signed the Prior Seizure Warrant authorizing the FBI to seize the Original Subject Property consisting of 91,000 Ether units then on deposit in the Seizure Wallet by serving a copy of the Seizure Warrant upon any person or entity in possession or control of the Original Subject Property and directing them to effectuate a transfer of the Original Subject Property to the FBI. The Prior Seizure Warrant was approved by Judge Lehrburger based upon a supporting warrant affidavit detailing evidence furnishing probable cause to believe that the 91,000 Ether units that

24

represent proceeds of the Subject Offenses, including representations of Centra Tech through its outside counsel acknowledging that the 91,000 Ether units were raised from Bitset and other Centra token purchasers during Centra Tech's ICO. The Prior Seizure Warrant was subsequently served on (among others) SHARMA via his original individual counsel at the law firm of Konstelantz & Fink LLP (which was retained by SHARMA to represent him in the Criminal Case), and on FARKAS via his original individual counsel at the law firm of McLaughlin & Stern LLP (which was retained by FARKAS to represent him in the Criminal Case).

k.     After SHARMA and FARKAS, who had been detained following their arrests in the Southern District of Florida in this case, were removed to the Southern District of New York, each of them had separate bail hearings in May 2018 at which the Government sought to have both of them detained pending trial.

l.     On or about May 1, 2018, the Government and FARKAS and his original counsel appeared for a bail hearing before United States Magistrate Judge Ona T. Wang of the Southern District of New York. At the bail hearing, the Government reported that efforts by the FBI to access the Seizure Wallet containing 100,000 Ether units (including at least 91,000 Ether units of victim-investor funds) using the purported passcode obtained from Centra Tech had failed, and that neither SHARMA nor FARKAS had effectuated

25

the transfer of 91,000 of those Ether units to the FBI as required by the Prior Seizure Warrant. FARKAS represented through his counsel that the purported passcode to the Seizure Wallet had been provided (to FARKAS and Shutt) by SHARMA after the SEC inquired about the Seizure Wallet, that FARKAS believed in good faith that the purported passcode was in fact the actual passcode to the Seizure Wallet, and that FARKAS had learned while he and SHARMA were incarcerated as a result of this Criminal Case that SHARMA had altered the actual passcode before providing it to FARKAS and Shutt in response to the SEC's inquiries. Judge Wang ordered FARKAS detained until a specific set of conditions were met, including the successful transfer to the FBI of the Original Subject Property of 91,000 Ether units pursuant to the Prior Seizure Warrant.

m. On or about May 1, 2018, the day before SHARMA's first bail hearing, SHARMA's original counsel reported to the Government that the actual passcode to the Seizure Wallet was on a piece of paper taped underneath a drawer in the kitchen of an apartment in Miami, Florida where SHARMA lived with his girlfriend. FBI agents from the FBI's Miami Field Office went to that apartment on or about May 2, 2018, and, with the consent of SHARMA's girlfriend, the agents searched the kitchen of the apartment and recovered a piece of paper with what appeared to be a passcode to

a digital wallet such as the Seizure Wallet.  On or about May 2,

2018, using this passcode, the FBI successfully transferred the

Original Subject Property of 91,000 Ether units from the Seizure

Wallet to a secure digital wallet maintained by the FBI pursuant

to the Prior Seizure Warrant.  As explained below, because law

enforcement had not become aware at that point in this

investigation of evidence contradicting representations by Centra

Tech that the remaining 9,000 Ether units were proceeds of SHARMA's

cryptocurrency trading that were not raised from Centra Tech

investors, the 9,000 Ether units were left in the Seizure Wallet.

     n.    On or about May 2, 2018, the Government and SHARMA

and his original counsel appeared for the first of two bail

hearings before United States Magistrate Judge Debra C. Freeman of

the Southern District of New York.  At the first bail hearing,

SHARMA through his counsel admitted that SHARMA had previously

provided a false passcode to the Seizure Wallet in response to

inquiries by the SEC.  For example, according to the transcript of

this bail hearing, SHARMA's counsel stated the following on behalf

of SHARMA on the record before Judge Freeman:

> As you've just heard, my client was arrested on
> April 1st [in 2018].  Before his arrest, I can tell
> you I was representing him in the SEC matters since
> February [2018]. . . .  That was the first that the
> defendant became aware that there is a criminal
> investigation.  Up until then, it had been an SEC

investigation. He was no longer active in his
company as of . . . October of 2017, and so he had
November 29th is the day the SEC appeared and that
is when the passcode situation arose where the SEC
was informed that the virtual wallet [*i.e.*, the
Seizure Wallet] had been secured and the passcode
was in two separate spots. Your Honor, we now know
that that was not true. I cannot explain to the
Court why that happened. I believe my client was
very misguided, taking his own counsel and perhaps
others. But that was misguided.

I had my first chance to speak with him face-to-
face since he was arrested on April 1st, I met with
him for the first time yesterday when he arrived in
New York. Within a very short time of my meeting
him, he told me the truth about the passcode, and
I immediately told the Government where it could be
found and his girlfriend met the FBI this morning
and they found it under the kitchen drawer. . . .
So I really — I cannot explain why he did not give
the proper passcode. It may be a trust issue, I'm
not sure.

(Exhibit G at 19-20.)

o. At SHARMA's first bail hearing on or about May 2,

2018, SHARMA also represented through his original counsel to Judge

Freeman that the remaining 9,000 Ether units in the Seizure Wallet

(then worth about $6 million in U.S. dollars) belonged to SHARMA

and were not raised from Centra Tech investors. The Government

explained that it was not aware at that time of evidence

establishing probable cause to seize the remaining 9,000 Ether

units, but noted that the Government's investigation remains

ongoing and that if the Government later learned of facts

establishing probable cause to seize those funds, the Government

28

would seek to do so.  After Judge Freeman expressed concerns that SHARMA could use those funds to flee if he were released on bail, SHARMA's counsel proposed placing the 9,000 Ether units in a different digital wallet that would be controlled by a trustee appointed on behalf of SHARMA and would not be accessible to SHARMA.  To give SHARMA and his counsel enough time to prepare a bail package addressing Judge Freeman's concerns, Judge Freeman continued SHARMA's detention pending a further bail hearing, which took place on or about May 11, 2018.

p.   At SHARMA's second bail hearing on or about May 11, 2018, SHARMA through his counsel proposed a bail package to Judge Freeman that would include a requirement that remaining 9,000 Ether units in the Seizure Wallet (among other assets) be placed in a trust, to be managed by a trustee, that would permit the trustee to use funds in the trust solely for enumerated expenses such as, for example, legal fees and living expenses for SHARMA, pursuant to a trust agreement to be approved by the Government and the Court.  SHARMA's counsel reiterated on behalf of SHARMA that the 9,000 Ether units "is Mr. Sharma's money" (Exhibit H at 7-8 ("as the Court knows, there . . . is a virtual wallet, which still contains 9,000 of ether which is valued right now today a little bit over $6 million that is Mr. Sharma's money")); and further that "although he would be the beneficiary of the trust, [he] would

29

have no ability to invade the trust" (Exhibit H at 8-9).   Judge
Freeman ordered that SHARMA be released on specified bail
conditions and that he be detained until those bail conditions had
been satisfied, including a bail condition requiring that SHARMA's
assets in the Seizure Wallet "containing his funds (9,000 in ether,
which the Court understands to be currently valued at approx. $6
million) to be placed in trust, with a trust agreement to be
reviewed by the [Government] and found acceptable."

16.   I have reviewed transcripts of proceedings and other
publicly available court filings in *Jacob Zowie Thomas Rensel* v.
*Centra Tech, Inc. et al.*, 17 Civ. 24500 (JLK), a putative class
securities fraud action by a lead plaintiff on behalf of Centra
Tech investors against defendants Centra Tech, SHARMA, TRAPANI,
and FARKAS, among others, that is pending before United States
District Judge James L. King of the Southern District of Florida
(the "Private Class Action").   Based these sources, I have learned
the following, in substance and in part.   After the FBI seized
91,000 of the 100,000 Ether units in the Seizure Warrant, the
defendants in the Private Class Action initially consented to the
entry of a preliminary injunction freezing all 100,000 of the Ether
units in the Seizure Wallet, even though the defendants contended
that the remaining funds of about 9,000 Ether units in the Seizure
Wallet belonged to Centra Tech but were supposedly unrelated to

its ICO. (*See* ECF 17 Civ. 24500 (JLK), Docket Entry No. 79 at 15 n.10.)   The defendants in the Private Class Action, however, subsequently revoked their consent to the seizure of the remaining 9,000 Ether units in the Seizure Wallet, and Judge King issued a preliminary injunction on or about September 25, 2018 that imposes an asset freeze over the 91,000 Ether units that are currently held in a digital wallet controlled by law enforcement but does not freeze or otherwise protect the remaining 9,000 Ether units in the Seizure Wallet. (ECF 17 Civ. 24500 (JLK), Docket Entry No. 95.)

## The Remaining 9,000 Ether Units in the Seizure Wallet

17.   Since SHARMA's bail hearings in May 2018, as a result of the continuing investigation in this matter, I and others at the FBI have become aware of facts, which are described below, that I respectfully submit furnish probable cause to believe that the remaining 9,000 Ether units in the Seizure Wallet represent proceeds of the Subject Offenses, and that the representations by Centra Tech and SHARMA to contrary were false and misleading.

18.   As shown below, I respectfully submit that there is probable cause to believe the following:   (a) Centra Tech raised at least 100,000 Ether units during it ICO from investors who purchased Centra tokens, not 91,000 Ether units as claimed by Centra Tech and SHARMA; (b) the 100,000 Ether units that Centra

31

Tech transferred to the Seizure Wallet, including the 9,000 Ether units that remain in the Seizure Wallet after the seizure of the other 91,000 Ether units pursuant to the Prior Seizure Warrant, are traceable in whole or substantial part to funds raised by Centra Tech during and as part of its ICO; and (c) there is evidence described below establishing probable cause to believe that the remaining 9,000 Ether units in the Seizure Wallet are traceable, in whole or substantial part, to transactions in which Centra Tech raised 7,500 Ether units from Bitsset and 2,500 Ether units from an investor referred to by SHARMA as ▮▮▮▮▮ in exchange for Centra tokens during the ICO Period, and both of these transactions are not included in the 91,000-Ether-unit-figure that Centra Tech has claimed represents the total of all the funds raised through its ICO.

19. Based on the following facts, I respectfully submit that there is probable cause to believe that Centra Tech raised at least 100,000 units of "Ether" or "ETH" from investors who purchased Centra tokens during Centra Tech's ICO, not 91,000 Ether units as previously claimed by Centra Tech and SHARMA:

a. As set forth in the Criminal Charging Documents, during Centra Tech's ICO, Centra Tech published various whitepapers via the company's internet website to solicit investors to purchase Centra tokens in exchange for units of Ether.

32

Based on my review of a whitepaper that was downloaded from Centra
Tech's website on or about August 3, 2017, I have learned the
following, in substance and in part. According to this whitepaper,
Centra Tech created a total of 100 million Centra tokens ("Issuance
of Centra Tokens[:] 100,000,000*"), and planned to offer 68
million of the tokens to investors in exchange for units of Ether
during the ICO ("[w]e will be offering 68% of all [100 million]
CTR Tokens to be created for purchase in our crowd sale to the
public"), and planned to allocate the remaining 32 million of the
tokens for specified business purposes and for distribution to
Centra Tech's founders and others as incentive compensation ("[w]e
will allocate 20% of all [100 million] CTR Tokens created to
distribution of bug bounty, business development, community
projects, market expansion, and more" and "[t]he remaining 12%
will be distributed to Centra Techs founders, early investors, and
employees as an incentive"). This whitepaper further provided
that the Centra tokens would be offered at an exchange rate of 400
Centra tokens per unit of Ether ("Token Exchange Rate[:] 400 CTR
= 1 ETH"), yielding a total of 170,000 Ether units if Centra sold
68 million Centra tokens at that exchange rate ("Total Sale Goal
[:] 170,000 ETH").

b.   Based on my review of text messages and other data
recovered from the TRAPANI Cellphone, I have learned the following,
in substance and in part:

i.   On or about September 24, 2017, SHARMA, via the
SHARMA Cellphone-1, engaged in a text message conversation
with TRAPANI, via the TRAPANI Cellphone.   Starting at
approximately 6:18PM on or about September 24, 2017, TRAPANI
text-messaged SHARMA:   "We Gucci tunchi hitting 100k ETH."
SHARMA responded:   "Amazing."

ii.   On or about September 26, 2017, SHARMA, via the
SHARMA Cellphone-2 engaged in a text message conversation
with TRAPANI, via the TRAPANI Cellphone.   Starting at
approximately 12:13AM on or about September 26, 2017, TRAPANI
text-messaged SHARMA:   "Niggas said 100k ETH," "Wild how we
did that."   SHARMA responded:   "Nigga what," "I'm going to
Korea to get us 26k more," "We gonna have 100K sitting . . .
And 20K liquidated."   TRAPANI wrote:   "It's crazy Brodie lol."

iii.   On or about October 2, 2017, SHARMA, via the SHARMA
Cellphone-2, engaged in a group text message conversation
with TRAPANI, via the TRAPANI Cellphone, and FARKAS, via a
cellphone with a call number ending with "2656" (the "FARKAS
Cellphone").   Starting at approximately 12:47PM on or about
October 2, 2017, SHARMA text-messaged TRAPANI and FARKAS:   "I
did mad job stuff over the weekend," "Also got us 100K in ETH
in the account . . . . And we still have 28.9M ctr left."
TRAPANI wrote:   "Good shit . . . . Was just watching it as
you where moving it wondering what you where doing lol,"
"Perfect."   Later in the group conversation, at approximately
12:48PM on or about October 2, 2017, SHARMA wrote:   "Made it
100K in ETH for storage."   Furthermore, starting at
approximately 12:49PM on or about October 2, 2017 during this
group conversation, SHARMA wrote:   "I wanna flip like 5M of
CTR," "Actually like 8.5M," "And hold 20M CTR and 100k ETH."
TRAPANI responded:   "Word."[6]

---

[6]   In the Private Class Action, Centra Tech publicly filed a declaration of
its general counsel Allan Shutt (ECF Docket No. 17 Civ. 24500 (JLK), Docket
Entry No. 26-1) making conclusory assertions that "Centra Tech's business
records from its ICO demonstrate that, in total, Centra Tech ultimately raised
a total of approximately 51,068.675 ETH" from Centra token purchasers in
addition to 40,000 ETH raised from Bitsset and that the remaining sum of close

20. Based on the foregoing and the facts set forth below, I respectfully submit that there is probable cause to believe that the 9,000 Ether units that were left in the Seizure Wallet when the Prior Seizure Warrant was executed are traceable to proceeds of the Subject Offenses raised from investors who purchased Centra tokens during Centra Tech's ICO.

21. As set forth above, Centra Tech transferred approximately 100,000 Ether units into the Seizure Wallet on or about November 29, 2017 in response to inquiries from the SEC; Centra Tech on or about January 18, 2018 provided the SEC with the Summary Spreadsheet purporting to show that Centra Tech raised a total of approximately 91,000 Ether units (40,000 Ether units from the "Korea Partners," a reference to Bitset, and 51,000 Ether units from other investors) in exchange for Centra tokens issued during Centra Tech's ICO; and the FBI on or about May 2, 2018 transferred 91,000 of those Ether units to a digital wallet

to 9,000 ETH "represents funds outside of the ICO belonging to Centra Tech." This declaration does not disclose or address the above-quoted text messages to the contrary, does not state which business records support these conclusory assertions, does not state whether Shutt performed any Ether-tracing analysis to support these conclusory assertions, and does not state whether Shutt relied on others at Centra Tech (such as SHARMA) to form these conclusory assertions. As shown in this Affidavit, there is cause to believe that various records created by Centra Tech such as the January 18 Letter and Summary Spreadsheet purporting to disclose the sources of Centra Tech's ICO proceeds dot not fully account for all of the ICO proceeds. For these reasons and based on the other facts set forth in this Affidavit, Shutt's declaration does not alter my belief that there is probable cause that Centra Tech raised at least 100,000 Ether units in the ICO and that the Remaining Subject Property represents proceeds of the Subject Offenses.

35

maintained by the FBI pursuant to the Prior Seizure Warrant based on a judicial determination that there was probable cause to believe that the 91,000 Ether units was subject to seizure and forfeiture as proceeds of the Subject Offenses.

22. Based on my review of text messages recovered from the TRAPANI Cellphone and records of Ether transactions that are publicly available via the internet as described below, I respectfully submit that there is probable cause to believe that (a) there are transactions in which more than 9,000 Ether units were raised from Centra investors during the ICO that are not accounted for in the Summary Spreadsheet that Centra Tech created in response to inquiries from the SEC; and (b) that a substantial portion, if not all, of the 9,000 Ether units that comprise the Remaining Subject Property are traceable to such transactions. This belief is based on the following:

a. Based on my training and experience and my participation in this investigation, I have learned, in substance and in part, the following about transactions in Ether. "Ether" or "ETH" is a digital currency, or cryptocurrency, whose transactions are stored on an internet-based platform called the Ethereum blockchain. The Ethereum blockchain is a continuously growing list of records, called blocks, which are linked and secured using cryptography. The blockchain records transactions

36

between parties in a manner that is verifiable and resistant to modification. By inspecting the blockchain, anyone can review any Ether transaction ever made, although the identities of the participants in the transaction are anonymized and cannot be discerned without additional information. Records of Ether transactions on the Ethereum blockchain are viewable by the public at various websites available on the internet, including a website called Etherscan (available at https://etherscan.io) that is an Ethereum block explorer (the "Etherscan Website").

b.    I have used the Etherscan Website to review and analyze transactions associated with digital wallet addresses that were used to receive or send Ether raised by Centra Tech during its ICO. As part of this analysis, I have also reviewed documents in which Centra Tech identified various digital wallets owned and controlled by Centra Tech, including the January 18 Letter and Summary Spreadsheet that Centra Tech created in response to inquires from the SEC. From these sources and my analysis based upon them, I have learned, in substance and in part, the following:

i.    The Seizure Wallet received a total of approximately 100,000 Ether units on or about November 29, 2017. Those funds originated from several digital wallets that Centra Tech has acknowledged belonged to it and were routed, via several intermediate digital wallets that (as shown below) are associated with Centra Tech, to the Seizure Wallet. The final routing wallet that transmitted the 100,000 Ether units to the Seizure Wallet on or about November 29, 2017 was a digital wallet with an address of

"0x494C7f57396CE9ef51A49B1377d40c3e095b206F"          ("Centra
Routing Wallet 1").

ii.     Centra Routing Wallet 1 received a total of
approximately 100,000 Ether units on or about October 17,
2017   from   a   digital   wallet   with   an   address
of "0x2fA49Bd15512aA4a549b4ddB2181cA7edeAb14B4" ("Centra
Routing Wallet 2").

iii.     Centra Routing Wallet 2 received a total of
approximately 102,000 Ether units, of which approximately
75,000 Ether units were received on or about October 17, 2017
from   a   digital   wallet   with   an   address   of
"0x71e5A90eDA0834bd0AaAAE51314929BFd1ea4294"          ("Centra
Routing Wallet 3") and approximately 27,000 Ether units were
received on or about October 14, 2017 from a digital wallet
with           an           address           of
"0x55107767B83A18b15258BfAf12ecB0dbe468DbE5"          ("Centra
Routing Wallet 4").

iv.     Centra Routing Wallet 3 received approximately
90,000 Ether units on or about October 8, 2017 from a digital
wallet       with       an       address       of
"0x0E730C2731c875e4542c0Da2425F5119175FF6d0"          ("Centra
Routing Wallet 5").    Centra Routing Wallet 4 received
approximately 15,000 Ether units from Centra Routing Wallet
3 on or about October 10, 2017, and received approximately
10,000 Ether units from Centra Routing Wallet 5 on or about
October 8, 2017.

v.     Centra Routing Wallet 5 received approximately
90,000 Ether units from a digital wallet with an address of
"0x38874083663D11C952a7812acaf689Bc3595588c"          ("Centra
Routing Wallet 6") on or about September 27, 2017.

vi.     Centra Routing Wallet 6 received more than 130,000
Ether units from a digital wallet with an address of
"0x387792f7d2AA6e7Fa1312261cF36F5F6f6b97c00"     through     a
series of transfers from on or about September 19 through
September 26, 2017.  According to the January 18 Letter that
Centra Tech provided to the SEC, Centra Tech has identified
this wallet address as the "Centra Token Owner" wallet (the
"Centra Token Owner Wallet") and has represented that the
Centra Token Owner Wallet was one of several wallet addresses
used by Centra Tech to receive Ether from Centra token

38

purchasers during Centra Tech's ICO, along with the "Centra Token" wallet with an address of "0x96a65609a7b84e8842732deb08f56c3e21ac6f8a" (the "Centra Token Wallet"), the "Centra White List" wallet with an address of "0x5d268508179db4dA44De9057792758bFf280E3ed" (the "Centra White List Wallet"), and the "Centra Sale" wallet with an address of "0xbDB45d02D8eF8dc5E59aa58B26b99A4af3806bAa" (the "Centra Sale Wallet").  With respect to the 40,000 Ether units that Centra Tech received from "Korea Partners" (which, as set forth above, is a reference to Bitsset) in exchange for Centra tokens during Centra Tech's ICO, Centra Tech's January 18 Letter to the SEC further provides, in substance and in part, that Centra Tech received 3,000 of those Ether units using the Centra Token Owner Wallet and received the remaining 37,000 of those Ether units using a digital wallet with an address of "0x0445335f74da6e2119c648b79af8cc299474586f" ("Centra Bitsset Wallet").  According to the Etherscan Website, virtually all of the Ether in the Centra Bitsset Wallet was transferred to the Centra Sale Wallet and the Centra Routing Wallet 6 via a series of transfers on or about September 23, 2017.

vii.    From my review of the Summary Spreadsheet that Centra Tech created in response to in inquiries from the SEC and Centra Tech's accompanying January 18 Letter to the SEC, I have learned the following, in substance and in part.  These documents purport to show that during Centra Tech's ICO (a) Centra Tech received approximately 18,356 Ether units via the Centra Token wallet, approximately 8,365 Ether units via the Centra White List Wallet, approximately 15,079 Ether units via the Centra Sale Wallet, and approximately 9,267 Ether units via the Centra Token Owner Wallet, for a total of approximately 51,000 Ether units, from a variety of Centra token purchasers identified in the Summary Spreadsheet; and (b) Centra Tech received approximately 40,000 Ether units via the Centra Token Owner Wallet and the Centra Bitsset Wallet from Centra token purchasers referred to as "Korea Partners," which is a reference to Bitsset.

c.    For the following reasons, I respectfully submit that there is probable cause to believe that the Centra Routing Wallets 1 through 6 ("collectively, the "Centra Routing Wallets")

39

were owned and controlled by Centra Tech. *First*, from my review of the Etherscan Website, I have learned, in substance and in part, that the Centra Token Wallet, the Centra White List Wallet and the Centra Sale Wallet forwarded virtually all of the Ether that they received during Centra Tech's ICO to the Centra Token Owner Wallet. *Second*, as shown above, most of the Ether in the Centra Token Owner Wallet was forwarded, through the Centra Routing Wallets, to the Seizure Wallet. Because the Centra Routing Wallets both received Ether funds sent from the Centra Token Owner Wallet and sent such funds on toward the Seizure Wallet, which Centra Tech set up, I respectfully submit that there is probable cause to believe that the Centra Routing Wallets were owned and controlled by Centra Tech.

      d.    On or about October 2, 2018, SHARMA, via the SHARMA Cellphone-2, engaged in a group text message conversation with TRAPANI, via the TRAPANI Cellphone, and FARKAS, via the FARKAS Cellphone. As noted above, starting at approximately 12:47PM on or about October 2, 2017, SHARMA text-messaged TRAPANI and FARKAS: "I did mad job stuff over the weekend," "Also got us 100K in ETH in the account . . . . And we still have 28.9M ctr left." TRAPANI wrote: "Good shit . . . . Was just watching it as you where moving it wondering what you where doing lol," "Perfect." SHARMA

then responded: "Sold 7500 to bit set," "Moved 2500 over from that dude ███ "[7]

     e.    Based on my review of records of Ether transactions that are publicly available via the Etherscan website, I have learned, in substance and in part, the following. On or about October 2, 2017, which was the date on which SHARMA text-messaged TRAPANI and FARKAS that he had "Sold 7500 to bit set," a total of approximately 7,500 Ether units were transferred via two transactions from a digital wallet associated with Bitset

---

[7]    With respect to the above-quoted text messages between SHARMA and his co-conspirator TRAPANI during Centra Tech's ICO indicating that Centra Tech raised 7,500 Ether units from Bitset and 2,500 Ether units from "███ " I have been informed by representatives of the Government that during recent communications between them and SHARMA's current counsel, SHARMA has claimed through his counsel that SHARMA was lying to TRAPANI in these text messages about the source of those funds because, according to SHARMA, he was worried that if he had told TRAPANI that these funds came from SHARMA's personal cryptocurrency trading activities, TRAPANI would have asked SHARMA to borrow all or a portion of those funds. As set forth in the Criminal Charging Documents and above, SHARMA has previously been convicted of perjury, made numerous fraudulent misrepresentations to dupe investors into providing funds to Centra Tech, and attempted to obstruct the SEC's parallel investigation by providing a false passcode to the Seizure Wallet after the SEC sought assurances from Centra Tech that victim-investor funds raised through the Subject Offenses were secure in the Seizure Wallet. Given SHARMA's record of perjury and history of deception and a lack of candor, and the timing and the self-serving nature of his claims denying the veracity of those contemporaneous text messages, I respectfully submit that there is probable cause to believe that these self-serving claims are false.

41

("Bitset Wallet 1"),[8] to the Centra Routing Wallet 5 associated
with Centra Tech.   On that same date, approximately 3,562,500
Centra tokens were transferred from the Centra Routing Wallet 5 to
the Bitset Wallet 1.   As shown above, most of the 100,000 Ether
units that Centra Tech later transferred to the Seizure Wallet are
traceable to the Centra Routing Wallet 5.[9]

---

[8]    The Bitset Wallet 1 refers to a digital wallet address of
"0x9f51ca6a19c650555be53206b6a20d91681da7f6."   According to the
Summary Spreadsheet that Centra Tech created in response to
inquiries from the SEC, Centra Tech received 3,000 Ether units
through three transactions on or about August 30, 2017 from the
"Korea Partners" via the digital wallet referred to herein as the
Bitset Wallet 1, and a transfer of 37,000 Ether units on or about
September 23, 2017 from the "Korea Partners" via a digital wallet
with an address of "0x65190d08f1f241cf2361e7c70a40c1d59400736b"
("Bitset Wallet 2").   Based on the foregoing and the other facts
set forth in this Affidavit, I believe that the Bitset Wallet 1
and Bitset Wallet 2 were associated with Bitset.

[9]    I have been informed by representatives of the Government
that during recent communications between them and SHARMA's
current counsel, SHARMA has claimed through his counsel that the
3,562,500 Centra tokens transferred from the Centra Routing Wallet
5 to the Bitset Wallet 1 were left in the Bitset Wallet 1 until
a few days after SHARMA's arrest on or about April 1, 2018 in this
case, and that this demonstrates that the Bitset Wallet 1 was
actually controlled by Centra Tech and not an external investor
such as Bitset.   Although requested to do so by the Government,
SHARMA has not provided any corroborating evidence that the Bitset
Wallet 1 was owned or controlled by Centra Tech, although he has
asserted that he had passcodes to various digital wallets that
would have corroborated his claims but lost those passcodes as a
result of cyber-hacks of various of his electronic devices.   Since
SHARMA and FARKAS were both arrested and detained on or about April
1, 2018, it is doubtful that they had the capacity to transfer or
liquidate millions of Centra tokens from the Bitset Wallet 1 a
few days later while there were jailed.   Moreover, from my training
and  experience  and  participation  in  this  investigation,  I

f. The Summary Spreadsheet that Centra Tech created for the SEC discloses four transactions in which Centra Tech raised a total of 40,000 Ether units from Bitsset:  three transactions on or about August 30, 2017 in which Centra Tech received a total of 3,000 Ether units from the Bitsset Wallet 1, and a transaction on or about September 23, 2017 in which Centra Tech received a total of 37,000 Ether units from the Bitsset Wallet 2.  The Summary Spreadsheet does not disclose any transfers of Ether from Bitsset to Centra Tech after September 23, 2017, let alone a transaction in which the Centra Routing Wallet 5 received 7,500 Ether units that are traceable to a transfer on or about October 2, 2017 from the Bitsset Wallet 1.

g. Based on the foregoing, I respectfully submit that there is probable cause to believe that Centra Tech has not accounted in the Summary Spreadsheet for the likelihood that the 9,000 Ether units that remain in the Seizure Wallet are traceable, in whole or in part, to the 7,500 Ether units that Centra Tech raised on or about October 2, 2017 from Bitsset.

respectfully submit that it is not uncommon for investors who purchase securities (such as, in this case, Centra tokens) to hold them for substantial periods of time in the hope that they will appreciate.  For these reasons and based upon the other evidence set forth in this Affidavit, I respectfully submit that there is probable cause to believe that the Bitsset Wallet 1 was, in fact, owned and controlled by Bitsset.

h.   In addition, from my review of the Etherscan Website, I know that on or about October 2, 2017, which was the date on which SHARMA text-messaged TRAPANI and FARKAS that SHARMA had "Moved 2500 over from that dude ███," approximately 2,500 Ether units were transferred from the Centra Routing Wallet 4 to the Centra Routing Wallet 5.   A day earlier, the Centra Routing Wallet 4 received 5,200 Ether units from a digital wallet associated with Bitsset referred to herein as the "Bitsset Routing Wallet 1,"[10] and the Bitsset Routing Wallet 1 received approximately 1,742,000 Centra tokens.   As shown above, of the 100,000 Ether units that Centra Tech later transferred to the Seizure Wallet, a substantial portion (approximately 27,000 Ether units) are traceable to the Centra Routing Wallet 4, and most are traceable to the Centra Routing Wallet 5.

i.   The Summary Spreadsheet that Centra Tech created for the SEC does not disclose any transactions in which the Centra

_____

[10]   The Bitsset Routing Wallet 1 is a digital wallet with an address of "0xcb7b1fd4d3a097a796bb3bced863b1fd5e90a3cf," which received 5,219 Ether units from a digital wallet with an address of "0xcE7fD61737092Ac648fBC982Efc39b628a8713F9" the same day ("Bitsset Routing Wallet 2"), which in turn received thousands of Ether units from, and sent thousands of Ether units to, the Bitsset Wallet 1 during a series of transactions from on or about September 30 through October 1, 2017.   Based on the foregoing, I respectfully submit that there is probable cause to believe that the Bitsset Routing Wallet 1 and Bitsset Routing Wallet 2 are associated with the Bitsset Wallet 1.

Routing Wallet 4 received Ether units from a Centra token
purchaser, and does not disclose any transfers of Ether from
Bitset to Centra Tech after September 23, 2017, let alone a
transaction in which a digital wallet associated with Centra Tech
received 2,500 Ether units that are traceable to a transfer on or
about October 1, 2017 from the Bitset Routing Wallet 1.

      j.    Based on the foregoing, there is probable cause to
believe that Centra Tech has not accounted in the Summary
Spreadsheet for the likelihood that the 9,000 Ether units that
remain in the Seizure Wallet are traceable, in part, to 5,200 Ether
units that Centra Tech raised on or about October 1, 2017 from an
individual referred to by SHARMA as "Shin" who may be affiliated
with Bitset.[11]

---

[11]   I have been informed by representatives of the Government
that during recent communications between the Government and
SHARMA's current counsel, SHARMA has claimed through his counsel
that specified trading records of SHARMA's cryptocurrency trading
activities (via a cryptocurrency exchange called Coinbase) before
Centra Tech's ICO began in late July 2017 support SHARMA's claims
that the 9,000 Ether units remaining in the Seizure Wallet are
actually proceeds of his pre-ICO cryptocurrency trading, and not
ICO proceeds of the charged Subject Offenses. From my review of
these records, I have learned that these records reveal the
following, in substance and in part. During the period from on or
about May 23, 2017, when SHARMA opened a Coinbase account in his
name, through the end of July 2017, which is the month in which
Centra Tech's ICO began, SHARMA deposited about $111,040 into his
Coinbase account, acquired a total of approximately 471 Ether
units, and acquired a total of approximately 10.7 Bitcoin units
(worth about 131 Ether units as of or about July 26, 2017). While
this arguably shows that SHARMA had acquired 471 Ether units and

45

23.   By viewing the Etherscan Website earlier today, I was able to confirm that the Remaining Subject Property consisting of approximately 9,000 Ether units were in the Seizure Wallet as of this morning, and that the estimated value of the Remaining Subject Property is more than $1,855,000 at the current Ether-to-dollar exchange rate.

24.   Based on the facts set forth above, my participation in this investigation, and my consultations with other FBI agents, including one with significant training and experience in investigations of crimes involved digital currencies, I believe and respectfully submit that as long as the Remaining Subject Property was retrievable via the Seizure Wallet, there existed a significant danger that the Remaining Subject Property could be dissipated.   For example, as set forth above, SHARMA initially provided a false passcode to the Seizure Wallet, and although he eventually made the actual passcode to the Seizure Wallet available

---

other assets worth about 131 Ether units before Centra Tech's ICO began, it does not show that he possessed 9,000 Ether units before the ICO.   Furthermore, although requested to do so by the Government, SHARMA has not produced or identified any records of Ether transactions tracing SHARMA's pre-ICO Ether holdings to the 9,000 Ether units in the Seizure Warrant.   For these reasons and based on the other facts set forth in this Affidavit, these Coinbase trading records do not alter my belief that there is probable cause to believe that the remaining 9,000 Ether units in the Seizure Wallet are ICO proceeds of the charged Subject Offenses.

to the FBI after his co-defendant FARKAS was detained until the Prior Seizure Warrant was complied with, it is possible that he has retained a copy of the actual passcode to the Seizure Wallet. If SHARMA secretly maintained a copy of the actual passcode to the Seizure Wallet, he or an associate could use that copy of the passcode to dissipate the Remaining Subject Property via any computer with internet access.

25. I have been informed by representatives of the Government that during a telephone call earlier today between them and SHARMA's current counsel, the following occurred in substance and in part. The Government notified SHARMA through his counsel that the Government has uncovered evidence furnishing probable cause to seize the Remaining Subject Property (which SHARMA's counsel may have intended to use to cover his legal fees for representing SHARMA) and intended to seize the Remaining Subject Property. The Government asked SHARMA's counsel whether SHARMA possessed a copy of the passcode or other means of accessing the 9,000 Ether units that had been left in the Seizure Wallet, and SHARMA's counsel stated that he could not confirm or deny that without divulging privileged communications between himself and his client.

26. Based on the presence of exigent circumstances as long as the Remaining Subject Property was contained in the Seizure

47

Wallet (including (a) the significant danger that SHARMA could easily and swiftly dissipate the Remaining Subject Property using a copy of the passcode to retrieve the Remaining Subject Property from the Seizure Wallet, and (b) the fact that SHARMA's counsel was notified earlier today that the Government plans to seize the Remaining Subject Property from the Seizure Wallet), I transferred the Remaining Subject Property from the Seizure Wallet to a secure digital wallet maintained by the FBI earlier today, pursuant to Title 18, United States Code, Section 981(b)(2)(B)(ii).

27. Accordingly, I respectfully request that the instant warrant be granted to authorize this seizure of the Remaining Subject Property and to permit the FBI to retain the Remaining Subject Property in an FBI-maintained digital wallet until further order of the Court in order to preserve the Remaining Subject Property for forfeiture to the United States.

### SEIZURE AND FORFEITURE AUTHORITY

28. The statutory provisions pursuant to which the Remaining Subject Property is subject to seizure and forfeiture are as follows:

29. Title 18, United States Code, Section 981(a)(1)(C) subjects to civil forfeiture:

> [a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined

in section 1956(c)(7) of this title), or a conspiracy to
commit such offense.

18 U.S.C. § 1956(c)(7)(A) provides that the term "specified
unlawful activity" includes "any act or activity constituting an
offense listed in section 1961(1) of this title". Section 1961(1),
in turn, includes "section 1343 (relating to wire fraud)," and
"fraud in the sale of securities." In the case of "illegal goods,
illegal services, and unlawful activities," 18 U.S.C. §
981(a)(2)(A) defines the term "proceeds" as "property of any kind
obtained directly or indirectly, as the result of the commission
of the offense giving rise to forfeiture, and any property
traceable thereto." Accordingly, the Remaining Subject Property
is subject to civil forfeiture to the United States of America
pursuant to 18 U.S.C. §§ 981(a)(1)(C) as proceeds of the crimes of
conspiracy to commit, and the commission of, securities fraud and
wire fraud.

30.   Section 981(b)(1) of Title 18 provides that any property
subject to civil forfeiture to the United States under 18 U.S.C.
§ 981(a) may be seized by the Attorney General. Section 981(b)(2)
provides that such a seizure may be made "pursuant to a warrant
obtained in the same manner as provided for a search warrant under
the Federal Rules of Criminal Procedure."

49

31.  In addition, Section 981(b)(3) of Title 18 provides that, notwithstanding the provisions of Federal Rule of Criminal Procedure 41(a), a seizure warrant may be issued pursuant to Section 981(b) by a judicial officer in any district in which a forfeiture action against the property may be filed under Title 28, United States Code, Section 1355(b).  Under Section 1355(b)(1)(A), a forfeiture action or proceeding may be brought in the district in which any of the acts or omissions giving rise to the forfeiture occurred.  Section 981(b)(3) further provides a seizure warrant "may be executed in any district in which the property is found."

32.  For the foregoing reasons, the Remaining Subject Property is subject to both seizure and forfeiture, and a warrant for its seizure may be issued in the Southern District of New York, the district where some of the acts and omissions giving rise to the forfeiture occurred.

## CONCLUSION

33.  For the reasons set forth above, I respectfully request that the Court issue a seizure warrant pursuant to 18 U.S.C. § 981 for the Remaining Subject Property.

34.  Although the Indictment against three of Centra Tech co-founders SHARMA, TRAPANI and FARKAS has been unsealed, the full scope of the ongoing criminal investigation in this matter has not

been made public, including ongoing law enforcement efforts to determine whether any other co-conspirators involved in the Subject Offenses should be charged with criminal offenses and law enforcement efforts to identify any proceeds of the Subject Offenses, separate from and in addition to the Original Subject Property and the Remaining Subject Property, that are subject to forfeiture to the United States.

35. Accordingly, I also respectfully request that this Affidavit be sealed until further order of the Court so as not to jeopardize the ongoing investigation of this matter, except that the Government may without further order from this Court produce this Affidavit in the Criminal Case and in any other criminal or forfeiture proceedings as necessary to comply with any discovery and disclosure obligations.

Dated:     New York, New York
           October 22, 2018

BRANDON S. RACZ
Special Agent
Federal Bureau of Investigation

Sworn to before me this
22nd day of October, 2018:

HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

**It is hereby ORDERED that this Affidavit shall remain under seal until further Order of the Court (subject to the exceptions set forth in paragraph 35 above).**

SO ORDERED

HONORABLE KATHARINE H. PARKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF NEW YORK

52

**18 MAG 9989**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
9,000  ETHER  FROM  ETHER  WALLET  :
ADDRESS "0xdA6F983076725cB2899205  :
A16E16d1ed60a0067A,"                :
                                    :
- - - - - - - - - - - - - - - - - X

### WARRANT OF SEIZURE
### PURSUANT TO 18 U.S.C. § 981

TO:  ANY LAW ENFORCEMENT OFFICER AUTHORIZED BY LAW

An Affidavit having been made before me by Brandon S.
Racz, a Special Agent with the Federal Bureau of Investigation,
that he has reason to believe that the above-captioned property
is subject to seizure and forfeiture pursuant to 18 U.S.C. §
981(a)(1)(C), and as I am satisfied that there is probable cause
to believe that the property so described is subject to seizure
and forfeiture pursuant to said statute,

YOU ARE HEREBY COMMANDED AND AUTHORIZED to seize the
property described below by effectuating an electronic or digital
transfer over the internet, or by serving a copy of this warrant
of seizure upon any person or entity presently in possession or
control of the property and directing them to effectuate such a
transfer:

9,000   ETHER   FROM   ETHER   WALLET   ADDRESS
"0xdA6F983076725cB2899205A16E16d1ed60a0067A"

YOU ARE FURTHER COMMANDED AND AUTHORIZED to prepare a
written inventory of the property seized and promptly return this
warrant and inventory before this Court as required by law.

Dated:   New York, New York
         October 22, 2018

SO ORDERED:

HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

# EXHIBIT 3

From: "Axelrod, David L." <AxelrodD@ballardspahr.com>
Date: 4/12/18 8:37 PM (GMT-05:00)
To: "Donald J. Enright" <denright@zlk.com>
Subject: [External] Centra

Don –

1.  Centra will agree to a freeze of all of defendants' accounts containing ICO proceeds.  As I've told
    you before, all of the proceeds from the ICO went to the ETH wallet.  This includes proceeds that
    were originally sent in other currencies such as Bitcoin.  When Centra received Bitcoin it
    converted the Bitcoin to ETH and the ETH went to the ETH wallet.  Since November that wallet
    has contained 100,000 ETH, roughly equivalent to $45 million.

    Centra raised approximately 51,000 ETH from the ICO.  I've attached a summary showing when
    and how this ETH was collected.  The remainder of the assets in the ETH wallet are not proceeds
    from the ICO but Centra is amenable to freezing those assets as well.

    Centra funded its operations not through ICO proceeds, but in part by selling CTR on currency
    exchanges.  Accordingly, the money in Centra's bank account is not ICO proceeds.

2.  Centra will agree to a hold of all of Centra's records.  Indeed, currently all of Centra's electronic
    assets (computers, phones, etc.) are in the possession of DOJ.  Thus, these records will not be
    destroyed.

3.  Centra cannot agree that each Defendant provide an accounting because (a) DOJ has all of
    Centra's records; (b) Sharma and Farkas are detained; (c) Trapani knows nothing about the
    company; and (d) Hagner is dead.

Please let me know if these terms are agreeable.

Thanks,

Dave

**David L. Axelrod**

**Ballard Spahr** LLP

1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
215.864.8639 DIRECT
215.864.8999 FAX

202.277.3215 MOBILE | axelrodd@ballardspahr.com
VCARD

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
www.ballardspahr.com

**From:** Donald J. Enright [mailto:denright@zlk.com]
**Sent:** Wednesday, April 11, 2018 6:21 PM
**To:** Axelrod, David L. (Phila)
**Subject:** Centra

David-

The Court's order encouraged us to keep talking, and I haven't heard from you, so I thought I would reach out.  Do you want to have a call tomorrow afternoon to discuss?  Or should I just wait to see your opposition papers on Friday?

Please let me know.  Thanks.

Donald J. Enright, Esq.
LEVI&KORSINSKY LLP
1101 30th Street, NW
Suite 115
Washington, DC 20007
(202) 524-4292 (office direct)
(202) 333-2121 (facsimile)
(301) 455-4208 (mobile)
denright@zlk.com | www.zlk.com

Admitted in DC, MD and NJ.  Not admitted in NY, CT or CA.  This email message contains information belonging to the law firm of Levi & Korsinsky LLP, which may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the individual or entity named above. If you think you have received this message in error, please email the sender. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited.  This email is not intended to create an attorney-client relationship between you and Levi & Korsinsky LLP.  If you communicate with us in connection with a matter for which we do not already represent you, your communication may not be treated as privileged or confidential.  In some jurisdictions this email may be considered advertising.  Prior results do not guarantee similar outcomes.

# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 1:17-cv-24500-JLK

JACOB ZOWIE THOMAS RENSEL,
individually and on behalf of all others
similarly situated,

Plaintiff,

v.

CENTRA TECH, INC., SOHRAB SHARMA,
RAYMOND TRAPANI, ROBERT FARKAS,
and WILLIAM HAGNER,

Defendants.

## SUPPLEMENTAL DECLARATION OF DAVID L. AXELROD

I, David L. Axelrod, declare as follows:

1.      I am a member of good standing of the bar of the State of New York, the District

of Columbia, and the Commonwealth of Pennsylvania, and am admitted *pro hac vice* to

represent Centra Tech, Inc. Sohrab Sharma, Raymond Trapani, Robert Farkas, and William

Hagner (collectively "Defendants") in this matter.  This declaration is based on my own personal

knowledge of the matters stated herein.

2.      I submit this declaration in support of Defendants' Response to Plaintiff's

Renewed Motion For A Temporary Restraining Order, Asset Freeze, Document Preservation

Order, And Order To Make Accounting And Other Ancillary Relief.

3.      On or about April 1, 2018, defendants Sharma and Farkas were arrested pursuant

to a criminal complaint filed in the Southern District of New York.  They remain in federal

custody as of this filing, pending transfer to New York for an initial appearance and arraignment.

4.      In connection with that investigation, the Department of Justice ("DOJ") served comprehensive subpoenas on Centra Tech requiring, in effect, that Centra Tech hand over all of its records to DOJ.  On April 11, 2018, Centra Tech's office electronics, including workplace computers and employer-issued cellular telephones, were voluntarily turned over to the Federal Bureau of Investigation ("FBI").

5.      Also pursuant to the subpoenas, DOJ demanded that Centra Tech turn over the two halves of the private key, controlled by Robert Farkas and Allan Shutt.  On April 11, 2018, Mr. Shutt met with agents of the FBI and relinquished his half of the private key.

6.      On April 13, 2018, Centra Tech was served with a seizure warrant, a true and accurate copy of which is attached as Exhibit 1 to this Declaration.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of April 2018.

/s/ David L. Axelrod
David L. Axelrod

**18 MAG 3177**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x
91,000 ETHER CURRENTLY ON DEPOSIT :
IN    ETHER    WALLET    ADDRESS :
0xdA6F983076725cB2899205A16E16d1e :
d60a0067A                          :
- - - - - - - - - - - - - - - - - X

## WARRANT OF SEIZURE
### PURSUANT TO 18 U.S.C. § 981

TO:   ANY LAW ENFORCEMENT OFFICER AUTHORIZED BY LAW

An Affidavit having been made before me by Kristin Allain, a Special Agent with the Federal Bureau of Investigation, that she has reason to believe that the above-captioned property is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), and as I am satisfied that there is probable cause to believe that the property so described is subject to seizure and forfeiture pursuant to said statute,

YOU ARE HEREBY COMMANDED AND AUTHORIZED to seize the property described below by effectuating an electronic or digital transfer over the internet, or by serving a copy of this warrant of seizure upon any person or entity presently in possession or control of the property and directing them to effectuate such a transfer:

91,000 ETHER CURRENTLY ON DEPOSIT IN ETHER WALLET ADDRESS 0xdA6F983076725cB2899205A16E16d1ed60a0067A

YOU ARE FURTHER COMMANDED AND AUTHORIZED to prepare a written inventory of the property seized and promptly return this warrant and inventory before this Court as required by law.

Dated:   New York, New York
         April 13, 2018

SO ORDERED:

_____
THE HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

# EXHIBIT 5

United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Jacob Zowie Thomas Rensel and others, Plaintiff, | ) ) ) |
| v. | ) ) ) |
| Centra Tech, Inc. and others, Defendants. | ) ) ) |

Civil Action No. 17-24500-Civ-Scola

## Order Granting Plaintiffs' Motion for Default Judgment

Consistent with Federal Rule of Civil Procedure 55(b)(2), the Plaintiffs seek the Court's entry of a default judgment against Defendant Centra Tech, Inc. ("Centra Tech"). A Clerk's default was entered against Centra Tech on January 30, 2019. (ECF No. 169.) Centra Tech moved to set aside the Clerk's default on June 15, 2019 (ECF No. 214), but the Court denied Centra Tech's motion on September 12, 2019. (ECF No. 234.) The Plaintiffs motion is now properly before this Court.

### I.    Background

In December of 2017, the Plaintiffs in this case filed a class action complaint against Defendant Centra Tech and a number of related individuals. Defendant Centra Tech, a company founded in May 2016, purported to sell cryptocurrency, "Centra Tech Tokens" or "CTR Tokens," in an initial coin offering ("ICO"). The ICO allegedly raised funds for, among other things, a debit card backed by Visa and Mastercard that would allow users to instantly use cryptocurrencies to make purchases. Between July 23, 2017 and April 20, 2018, Centra Tech's ICO raised more than $32 million from thousands of investors. The founders of Centra Tech, Defendants Sharma, Farkas, and Trapani are currently the subjects of an SEC enforcement action for securities fraud (*S.E.C. v. Sharma et al.,* No. 18-cv-2909-DLC (S.D.N.Y.)[1] and are being criminally prosecuted in the Southern District of New York for the fraudulent Centra Tech scheme. *United States v. Sharma et al.,* No. 18-cr-340-LGS (S.D.N.Y.).

This case was originally filed against nine defendants; some are co-conspirators in the criminal case, while others were only peripherally involved with the alleged sale of false securities. The Court granted motions to dismiss as

---

[1] The SEC action is currently stayed during the pendency of the criminal prosecution.

to a handful of Defendants and the Plaintiffs voluntarily dismissed the remaining individual Defendants. The only remaining Defendant is Centra Tech.

## II. Legal Standard

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a defendant who fails to plead or otherwise defend. Fed. R. Civ. P. 55(b)(2). A "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," as set forth in the operative complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). In issuing a default judgment, a court may award damages "without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation," as long as "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005) (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)).

## III. Analysis

### A. Violation of Section 12(a)(1) of the Securities Act

Section 12(a)(1), 15 U.S.C. § 77l(a)(1), of the Securities Act creates a private right of action against any person who "offers or sells a security in violation of" Section 5, 15 U.S.C. § 77e, of the Securities Act. *See, e.g., Raiford v. Buslease, Inc.*, 825 F.2d 351, 353 (11th Cir. 1987). In order to establish liability under Section 12(a)(1), a Plaintiff must prove (1) the defendants sold or offered to sell securities; (2) no registration statement was in effect as to the securities; and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale. *SEC v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017).

A transaction or an investment contract qualifies as a security if it is: (1) an investment of money; (2) in a common enterprise; (3) with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. *SEC v. R.G. Reynolds Enters.*, 952 F.2d 1125, 1130 (9th Cir. 1991) (*citing Hocking v. Dubois*, 885 F.2d 1449, 1455 (9th Cir. 1989) (*en banc*), *cert. denied*, 494 U.S. 1078 (1990)).

Here, each of these elements is present. First, Plaintiffs invested Bitcoin, Ethereum, and other digital currencies to purchase CTR Tokens. (ECF No. 97 at ¶¶ 3, 32-41, 316.) As this Court has already recognized, under established law, an investment of cryptocurrency constitutes an "investment of money." (ECF No. 79 at 9-10 (citing *SEC v. Friendly*, 49 F. Supp. 2d 1363, 1368-69 (S.D. Fla. 1999) (King, J.))).

Second, by purchasing CTR Tokens, Plaintiffs invested in a "common enterprise" with Defendant Centra Tech and its founders. In the Eleventh Circuit, "a common enterprise exists where the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment." *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999) (citation and quotations omitted). As this Court has recognized, "the fortunes of individual investors in the Centra Tech ICO were directly tied to the failure or success of the products the Defendants purported to develop," and "[a]n individual investor could exert no control over the success or failure of this investment." (ECF NO. 79 at 10.) Plaintiffs have thus established the existence of a common enterprise.

Third, the "reasonable expectation of profit" prong is satisfied when "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Bamert v. Pulte Home Corp.*, 445 Fed. App'x 256, 262 (11th Cir. 2011) (quoting *Williamson v. Tucker*, 645 F.2d 404, 418 (11th Cir. 1981)). Here, because the success of the CTR Tokens purchased by Plaintiffs was entirely dependent on the efforts and actions of the Defendant, the third prong is satisfied. Accordingly, the offering of CTR Tokens was an investment contract under the Securities Act, such that the Defendant sold or offered to sell securities by virtue of the Centra Tech ICO.

Additionally, no registration statement was ever filed with the SEC in connection with the Centra Tech ICO or CTR Tokens, ECF No. 97 at ¶ 82, nor has Centra Tech ever claimed that any such a registration was filed or in effect. Finally, Centra Tech utilized "an instrumentality of interstate commerce," by marketing and selling CTR Tokens on the internet, including through the Centra Tech Token Sale Home Page and the Centra Tech Smart Contracts. *Id.* at ¶ 315; ECF No. 79 at 11 (*citing SEC v. Levin*, No. 12-cv-21917, 2013 WL 594736, at *12 (S.D. Fla. Feb. 14, 2013) (King, J.) ("the Internet which necessarily includes email, is an 'instrumentality of interstate commerce.'")).

Based on the foregoing, Plaintiffs have established a sufficient basis for relief under Section 12(a)(1) and thus, the Court may proceed to determine the appropriate damages.

## B. Violation of Section 10(b) and SEC Rule 10b-5

Centra Tech is also liable under Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder. The elements of a securities fraud claim under Rule 10b are: "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *In re: Altisource Portfolio Sols., S.A. Sec. Litig.*, No. 14-

81156-CIV- WPD, 2015 WL 11988900, at *5 (S.D. Fla. Dec. 22, 2015) (citing *In re Alstom SA*, 406 F. Supp. 2d 433, 474 (S.D.N.Y. 2005)).

Here, Centra Tech made numerous material misrepresentations. (ECF No. 97 at ¶¶ 216-242.) It claimed that the Centra Tech Debit Card would be able to operate on Visa and Mastercard networks and allow users to make transactions in digital currencies in "real time." (*Id.* at ¶ 230.) However, Centra Tech was never authorized to use the Visa or Mastercard networks and the Centra Tech Debit Card never allowed users to make digital currency transactions in real time. Centra Tech also fabricated fictional executives who they claimed were working with Centra Tech, touted Centra Tech's nonexistent insurance policy, and made false claims regarding state licenses to increase investor confidence and solicit additional purchases of CTR Tokens. (*Id.* at ¶¶ 270-285; 286-291; 292-299.) Centra Tech made these statements to induce Plaintiffs and the general public to invest in more unregistered CTR Token securities and as part of a scheme to artificially inflate the value of the patently worthless unregistered CTR Token securities. (*Id.* at ¶¶ 336.)

Centra Tech made these material misrepresentations with the requisite scienter because the misrepresentations were either intentional or made with reckless disregard for accuracy for the purposes of (a) personal financial gain; (b) inflating market demand for CTR Tokens during the Centra ICO; and (c) securing additional financing to continue as a growing concern. (*Id.* at ¶ 322-325.) Centra Tech had actual knowledge that: (i) Centra Tech had not been authorized to use the Centra Card on the Visa or Mastercard networks; (ii) the Company was not in a "partnership" with Bancorp"; (iii) both Edwards and Robinson were fictional persons and Defendant Trapani had not attended UCLA; (iv) Centra Tech did not have insurance during the official Centra Tech ICO; (v) the Company lacked any state money transmitter licenses during the Centra Tech ICO; and (vi) the certain named Defendants were not Centra Tech's managing partners. (*Id.* at ¶ 323.) Indeed, on July 17, 2019, one of the Centra Tech founders, Defendant Trapani, pled guilty to the identical fraudulent scheme Plaintiffs' Exchange Act claims are premised on. *See U.S. v. Trapani*, S1-18-Cr-340 (LGS) (S.D.N.Y.), ECF No. 147.

Finally, the Plaintiffs relied upon Defendants' false statements in deciding to purchase CTR Tokens during the ICO or on cryptocurrency exchanges at artificially inflated prices. (ECF No. 97 at ¶ 340; ECF No. 260-2 at ¶ 5; ECF No. 260-3 at ¶ 3; ECF No. 212-7 at ¶¶ 14–16; ECF No. 212-8 at ¶¶ 14–16; ECF No. 260-4 at ¶ 4, ECF No. 260-5 at ¶ 5; ECF No. 260-6 at ¶ 3.)

Based on the foregoing, the Plaintiffs have established a sufficient basis for relief under Section 10(b) and Rule 10b-5 and thus, the Court may determine the appropriate amount of damages.

## C. Damages

In seeking a default judgment, the Plaintiffs bear the burden of proving damages. They may do so through affidavits and other documentary evidence showing the amount and calculation of damages. *Tara Prods. Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011). "Where all the essential evidence is on record, an evidentiary hearing on damages is not required." *Empire Today, LLC v. Monblatt*, No. 18-cv-61219, 2019 WL 1491701, at *2 (S.D. Fla. April 4, 2019) (Bloom, J.) (citations and quotations omitted). *See also SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone. We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted).

"Damages under § 12(a)(2) are measured by the difference between (i) the amount of consideration the plaintiff originally paid for the security, plus prejudgment interest, less (ii) the amount for which the plaintiff sold the [security], together with any income the plaintiff received on the security.'" *In re MetLife Demutualization Litig.*, 624 F. Supp. 2d 232, 271 (E.D.N.Y. 2009).

Because investors invested using BTC or ETH, the Securities Act requires that Plaintiffs' Section 12 damages be calculated in terms of BTC or ETH. In providing a damages remedy for those who have sold their original securities, the Securities Act sought to put these injured investors back to their original, pre-investment position, thus effectuating the "substantial equivalent of rescission." *Pinter v. Dahl*, 486 U.S. 622, 641, n.18 (1988) ("Section 12 was adapted from common- law (or equitable) rescission, … which provided for restoration of the status quo by requiring the buyer to return what he received from the seller. The statute, however, differs significantly from the source material. In particular, it permits the buyer who has disposed of the security to sue for damages … This damages calculation results in what is the substantial equivalent of rescission.")

Accordingly, the proper computation of Plaintiffs' damages is the value of the BTC or ETH consideration paid for CTR Tokens reduced by the amount realized through that sale of CTR Tokens on the date of sale, if any. *See, e.g., Kane v. Shearson Lehman Hutton, Inc.*, 916 F.2d 643, 646 (11th Cir. 1990) (equating the damages provision in Section 12 of the Securities Act to the damages provided by Fla. Stat. § 517.211 and stating that such rescissory relief entitles a purchaser to "rescind his purchase, or, if he has already sold at a loss, to be put by an award of damages in as good a position as if he had rescinded the transaction").

This method of computation is consistent with the proper method of computing Plaintiffs' damages under Section 10(b). Where, as here, the defendant acquires Plaintiffs' property through fraudulent conduct, "damages

are the amount of the defendant's profit." *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 155 (1972); *see also Pidcock v. Sunnyland America, Inc.*, 854 F.2d 443, 446 (11th Cir. 1988) ("once it has been determined that a purchaser acquired property by fraud, any profit subsequently realized . . . should be deemed the proximate cause of the fraud."). Here, Centra Tech realized profits through the appreciation of the BTC and ETH it acquired from Plaintiffs through fraud. Plaintiffs are entitled to retain the benefit of that appreciation under both Section 12 of the Securities Act and Section 10(b) of the Exchange Act. *Scheck Investments, L.P. v. Kensington Management, Inc.*, No. 04-21160, 2009 WL 1916501, at *4 (S.D. Fla. July 2, 2009) (Moreno, J.) ("Disgorgement of ill-gotten gains or profits from one who sells securities in violation of federal securities law is an accepted remedy in our Circuit.").

### i. Plaintiff Rensel's Losses: $350.10

Plaintiff Rensel purchased 13,369 CTR Tokens in exchange for 23.4 ETH. When Rensel sold those CTR Tokens he received BTC worth less than 23.4 ETH. (ECF No. 260-2 at ¶ 6.) Specifically, he received 1.18964396 BTC, then worth 23.1228 ETH. (*Id.* ¶ 7–8.) Accordingly, Rensel's total losses as a result of investing in CTR Tokens is 1.177 ETH. (*Id.* ¶ 9.) The dollar value of Rensel's total losses as a result of investing in CTR Tokens is $350.10. (*Id.* ¶ 10.) Rensel is thus entitled to a judgment against Centra Tech in the amount of $350.10.

### ii. Plaintiff He's Losses: $2,672,864.54

Plaintiff He purchased 1,283,717 CTR Tokens in exchange for 203.0054 BTC and 511.35 ETH. (ECF No. 260-3 at ¶ 4.) When He sold those CTR Tokens, he received less than 66.7 BTC in exchange. (*Id.* at ¶ 5.) He's total losses as a result of his investment in CTR Tokens is 136.3069 BTC and 511.35 ETH. (*Id.* at ¶ 6.) The dollar value of that BTC and ETH on the dates of He's sales was $2,672,864.54. (*Id.* at ¶¶ 7-10.) He is thus entitled to a judgment against Centra Tech in the amount of $2,672,864.54.

### iii. Plaintiff Chi Hao Poon's Losses: $111,331.20

Plaintiff Poon purchased 68,000 CTR Tokens in exchange for 160 ETH. (ECF No. 97 at ¶ 40.) Accordingly, Plaintiff Poon's total losses from investing in CTR Tokens is 160 ETH. On December 14, 2017, the date the complaint and summons in this action were served upon Defendant Centra Tech, the average closing price of ETH was $695.82. (ECF No. 260-3 at 27.) Accordingly, the dollar value of Poon's total losses as a result of investing in CTR Tokens is $111,331.20. Poon is thus entitled to a judgment against Centra Tech in the amount of $111,331.20.

#### iv. Plaintiff King Fung Poon's Losses: $69,582

Plaintiff King Fung Poon purchased 56,000 CTR Tokens in exchange for 100 ETH. (ECF No. 97 at ¶ 42.) Accordingly, Plaintiff King Fung Poon's total losses from investing in CTR Tokens are 100 ETH. On December 14, 2017, the date the complaint and summons in this action were served upon Defendant Centra Tech, the average closing price of ETH was $695.82. (ECF No. 260-3 at 27.) Accordingly, the dollar value of King Fung Poon's total losses as a result of investing in CTR Tokens is $69,582. King Fung Poon is thus entitled to a judgment against Centra Tech in the amount of $69,582.

#### v. Plaintiff Lee's Losses: $20,874.60

Plaintiff Lee purchased 6,000 CTR Tokens in exchange for 30 ETH. (ECF No. 260-4 at ¶ 5.) Accordingly, Plaintiff Lee's total losses from investing in CTR Tokens are 30 ETH. (*Id.* ¶ 6.) On December 14, 2017, the date the complaint and summons in this action were served upon Defendant Centra Tech, the average closing price of ETH was $695.82. (*Id.* ¶ 7.) Accordingly, the dollar value of Lee's total losses as a result of investing in CTR Tokens is $20,874.60. (*Id.* ¶ 9.) Lee is thus entitled to a judgment against Centra Tech in the amount of $20,874.60.

#### vi. Plaintiff Ganczarek's Losses: $28,265.30

Plaintiff Ganczarek purchased 8,204.99 CTR Tokens in exchange for 40 ETH and 0.026111 BTC. (ECF No. 260-5 at ¶ 5.) Accordingly, Plaintiff Ganczarek's total losses from investing in CTR Tokens are 40 ETH and 0.026111 BTC. (*Id.* ¶ 7.) On December 14, 2017, the date the complaint and summons in this action were served upon Defendant Centra Tech, the average closing price of ETH was $695.82 and the average closing price of BTC was $16,564. (*Id.* ¶ 8.) Accordingly, the dollar value of Ganczarek's total losses as a result of investing in CTR Tokens is $28,265.30. (*Id.* ¶ 10.) Ganczarek is thus entitled to a judgment against Centra Tech in the amount of $28,265.30.

#### vii. Plaintiff Warren's Losses: $33,648.90

Plaintiff Warren purchased 39,528 CTR Tokens in exchange for 1.75796768 BTC. (ECF No. 260-6 at ¶ 4.) Accordingly, Plaintiff Warren's total losses from investing in CTR Tokens are 1.75796768 BTC. (*Id.* ¶ 6.) On December 17, 2017, the date of his investment, and four days after the complaint and summons in this action were served upon Defendant Centra Tech, the average closing price of BTC was $19,140.80. (*Id.* ¶ 5.) Accordingly, the dollar value of Warren's total losses as a result of investing in CTR Tokens is $33,648.90. (*Id.* ¶

7.) Warren is thus entitled to a judgment against Centra Tech in the amount of $33,648.90.

## IV. Conclusion

Based on the foregoing, the Court **grants** the Plaintiffs' Motion for Default Judgment against Centra Tech. (**ECF No. 260.**) The Court grants the following relief:

      i.    Judgment is hereby entered in favor of Plaintiff Jacob Zowie Thomas Rensel and against Centra Tech in the amount of **$350.10** plus prejudgment interest at the rate set forth in Fla. Stat. § 55.03 beginning on July 23, 2017 and post-judgment interest at the statutory rate set forth in 28 U.S.C. §1961 until the judgment is satisfied.

      ii.    Judgment is hereby entered in favor of Plaintiff Wang Yun He and against Centra Tech in the amount of **$2,672,864.54** plus prejudgment interest at the rate set forth in Fla. Stat. § 55.03 beginning on July 23, 2017 and post-judgment interest at the statutory rate set forth in 28 U.S.C. §1961 until the judgment is satisfied.

      iii.    Judgment is hereby entered in favor of Plaintiff Chi Hao Poon and against Centra Tech in the amount of **$111,331.20** plus prejudgment interest at the rate set forth in Fla. Stat. § 55.03 beginning on July 23, 2017 and post-judgment interest at the statutory rate set forth in 28 U.S.C. §1961 until the judgment is satisfied.

      iv.    Judgment is hereby entered in favor of Plaintiff King Fung Poon and against Centra Tech in the amount of **$69,582** plus prejudgment interest at the rate set forth in Fla. Stat. § 55.03 beginning on July 23, 2017 and post-judgment interest at the statutory rate set forth in 28 U.S.C. §1961 until the judgment is satisfied.

      v.    Judgment is hereby entered in favor of Plaintiff Jae J. Lee and against Centra Tech in the amount of **$20,874.60** plus prejudgment interest at the rate set forth in Fla. Stat. § 55.03 beginning on July 23, 2017 and post-judgment interest at the statutory rate set forth in 28 U.S.C. §1961 until the judgment is satisfied.

      vi.    Judgment is hereby entered in favor of Plaintiff Mateusz Ganczarek and against Centra Tech in the amount of **$28,265.30** plus prejudgment interest at the rate set forth in Fla. Stat. § 55.03 beginning on July 23, 2017 and post-judgment interest at the statutory rate set forth in 28 U.S.C. §1961 until the judgment is satisfied.

vii.    Judgment is hereby entered in favor of Plaintiff Rodney Warren and against Centra Tech in the amount of **$33,648.90** plus prejudgment interest at the rate set forth in Fla. Stat. § 55.03  beginning on July 23, 2017 and post-judgment interest at the statutory rate set forth in 28 U.S.C. §1961 until the judgment is satisfied.

The Plaintiffs' motions to strike (**ECF No. 223**), Centra Tech's motion to quash (**ECF No. 242**), Defendant Sharma's motion to quash (**ECF No. 243**), and Plaintiffs' motion to strike (**ECF No. 252**) are **denied** as moot. The case will remain open as the Plaintiffs motions for sanctions (ECF Nos. 222, 230, 232) are still under consideration by Magistrate Judge Becerra.

**Done and ordered**, in chambers, in Miami, Florida on December 13, 2019.

Robert N. Scola, Jr.
United States District Judge

# EXHIBIT 6

United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Jacob Zowie Thomas Rensel and others, Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 17-24500-Civ-Scola |
| Centra Tech, Inc. and others, Defendants. | ) ) ) |

### Order Denying Plaintiff's Motion for Reconsideration

This matter is before the Court on Defendant's motion for reconsideration of the Court's Order granting the Plaintiffs' Motion for Default Judgment. (ECF Nos. 264.) The Plaintiffs filed a response (ECF No. 265) and the Defendant replied (ECF No. 266.) The Court held a hearing on the Defendant's motion on January 31, 2020. The motion is now ripe for the Court's review.

## I.  Background

In December of 2017, the Plaintiffs in this case filed a class action complaint against Defendant Centra Tech and a number of related individuals. Defendant Centra Tech, a company founded in May 2016, purported to sell cryptocurrency, "Centra Tech Tokens" or "CTR Tokens," in an initial coin offering ("ICO"). The ICO allegedly raised funds for, among other things, a debit card backed by Visa and Mastercard that would allow users to instantly use cryptocurrencies to make purchases. Between July 23, 2017 and April 20, 2018, Centra Tech's ICO raised more than $32 million from thousands of investors. The founders of Centra Tech, Defendants Sharma, Farkas, and Trapani are currently the subjects of an SEC enforcement action for securities fraud (*S.E.C. v. Sharma et al.,* No. 18-cv-2909-DLC (S.D.N.Y.)[1] and are being criminally prosecuted in the Southern District of New York for the fraudulent Centra Tech scheme. *United States v. Sharma et al.,* No. 18-cr-340-LGS (S.D.N.Y.).

This case was originally filed against nine defendants; some are co-conspirators in the criminal case, while others were only peripherally involved with the alleged sale of false securities. The Court granted motions to dismiss as to a handful of Defendants and the Plaintiffs voluntarily dismissed the remaining individual Defendants. The only remaining Defendant is Centra Tech.

---

[1] The SEC action is currently stayed during the pendency of the criminal prosecution.

Centra Tech failed to timely respond to the pleadings in this case and the Court granted default judgment against Centra Tech on December 13, 2019. (ECF No. 263.) Centra Tech now petitions this Court to reconsider its damages calculation in the default judgment order. (ECF No. 264.) For the reasons stated below, the Court denies Centra Tech's motion.

## II.    Legal Standard

The decision to grant or deny a motion for reconsideration is committed to the district court's sound discretion. *See Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000) (reviewing reconsideration decision for abuse of discretion). Reconsideration is appropriate only in very limited circumstances, such as where "the Court has patently misunderstood a party, where there is an intervening change in controlling law or the facts of a case, or where there is manifest injustice." *See Vila v. Padron*, No. 04-20520, 2005 WL 6104075, at *1 (S.D. Fla. Mar. 31, 2005) (Altonaga, J.). "Such problems rarely arise and the motion to reconsider should be equally rare." *See id.* (citation omitted). In order to obtain reconsideration, "the party must do more than simply restate its previous arguments, and any arguments the party failed to raise in the earlier motion will be deemed waived." *See id.* "[A] motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (Hoeveler, J.).

## II.    Analysis

The Plaintiffs argue that Centra Tech failed to meet and confer with Plaintiffs' counsel regarding their motion for reconsideration. (ECF No. 11 at 9.) "Pursuant to Local Rule 7.1(a)(3), Defendant's counsel was required to confer with Plaintiff's counsel in a good faith effort to attempt to resolve the dispute and reduce the time, money, and energy expended in this matter." *Hoyos v. Albertelli*, No. 17-24514, 2019 U.S. Dist. LEXIS 31391, at *4-*5 (S.D. Fla. Feb. 27, 2019) (Becerra, Mag. J.). Local Rule 7.1 requires movant's counsel to "confer (orally or in writing)" or "make reasonable effort to confer (orally or in writing)" with all parties "in a good faith effort to resolve by agreement the issues to be raised in the motion." *Id.*

Although Centra Tech asserts that the mistake was inadvertent, there is no indication that Centra Tech attempted to confer later or "remedy its lack of conferral with Plaintiff's counsel." *Id.* at *5. On this basis alone, the Court may deny the Defendant's motion. *See id.* Nevertheless, the Court will address the parties' remaining arguments.

The Plaintiffs also raise Centra Tech's failure to cite to Rule 60(b) as grounds for seeking reconsideration. (ECF No. 265 at 9.) Centra Tech responds by asserting that it intended to seek relief under Rule 59(e). (ECF No. 266 at 2.) Federal Rule of Civil Procedure 59(e) provides that a party may file a motion to alter or amend a judgment within 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). "Rule 58 governs entry of judgment and generally requires that a judgment be set out in a separate document. Thus, where a judgment has not been set out in a separate document even though one is required, the time to act under Rule 59(e) is not implicated." *Instituform Tech., Inc. v. Amerik Supplies, Inc.*, 840 F. Supp. 2d 1336, 1348 (N.D. Ga. 2012) (citing *Jackson v. Crosby*, 375 F.3d 1291, 1293 n.5 (11th Cir. 2004)).

Here, the Defendant filed the motion for reconsideration the same day that the Court entered its Order on Default Judgment. (*See* ECF Nos. 263, 264.) A judgment was not set out in a separate document and therefore a motion under Rule 59(e) was premature. Moreover, the "exclusive method for attacking a default judgment in the district court is by way of a Rule 60(b) motion." *Nat'l Loan Acquisitions Co. v. Pet Friendly Inc.*, 743 F. App'x 390, 391 (11th Cir. 2018). Accordingly, the Court will apply Rule 60(b) to the Defendant's motion.

Under Rule 60(b), the Court may relieve a party from a final judgment, order, or proceeding if there is a showing of mistake, fraud, inadvertence, misconduct, newly discovered evidence, or if the judgment is void. *See Am. Bankers Ins. Co. of Fla. V. Northwestern Nat'l Ins. Co.*, 198 F.3d 1332, 1337 n.4 (11th Cir. 1999). Here, Centa Tech fails to put forth any argument as to why the Court should reconsider its Order.

Damages under § 12(a)(2) of the Securities Act "are measured by the difference between (i) the amount of consideration the plaintiff originally paid for the security, plus prejudgment interest, less (ii) the amount for which the plaintiff sold the [security], together with any income the plaintiff received on the security.'" *In re MetLife Demutualization Litig.*, 624 F. Supp. 2d 232, 271 (E.D.N.Y. 2009). Because investors purchased CTR Tokens using Bitcoin or Ethereum, the Securities Act requires that Plaintiffs' damages be calculated in terms of Bitcoin or Ethereum in order to place the Plaintiffs back in their pre-investment position. *See Pinter v. Dahl*, 486 U.S. 622, 641, n.18 (1988) ("Section 12 was adapted from common- law (or equitable) rescission, ... which provided for restoration of the status quo by requiring the buyer to return what he received from the seller.). *See also Hodges v. Harrison*, 372 F. Supp. 3d 1342, 1353 (S.D. Fla. 2019) (Middlebrooks, J.) (calculating damages in terms of value of "cryptocurrency wrongfully taken from Defendants").

The basis of Centra Tech's argument is that the Court should calculate damages using the dollar value of the cryptocurrency originally paid by each

Plaintiff to purchase CTR Tokens. (ECF No. 264 at 6.) The Plaintiffs, however, did not use U.S. dollars to pay for the CTR Tokens and this measure of damages would not place investors back in their pre-investment position. Accordingly, the Court finds no basis to reconsider its prior ruling.

## IV.    Conclusion

Based on the foregoing, the Defendant's motion for reconsideration is **denied**. (**ECF No. 264**.)

**Done and ordered** at Miami, Florida on February 3, 2020.

Robert N. Scola, Jr.
United States District Judge

# EXHIBIT 7

# United States District Court

## SOUTHERN  DISTRICT OF NEW YORK

JUDGMENT NO. **1:20-mc-00232**                                      DOCKET NO. **1-4**

THE PRESIDENT OF THE UNITED STATES OF AMERICA
To the Marshal of the Southern District of New York, GREETING:

YOU ARE COMMANDED, that of the goods and chattels of _Centra Tech, Inc., held in the possession of The Department of Justice, Southern_ District of New York, accessible at Ethereum Wallet Nos.: 0xc8E0C9ba619f64c948B065a70f4085FDBAf9316 nd 0x7f98B3890b57992Ba0A328698E0920921332F32C; and including those goods and  chattels of entra Tech, Inc. seized in connection with the criminal prosecution, USA v. Sharma, et. al., Case No. 1:18-r-00340

in your district you cause to be made the sum of _____

           **Four Hundred and seven** _____ dollars and __ **Seventy-Nine** cents, ($ **407.79** _____ )

which lately in the United States District Court of the United States for the Southern District of New York, in the Second

Circuit, _____ **Plaintiff Jacob Zowie Thomas Rensel** _____

recovered against the said **Centra Tech, Inc.** _____

in an action between ____ **Jacob Zowie Thomas Rensel** _____

PLAINTIFF and __ **Centra Tech, Inc.** _____

DEFENDANT, in favor of said ____ **Jacob Zowie Thomas Rensel** _____

as appears by the record filed in the Clerk's Office of said District Court on the _____ **Sixteenth** _____ day

of _____ **June** _____, in the year of ____ **2020** ____

and if sufficient personal property of the said judgment debtor cannot be found in your District, that then you cause the same to be made out of the real property belonging to such judgment debtor on the above-mentioned day, or at any time thereafter, in whose hands soever the same may be, and return this execution within sixty days after its receipt by you, to the Clerk of said District Court.

WITNESS, the Honorable Colleen McMahon, Chief Judge of the United States District Court, for the Southern District of New York, at the City of New York, on the ___ 8ᵗʰ ___ day of _____ August _____ in the year of our Lord _____ 2020 _____, and of the Independence of the United States the two hundred forty fourth _____ year.

_____
CLERK

United States District Court
SOUTHERN DISTRICT OF NEW YORK

**Zowie**

-against-

**Centra Tech, Inc.**

EXECUTION AGAINST PROPERTY

**Sebastiano Tornatore**

Attorney for

**Jacob Zowie Thomas Rensel**

Borough of Manhattan
City of New York

To the Marshal:
You will levy and collect

**FOUR HUNDRED AND SEVEN**                    Dollars

and            **SEVENTY NINE**                  cents.

with interest from the        **Sixteenth**

day of            **June**            ,    **2020**    ,

besides your fees, etc.

_____
                                Attorney

# United States District Court

## SOUTHERN DISTRICT OF NEW YORK

JUDGMENT NO. **1:20-mc-00267**                    DOCKET NO. **1-2**

THE PRESIDENT OF THE UNITED STATES OF AMERICA
To the Marshal of the Southern District of New York, GREETING:

YOU ARE COMMANDED, that of the goods and chattels of Centra Tech, Inc., held in the possession of The Department of Justice, Southern District of New York, accessible at Ethereum Wallet Nos.: 0xc8E0C9ba619f64c948B065a70f4085FDBAf931 and 0x7f98B3890b57992Ba0A328698E0920921332F32C; and including those goods and chattels of Centra Tech, Inc. seized in connection with the criminal prosecution, USA v. Sharma, et. al., Case 1:18-cr-00340

in your district you cause to be made the sum of _____

_____ **Eighty-One Thousand, Forty Eight** _____ dollars and _____ **Sixty-Seven** _____ cents, ($ **81,048.67** _____ )

which lately in the United States District Court of the United States for the Southern District of New York, in the Second

Circuit, _____ **Plaintiff King Fung Poon** _____

recovered against the said **Centra Tech, Inc.** _____

in an action between _____ **King Fung Poon** _____

PLAINTIFF and _____ **Centra Tech, Inc.** _____

DEFENDANT, in favor of said _____ **King Fung Poon** _____

as appears by the record filed in the Clerk's Office of said District Court on the _____ **Thirtieth** _____ day

of _____ **July** _____, in the year of _____ **2020** _____

and if sufficient personal property of the said judgment debtor cannot be found in your District, that then you cause the same to be made out of the real property belonging to such judgment debtor on the above-mentioned day, or at any time thereafter, in whose hands soever the same may be, and return this execution within sixty days after its receipt by you, to the Clerk of said District Court.

WITNESS, the Honorable Colleen McMahon, Chief Judge of the United States District Court, for the Southern District of New York, at the City of New York, on the ___8ᵗʰ___ day of ___August___ in the year of our Lord ___2020___, and of the Independence of the United States the two hundred ___forty___ fourth ___ year.

_____
CLERK

United States District Court

SOUTHERN DISTRICT OF NEW YORK

Poon

-against-

Centra Tech, Inc.

EXECUTION AGAINST PROPERTY

Sebastiano Tornatore

Attorney for

King Fung Poon

Borough of Manhattan
City of New York

To the Marshal:
You will levy and collect

eighty-one thousand, forty eight    Dollars

and            sixty-seven                    cents,

with interest from the       Thirtieth

day of           July                ,        2020      .

besides your fees, etc.

Attorney

# United States District Court

## SOUTHERN  DISTRICT OF NEW YORK

JUDGMENT NO. **1:20-mc-00268**                    DOCKET NO. **1-2**

THE PRESIDENT OF THE UNITED STATES OF AMERICA
To the Marshal of the Southern District of New York, GREETING:

YOU ARE COMMANDED, that of the goods and chattels of **Centra Tech, Inc., held in the possession of The Department of Justice, Southern** District of New York, accessible at Ethereum Wallet Nos.: 0xc8E0C9ba619f64c948B065a70f4085FDBAf9316 nd 0x7f98B3890b57992Ba0A328698E0920921332F32C; and including those goods and  chattels of entra Tech, Inc. seized in connection with the criminal prosecution, USA v. Sharma, et. al., Case No. 1:18- -00340

in your district you cause to be made the sum of _____
**Thirty-Two Thousand, Nine Hundred Twenty**
**Three** _____ dollars and **Twenty-Four** cents, ($ **32,923.24** )

which lately in the United States District Court of the United States for the Southern District of New York, in the Second

Circuit, _____ **Plaintiff Mateusz Ganczarek** _____

recovered against the said **Centra Tech, Inc.** _____

in an action between _____ **Plaintiff Matuesz Ganczarek** _____

PLAINTIFF and _____ **Centra Tech, Inc.** _____

DEFENDANT, in favor of said _____ **Plaintiff Mateusz Ganczarek** _____

as appears by the record filed in the Clerk's Office of said District Court on the _____ **Thirtieth** _____ day

of _____ **July** _____, in the year of _____ **2020** _____

and if sufficient personal property of the said judgment debtor cannot be found in your District, that then you cause the same to be made out of the real property belonging to such judgment debtor on the above-mentioned day, or at any time thereafter, in whose hands soever the same may be, and return this execution within sixty days after its receipt by you, to the Clerk of said District Court.

WITNESS, the Honorable Colleen McMahon, Chief Judge of the United States District Court, for the Southern District of New York, at the City of New York, on the _____ 8ᵗʰ _____ day of _____ August _____ in the year of our Lord _____ 2020 _____, and of the Independence of the United States the two hundred _____ forty _____ fourth _____ year.

_____
                                  CLERK

# United States District Court

SOUTHERN DISTRICT OF NEW YORK

## Ganczarek

-against-

## Centra Tech, Inc.

EXECUTION AGAINST PROPERTY

## Sebastiano Tornatore

Attorney for

## Mateusz Ganczarek

Borough of Manhattan
City of New York

To the Marshal:

You will levy and collect

**Thirty-Two Thousand Nine Hundred Twenty-Three** Dollars

and **Twenty-Four** cents,

with interest from the **Thirtieth**

day of **July** , **2020** .

besides your fees, etc.

Attorney

# United States District Court

## SOUTHERN DISTRICT OF NEW YORK

JUDGMENT NO. **1:20-mc-00269**

DOCKET NO. **1-2**

THE PRESIDENT OF THE UNITED STATES OF AMERICA
To the Marshal of the Southern District of New York, GREETING:

YOU ARE COMMANDED, that of the goods and chattels of **Centra Tech, Inc., held in the possession of The Department of Justice, Southern** District of New York, accessible at Ethereum Wallet Nos.:  0xc8E0C9ba619f64c948B065a70f4085FDBAf931 and 0x7f98B3890b57992Ba0A328698E0920921332F32C; and including those goods and  chattels of Centra Tech, Inc. seized in connection with the criminal prosecution, USA v. Sharma, et. al., Case No. 1:18-cr-00340

in your district you cause to be made the sum of _____

**One hundred and twenty-nine thousand, six hundred and seventy seven**  dollars and  **eighty-seven** cents, ($ **129,677.87** )

which lately in the United States District Court of the United States for the Southern District of New York, in the Second

Circuit, _____ Plaintiff Chi Hao Poon _____

recovered against the said **Centra Tech, Inc.** _____

in an action between _____ Plaintiff Chi Hao Poon _____

PLAINTIFF and **Centra Tech, Inc.** _____

DEFENDANT, in favor of said _____ Plaintiff Chi Hao Poon _____

as appears by the record filed in the Clerk's Office of said District Court on the _____ **Thirtieth** _____ day

of _____ **July** _____, in the year of _____ **2020** _____

and if sufficient personal property of the said judgment debtor cannot be found in your District, that then you cause the same to be made out of the real property belonging to such judgment debtor on the above-mentioned day, or at any time thereafter, in whose hands soever the same may be, and return this execution within sixty days after its receipt by you, to the Clerk of said District Court.

WITNESS, the Honorable Colleen McMahon, Chief Judge of the United States District Court, for the Southern District of New York, at the City of New York, on the _____ 8ᵗʰ _____ day of _____ August _____ in the year of our Lord _____ 2020 _____, and of the Independence of the United States the two hundred _____ forty fourth _____ year.

_____
CLERK

## United States District Court

### SOUTHERN DISTRICT OF NEW YORK

### Hao Poon

-against-

### Centra Tech, Inc.

EXECUTION AGAINST PROPERTY

### Sebastiano Tornatore

Attorney for

### Chi Hao Poon

Borough of Manhattan
City of New York

To the Marshal:

You will levy and collect

**One hundred and twenty-nine thousand, six hundred and seventy seven** Dollars

and **eighty-seven** cents,

with interest from the **Thirtieth**

day of **July**, **2020**.

besides your fees, etc.

Attorney

# United States District Court

## SOUTHERN DISTRICT OF NEW YORK

JUDGMENT NO. **1:20-mc-272**                              DOCKET NO. **1-2**

THE PRESIDENT OF THE UNITED STATES OF AMERICA
To the Marshal of the Southern District of New York, GREETING:

YOU ARE COMMANDED, that of the goods and chattels of **Centra Tech, Inc., held in the possession of The Department of Justice, Southern** District of New York, accessible at Ethereum Wallet Nos.: 0xc8E0C9ba619f64c948B065a70f4085FDBAf9316 and 0x7f98B3890b57992Ba0A328698E0920921332F32C; and including those goods and chattels of Centra Tech, Inc. seized in connection with the criminal prosecution, USA v. Sharma, et. al., Case No. 1:18-r-00340

in your district you cause to be made the sum of _____

**Twenty-Four Thousand, three hundred fourteen** dollars and **sixty** cents, ($ **24,314.60** )

which lately in the United States District Court of the United States for the Southern District of New York, in the Second

Circuit, _____ Plaintiff Jae J. Lee _____

recovered against the said **Centra Tech, Inc.** _____

in an action between _____ Plaintiff Jae J. Lee _____

PLAINTIFF and **Centra Tech, Inc.** _____

DEFENDANT, in favor of said _____ Plaintiff Jae J. Lee _____

as appears by the record filed in the Clerk's Office of said District Court on the _____ **Thirtieth** _____ day

of _____ **July** _____, in the year of _____ **2020** _____

and if sufficient personal property of the said judgment debtor cannot be found in your District, that then you cause the same to be made out of the real property belonging to such judgment debtor on the above-mentioned day, or at any time thereafter, in whose hands soever the same may be, and return this execution within sixty days after its receipt by you, to the Clerk of said District Court.

WITNESS, the Honorable Colleen McMahon, Chief Judge of the United States District Court, for the Southern District of New York, at the City of New York, on the _____ 8th _____ day of _____ August _____ in the year of our Lord _____ 2020 _____, and of the Independence of the United States the two hundred _____ forty _____ fourth _____ year.

_____
CLERK

United States District Court

SOUTHERN DISTRICT OF NEW YORK

**Lee**

-against-

**Centra Tech, Inc.**

EXECUTION AGAINST PROPERTY

**Sebastiano Tornatore**

Attorney for

**Jae J. Lee**

Borough of Manhattan
City of New York

To the Marshal:
You will levy and collect

**Twenty-Four Thousand, three hundred fourteen** Dollars

and **Sixty** cents,

with interest from the **Thirtieth**

day of **July** , **2020** .

besides your fees, etc.

Attorney

# United States District Court

## SOUTHERN DISTRICT OF NEW YORK

JUDGMENT NO. **1:20-mc-00273**

DOCKET NO. **1-2**

THE PRESIDENT OF THE UNITED STATES OF AMERICA
To the Marshal of the Southern District of New York, GREETING:

YOU ARE COMMANDED, that of the goods and chattels of **Centra Tech, Inc., held in the possession of The Department of Justice, Southern** District of New York, accessible at Ethereum Wallet Nos.: 0xc8E0C9ba619f64c948B065a70f4085FDBAf9316 nd 0x7f98B3890b57992Ba0A328698E0920921332F32C; and including those goods and chattels of 'entra Tech, Inc. seized in connection with the criminal prosecution, USA v. Sharma, et. al., Case No. 1:18-r-00340

in your district you cause to be made the sum of _____

**Thirty-Nine thousand, one hundred ninety-four** dollars and **two** cents, ($ **39,194.02** )

which lately in the United States District Court of the United States for the Southern District of New York, in the Second

Circuit, _____**Plaintiff Rodney Warren**_____

recovered against the said **Centra Tech, Inc.**

in an action between _____**Plaintiff Rodney Warren**_____

PLAINTIFF and _____**Centra Tech, Inc.**_____

DEFENDANT, in favor of said _____**Plaintiff Rodney Warren**_____

as appears by the record filed in the Clerk's Office of said District Court on the_____**Thirtieth**_____day

of _____**July**_____, in the year of _____**2020**_____

and if sufficient personal property of the said judgment debtor cannot be found in your District, that then you cause the same to be made out of the real property belonging to such judgment debtor on the above-mentioned day, or at any time thereafter, in whose hands soever the same may be, and return this execution within sixty days after its receipt by you, to the Clerk of said District Court.

WITNESS, the Honorable Colleen McMahon, Chief Judge of the United States District Court, for the Southern District of New York, at the City of New York, on the_____8ᵗʰ_____day of_____August_____in the year of our Lord_____2020_____, and of the Independence of the United States the two hundred _____forty_____ fourth _____ year.

_____
CLERK

United States District Court
SOUTHERN DISTRICT OF NEW YORK

**Warren**

-against-

**Centra Tech, Inc.**

EXECUTION AGAINST PROPERTY

**Sebastiano Tornatore**

Attorney for

**Rodney Warren**

Borough of Manhattan
City of New York

To the Marshal:
You will levy and collect

**Thirty-Nine thousand, one hundred ninety-four** Dollars

and _____ **Two** _____ cents.

with interest from the _____ **Thirtieth**

day of _____ **July** _____, **2020**

besides your fees, etc.

_____
Attorney

# United States District Court

## SOUTHERN  DISTRICT OF NEW YORK

JUDGMENT NO. **1:20-mc-00274**

DOCKET NO. **1-2**

THE PRESIDENT OF THE UNITED STATES OF AMERICA
To the Marshal of the Southern District of New York, GREETING:

YOU ARE COMMANDED, that of the goods and chattels of  Centra Tech, Inc., held in the possession of The Department of Justice, Southern District of New York, accessible at Ethereum Wallet Nos.:  0xc8E0C9ba619f64c948B065a70f4085FDBAf9316 nd 0x7f98B3890b57992Ba0A328698E0920921332F32C; and including those goods and  chattels of 'entra Tech, Inc. seized in connection with the criminal prosecution, USA v. Sharma, et. al., Case No. 1:18-r-00340

in your district you cause to be made the sum of _____ **Three Million, one hundred and thirteen thousand,**

_____ **three hundred and thirty-five** _____ dollars and _____ **forty nine** _____ cents, ($ **3,113,335.49** )

which lately in the United States District Court of the United States for the Southern District of New York, in the Second

Circuit, _____ **Plaintiff Wang Yun He**

recovered against the said **Centra Tech, Inc.**

in an action between _____ **Plaintiff Wang Yun He**

PLAINTIFF and **Centra Tech, Inc.**

DEFENDANT, in favor of said _____ **Plaintiff Wang Yun He**

as appears by the record filed in the Clerk's Office of said District Court on the _____ **Thirtieth** _____ day

of _____ **July** _____, in the year of _____ **2020**

and if sufficient personal property of the said judgment debtor cannot be found in your District, that then you cause the same to be made out of the real property belonging to such judgment debtor on the above-mentioned day, or at any time thereafter, in whose hands soever the same may be, and return this execution within sixty days after its receipt by you, to the Clerk of said District Court.

WITNESS, the Honorable Colleen McMahon, Chief Judge of the United States District Court, for the Southern District of New York, at the City of New York, on the _____ 8ᵗʰ _____ day of _____ August _____ in the year of our Lord _____ 2020 _____, and of the Independence of the United States the two hundred _____ fourty _____ fourth _____ year.

_____
CLERK

United States District Court

SOUTHERN DISTRICT OF NEW YORK

**Yun He**

-against-

**Centra Tech, Inc.**

EXECUTION AGAINST PROPERTY

**Sebastiano Tornatore**

Attorney for

**Wang Yun He**

Borough of Manhattan
City of New York

To the Marshal:
You will levy and collect

**Three Million, one hundred and thirteen thousand,**

**three hundred and thirty-five** _____ Dollars

and _____ **forty-nine** _____ cents,

with interest from the _____ **Thirtieth**

day of _____ **July** _____, **2020** .

besides your fees, etc.

_____

Attorney

# EXHIBIT 8

**Subject:** [External]RE: Executing Writs of Execution Against the SDNY DOJ
**Date:** Thursday, September 3, 2020 at 11:54:18 AM Eastern Daylight Time
**From:** Brill, Becky (USMS)
**To:** Zack Ness

Hello Zack,

The below list is mostly correct, please note for USM 285s – 2x copies total for each plaintiff.

When you mention service on SDNY DOJ , did you mean the U.S. Attorney's Office? If so, we are able to serve them when we do resume service.


Respectfully,

Becky Brill
Administrative Support Assistant
U.S. Marshals Service
Southern District of New York
500 Pearl Street, Suite 400
New York, NY 10007
(212) 331-7120
Email Address: Becky.Brill@usdoj.gov



**From:** Zack Ness <zness@zlk.com>
**Sent:** Wednesday, September 2, 2020 10:50 AM
**To:** Brill, Becky (USMS) <BBrill@usms.doj.gov>
**Subject:** Executing Writs of Execution Against the SDNY DOJ

Hello Becky,

Thank you for speaking with me today. As discussed on our call, attached you will find copies of the signed writs of execution that we seek to be served upon the SDNY DOJ. Please let me know if doing so is possible.

Additionally, and just to confirm, what is needed to serve these writs is as follows:
- The original versions of the writs (one for each plaintiff);
- Copies of the writs for executing services (one for each plaintiff);
- Copies for the US Marshal (one for each plaintiff);
- USM 285s (one for each plaintiff); and
- A bank/cashiers/business check for $625.00 (funds not used in service to be returned).

Thanks for your help with this. And just to confirm, as discussed on our call, we are aware that personal service is suspended for now during COVID-19 in the SDNY.

Best,

Zachary Ness

--
Zachary B. Ness
Associate
LEVI&KORSINSKY LLP
1101 30th Street, NW
Washington, DC 20007
Tel.: (202) 524-4290
Dir.: (973) 842-1194
Fax: (212) 363-7171
zness@zlk.com | www.zlk.com

Admitted in DC. This email message contains information belonging to the law firm of Levi & Korsinsky LLP, which may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the individual or entity named above. If you think you have received this message in error, please email the sender. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited.  This email is not intended to create an attorney-client relationship between you and Levi & Korsinsky LLP.  If you communicate with us in connection with a matter for which we do not already represent you, your communication may not be treated as privileged or confidential.  In some jurisdictions this email may be considered advertising.  Prior results do not guarantee similar outcomes.